IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

DEVIN G. NUNES                              )
                                            )
          Plaintiff,                        )
                                            )
v.                                          )          Case No. 1:20-cv-1405-LO/IDD
                                            )
                                            )          **TRIAL BY JURY**
WP COMPANY, LLC                             )          **IS DEMANDED**
d/b/a The Washington Post                   )
                                            )
-and-                                       )
                                            )
ELLEN NAKASHIMA                             )
                                            )
          Defendants.                       )
_____)

# <u>AMENDED COMPLAINT</u>

Plaintiff, Devin G. Nunes ("Plaintiff" or "Nunes"), by counsel, pursuant to Rule 15(a)(1)(B) of the Federal Rules of Civil Procedure, files the following Complaint against Defendants, WP Company, LLC d/b/a The Washington Post ("WaPo") and Ellen Nakashima ("Nakashima"), jointly and severally.

Plaintiff seeks (a) compensatory damages and punitive damages in a total sum to be determined by the Jury, (b) prejudgment interest on the principal sum awarded by the Jury from November 9, 2020 to the date of Judgment at the rate of six percent (6%) per year pursuant to § 8.01-382 of the Virginia Code (1950), as amended (the "Code"), and (c) court costs pursuant to Title 28 U.S.C. § 1920 – arising out of the Defendants' defamation and negligence.

1

## I.  INTRODUCTION

1.      Plaintiff is Ranking Member of the House Permanent Select Committee on Intelligence (the "House Intelligence Committee").   On November 9, 2020, Defendants published an article in Virginia entitled, "**White House official and former GOP political operative Michael Ellis named as NSA general counsel**" (the "Article").   In the Article, Defendants attributed to Plaintiff statements he never made and beliefs he never held.   Defendants falsely accused Plaintiff of dishonesty, deception, lying to the American public, disinformation, lack of integrity, and ethical improprieties.   Defendants exposed Plaintiff to public ridicule, scorn, and contempt.   Their false statements severely prejudiced Plaintiff in his employment as a U.S. Congressman.

2.      In the Article, Defendants knowingly published the following false facts:

| No. | Defamatory Statement | Published By | Published To | Date |
|-----|----------------------|--------------|--------------|------|
| 1 | "In March 2017, … Nunes … was given access at the White House to intelligence files that Nunes believed would buttress his baseless claims of the Obama administration spying on Trump Tower" | WaPo<br><br>Nakashima | Subscribers/ Readers<br><br>Twitter | 11/09/2020 |
| 2 | "News reports stated that Ellis was among the White House officials who helped Nunes see the documents — reportedly late at night, earning the episode the nickname 'the midnight run.' [*Three White House officials tied to sharing of intelligence files with Devin Nunes*]" | WaPo<br><br>Nakashima | Subscribers/ Readers<br><br>Twitter | 11/09/2020 |

(each a "Defamatory Statement", and collectively, the "Defamatory Statements").

3.     In addition to publishing the Article in print and on its website, Defendants conspicuously published the Article to a third audience – their millions of followers on Twitter. [https://twitter.com/washingtonpost/status/1325987811720310787 (16,700,000 followers)   https://twitter.com/nakashimae/status/1325967147940503552 (80,200 followers)].

4.     The Article was republished millions of times in Virginia, including by WaPo's agents and followers, by Politico and its agents in Arlington, Virginia, and by many others in Virginia, Washington D.C., and elsewhere, *e.g.*:

https://twitter.com/radleybalko/status/1326151684406521857

https://twitter.com/RiegerReport/status/1325943335920558080

https://twitter.com/NoahBookbinder/status/1326250776335880206

https://twitter.com/Susan_Hennessey/status/1325950542661767168

https://twitter.com/acoyne/status/1326157568335630337

https://twitter.com/dnvolz/status/1325935811771166726

https://twitter.com/kentbrew/status/1326010591543058432

https://twitter.com/kait_au_lait/status/1325937040354144256

https://twitter.com/peterwsinger/status/1326229636842315776

https://twitter.com/KenDilanianNBC/status/1326010468725624833

https://twitter.com/JonHutson/status/1325991932699488261

https://twitter.com/shanvav/status/1325998561717346304

https://twitter.com/davetroy/status/1327991064691691520

https://twitter.com/mvhaydencenter/status/1326213745928966144

https://www.lawfareblog.com/how-did-trump-loyalist-come-be-named-nsa-general-counsel-and-what-should-biden-do-about-it

https://www.rawstory.com/2020/11/white-house-pressured-pentagon-to-appoint-notorious-ex-devin-nunes-aide-as-top-lawyer-at-the-nsa-report/

https://www.politico.com/newsletters/playbook/2020/11/10/the-last-gasp-of-trumpism-490857.

5.     The millions who read the Defamatory Statements clearly understood them to be of or concerning Plaintiff and clearly understood them to convey a defamatory meaning, including that Plaintiff engaged in unethical, dishonest and improper conduct. [*E.g.*https://twitter.com/AshaRangappa_/status/1326268737792569344 ("Nunes has been acting like a gd freakshow ever since his Scooby run to the White House in March 2017 and Michael Ellis showed him some intel in the SCIF that had been captured about HIM (Nunes.  Since then he has been on a DESPERATE mission to undercut the intelligence community"); https://twitter.com/okourgiantakis/status/1326020116748890112 ("As soon as you see the name Devin Nunes, you know fakery and falsehoods are afoot. Insane.  The man helped commit impeached crimes.  Seditious s---show")].

6.     On November 17, 2020, Plaintiff served the Defendants with written notice specifying the statements in the Article that are defamatory and, *inter alia*, demanding that those statements be retracted and/or corrected and removed from the Internet.

7.     On December 8, 2020, Defendants publicly admitted that the statements in the Article about Plaintiff were false.  On page A2 of its print edition, WaPo published the following correction:

> "*Correction: A Nov. 10 A-section article about the naming of Michael Ellis as general counsel of the National Security Agency inaccurately attributed claims that the Obama administration spied on Trump Tower to Rep. Devin Nunes (R-Calif.), rather than to President Trump.  Nunes has said that he did not believe there had been any wiretapping of Trump Tower.*"

At the top of the website version of the Article, WaPo added the following:

> "*Correction: As originally published, this article inaccurately attributed claims that the Obama administration spied on Trump Tower to Rep. Devin Nunes (R-Calif.), rather than to President Trump. Nunes has stated that he did not believe there had been any wiretapping of Trump Tower. This article has also been updated to note that Nunes says an incident known as the "midnight run" took place during daylight hours.*"

WaPo added the following sentence to the online version of the Article after the reference to Plaintiff's "visit" to the White House:

> "*The precise timing of the visit is unclear, and Nunes has said it took place during daylight hours.*"

Defendants refused to retract or to make and publish any further corrections. They failed to publish any correction on Twitter. In spite of the admitted inaccuracy of the Article, Defendants continued to misreport and misrepresent that "Nunes … was given access at the White House to intelligence files that Nunes believed would buttress Trump's baseless claims of the Obama administration spying on Trump Tower." Plaintiff never held this belief. He said so publicly at the time. He never took any action to support or buttress any claim by the President of spying on Trump Tower.

8.      In this case, Plaintiff seeks presumed damages, actual damages, special damages and punitive damages as a result of Defendants' statements and actions. In addition, Plaintiff seeks a permanent injunction prohibiting Defendants from repeating the defamatory speech.

## II.  PARTIES

9.      Plaintiff, Devin G. Nunes ("Nunes" or "Plaintiff"), is a citizen of California. He works in Washington, D.C. As a member of the House Intelligence Committee, he participates in oversight of the U.S. national security apparatus, including

the intelligence-related activities of seventeen agencies, departments, and other elements of the United States Government, most of which is located in Northern Virginia and D.C. [https://nunes.house.gov/about/; https://www.devinnunes.com/bio].  Plaintiff's career as a United States Congressman is distinguished by his honor, dedication and service to his constituents and his country, his honesty, integrity, ethics, and reputation for truthfulness and veracity.  Plaintiff was primarily injured in Virginia as a result of the Defendants' defamation.  The brunt of the personal and professional injury he suffered as a result of Defendants' publications occurred in Virginia.  Plaintiff has been considered for multiple Senate-confirmed offices.  These are now unobtainable due to the perception created by the Article that Plaintiff engages in questionable and unethical behavior, that he would misuse classified intelligence files, that he manufactures baseless claims, and that he falsely accused the Obama Administration of spying on Trump Tower.

10.     Defendant, WaPo, is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business in Washington, D.C.  None of WaPo's members is a citizen of California.  Published in Springfield, Virginia, the *Washington Post* has the largest print circulation (1,900,000+/week) in the Virginia/District of Columbia/Maryland area.  WaPo has more than 1,500,000 digital subscribers in the United States.  16,700,000 people follow WaPo on Twitter.  Over 6,834,900 people follow WaPo using Facebook.  WaPo is at home in Virginia.  WaPo is registered to transact business in Virginia (VA SCC Id. No. T0232795); it maintains a registered office and registered agent in Glen Allen, Virginia (Henrico County); it has millions of subscribers in Virginia; it targets Virginians every

minute of every day with advertisements of all kinds and earns millions of dollars in annual revenues from its Virginia source customers.

11.     Nakashima is a citizen of the District of Columbia.  She is a national security reporter for WaPo. [https://www.washingtonpost.com/people/ellen-nakashima/]. Nakashima routinely travels to Virginia and regularly reports on matters of public concern to Virginians.

### III.   JURISDICTION AND VENUE

12.     The United States District Court for the Eastern District of Virginia has subject matter jurisdiction over this action pursuant to Title 28 U.S.C. § 1332 (Diversity). The parties are citizens of different States.  The amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

13.     WaPo is at home in Virginia and is subject to general personal jurisdiction in Virginia. *See, e.g., Witt v. Reynolds Metals Co.*, 240 Va. 452, 397 S.E.2d 873 (1990). Nakashima is subject to specific personal jurisdiction in Virginia pursuant to Virginia's long-arm statute, § 8.01-328.1(A)(1), (A)(3) and (A)(4), as well as the Due Process Clause of the United States Constitution.  She engages in a persistent, continuous and ongoing course of conduct in Virginia.  She has minimum contacts with Virginia such that the exercise of personal jurisdiction over her comports with traditional notions of fair play and substantial justice and is consistent with the Due Process Clause of the United States Constitution.   Plaintiff's claims directly arise from and relate to Defendants' publication of false and defamatory statements in Virginia. *Calder v. Jones*, 465 U.S. 783 (1984); *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984).

14.     Venue is proper in this Court pursuant to Title 18 U.S.C. §§ 1391(b)(1) and (b)(2).  The focus of the Article and key witness to Defendants' defamation – Michael Ellis – resides in Alexandria, Virginia.

## COUNT I – DEFAMATION *PER SE*

15.     Plaintiff restates paragraphs 1 through 14 of this Amended Complaint, and incorporates them herein by reference.

16.     WaPo and Nakashima made, published and republished numerous false factual statements of and concerning Plaintiff.  These false statements are detailed verbatim above.  WaPo and Nakashima published the false statements without privilege of any kind.

17.     The Defamatory Statements are false for the following reasons:

a.     Plaintiff never engaged in any "questionable" activities and never sought access to any "intelligence files" at the White House for the nefarious purpose of spreading "baseless claims" about the Obama administration or aiding in any such disinformation.

b.     Plaintiff never "believed" that any intelligence files would buttress a claim Plaintiff or President Trump made that the Obama administration was spying on Trump Tower.  Defendants falsely attributed to Plaintiff a belief he never had and an inclination to misuse classified intelligence that Plaintiff never had and never exhibited.

c.     Plaintiff never made "baseless claims" – or *any* claim – that the Obama administration spied on Trump Tower.  Indeed, prior to publication of the Article,

Defendants knew from prior reporting that Plaintiff had publicly stated the ***exact opposite*** – that there was no evidence of any spying or wiretap on Trump Tower.[1]

       d.      The "midnight run" "episode" never happened.  Plaintiff never made a "surreptitious visit to the White House grounds" in March 2017.  Plaintiff never sought out or saw "the documents" or any documents that buttressed any claims about spying on Trump Tower by the Obama administration.

       e.      "News reports"[2] did not state that Plaintiff was attempting to access intelligence files that would "buttress his [or anyone else's] baseless claims of the Obama administration spying on Trump Tower".

18.     There is a material difference between the Defendants' statements in the Article and the truth.  The Defendants expressly misidentified ***Plaintiff*** as the purveyor of

---

[1]    *See, e.g.,* https://www.npr.org/2017/03/15/520252977/house-intelligence-chair-no-evidence-of-alleged-trump-tower-wiretap ("House Intelligence Committee Chairman Devin Nunes said on Wednesday he doesn't believe "there was an actual tap of Trump Tower"); https://www.boston.com/news/politics/2017/03/19/intel-documents-offer-no-evidence-of-spying-on-trump-tower/amp ("'Was there a physical wiretap of Trump Tower?  No there never was'"); https://www.businessinsider.com/obama-wiretapped-trump-tower-evidence-intelligence-committee-2017-3?amp ("'We don't have any evidence that took place,' Nunes said.  'I don't think there was an actual tap of Trump Tower.'").

[2]    Upon information and belief, one of the "News reports" referred to in the Article is a "report" manufactured by New York Times reporters Adam Goldman, Matthew Rosenberg and Maggie Haberman, well-known for spreading false statements and defamation on behalf of anonymous "sources" at the FBI and State Department. [https://www.nytimes.com/2017/03/30/us/politics/devin-nunes-intelligence-reports.html]. In the report, Goldman et al. represented that unidentified "American officials" told the New York Times that a pair of White House officials, Ezra Cohen-Watnick and Michael Ellis, "helped provide Representative Devin Nunes of California, a Republican and the chairman of the House Intelligence Committee, with the intelligence reports that showed that President Trump and his associates were incidentally swept up in foreign surveillance by American spy agencies."  **Significantly, the Goldman report does *not* say that Ellis helped Plaintiff "see intelligence files that Nunes believed would buttress his baseless claims of the Obama administration spying on Trump Tower"**.

the "baseless claims".  This is not a slight or minor inaccuracy.  The Defendants also ascribed or attributed to Plaintiff views and beliefs he never had. *See, e.g., Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 510-511 (1991) ("False attribution of statements to a person may constitute libel, if the falsity exposes that person to … [hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation]… A fabricated quotation may injure reputation in at least two senses, either giving rise to a conceivable claim of defamation.  First, the quotation might injure because it attributes an untrue factual assertion to the speaker … Second, regardless of the truth or falsity of the factual matters asserted within the quoted statement, the attribution may result in injury to reputation because the manner of expression or even the fact that the statement was made indicates a negative personal trait or an attitude the speaker does not hold."); *Tharpe v. Saunders*, 285 Va. 476, 737 S.E.2d 890 (2013) ("*Saunders' statement of fact*—'Tharpe told me that Tharpe was going to screw the Authority like he did Fort Pickett'—if believed by the hearer as coming from Tharpe, by its very nature is alleged to have defamed Tharpe and Shearin.  Therefore, regardless of the truth or falsity of the matters asserted in the quote attributed to Tharpe, Saunders' statement is an actionable statement of fact.").  As evidenced by Defendants' abandonment of their original false narrative, Defendants' admission that the Defamatory Statements were inaccurate and Defendants' "correction" of the false statements, the Defamatory Statements would have had (and indeed did have) a different effect on the minds of readers from that which the truth would have produced.  Accordingly, the Defamatory Statements are materially false.

10

19.     The Defamatory Statements constitute defamation *per se*.  The statements accuse and impute to Plaintiff an unfitness to perform the duties of an office or employment for profit, or the want of integrity in the discharge of the duties of such office or employment, including dishonesty, deceit, fraud, malfeasance, lack of ethics, lack of veracity, and independently tortious acts.  The Defamatory Statements also prejudice Plaintiff in his profession and employment as a United States Congressman.

20.     By publishing the Article on the Internet and by tweeting the Article to over 17,000,000 followers on Twitter, WaPo and Nakashima knew or should have known that their Defamatory Statements would be republished over and over by third-parties to Plaintiff's detriment.   Republication by WaPo and Nakashima's followers, WaPo subscribers, mainstream media, and users of Twitter was the natural and probable consequence of WaPo and Nakashima's actions and was actually and/or presumptively authorized by WaPo and Nakashima.  In addition to its original publications in print, online and on Twitter, WaPo and Nakashima are liable for the millions of republications of the false and defamatory statements by third-parties under the republication rule. *Weaver v. Beneficial Finance Co.*, 199 Va. 196, 199-200, 98 S.E.2d 687 (1957); *Moore v. Allied Chemical Corp.*, 480 F.Supp. 364, 376 (E.D. Va. 1979).

21.     Defendants' Defamatory Statements harmed Plaintiff and his reputation, causing presumed damages, actual damages, special damages and pecuniary loss.  In addition to the pain, suffering, insult, embarrassment, humiliation, and injury to his personal and professional reputations, publication of the Article on November 9, 2020 caused a flood of invective aimed directly at Plaintiff on social media and threatening phone calls received by his office, including direct threats to Plaintiffs' life and physical

safety.  As a direct result of these communications, Plaintiff's Visalia office has had to cancel in-district office meetings.  Plaintiff has been unable to make public appearances or conduct in-person meetings due to safety concerns.  Safety concerns limit Plaintiff's work, movements and appearances.  But for Defendants' defamation, Plaintiff has been unable to pursue professional opportunities that he normally would have been able to pursue and achieve, resulting in lost income.  Plaintiff suffered and continues to suffer career damage, including loss of future employment, loss of future earnings, impaired and diminished earning capacity, and impact upon his prospects for career advancement, including, without limitation, Senate-confirmed offices.  In sum, Plaintiff has suffered damage to his property, business, trade, profession and occupation, including substantial additional costs and expenses, because of Defendants' defamation.

22.    WaPo and Nakashima published the Defamatory Statements with actual or constructive knowledge that they were false or with reckless disregard for whether they were false.  Defendants acted with actual malice and reckless disregard for the truth:

a.    Prior to publication of the Article, Nakashima knew the Defamatory Statements were false and harbored serious doubts as to the veracity of her sources.  First, Nakashima knew there was no "midnight run".  In March 2017, Plaintiff's communications director, Jack Langer, expressly advised Nakashima, both off the record and on the record, that the story about a "dead-of-night excursion" or "midnight run" was inaccurate.  Further, on March 27, 2017, Plaintiff appeared on CNN and repeated that there was no "surreptitious" "midnight run".  Plaintiff confirmed on air that, far from the "surreptitious" visit to the White House grounds that WaPo reported on March 30, 2017, Plaintiff met with a source in the middle of the day "when the sun was out" and

spontaneously stopped to chat with numerous people he saw there, including foreign dignitaries.  His visit was part of the House Intelligence Committee's ongoing oversight investigation into concerns that Americans' identities were not protected (masked) properly in intelligence reports or were unmasked improperly. [https://www.youtube.com/watch?v=4DKGXZ7Sx_M].[3]  In November 2020, Nakashima published the Defamatory Statements about a "midnight run" in spite of her prior knowledge that no such "dead-of-night excursion" ever took place.  Second, Nakashima blindly relied upon and republished statements by "sources" – Adam Schiff (and his staff) and the NYT story by Goldman et al. – that Nakashima knew to be inherently unreliable.[4]  Nakashima knew from her experience as a national security reporter and from her conversations with Schiff and his staff that Schiff and "congressional officials"

_____

[3]     Plaintiff's truthful statements that there was unmasking, FISA and other surveillance used against certain members of the Trump campaign is materially different than falsely stating, as Defendants did, that Plaintiff made "baseless claims" that the Obama administration spied on Trump Tower.

[4]     On March 26, 2017, WaPo published a story in which it falsely claimed that Plaintiff had visited the White House grounds "late" in the evening in a "dead-of-night excursion" to view "classified documents".  Nakashima contributed to the story. [https://www.washingtonpost.com/world/national-security/chairman-and-partisan-the-dual-roles-of-devin-nunes-raise-questions-about-house-investigation/2017/03/26/2c95ade2-1096-11e7-9b0d-d27c98455440_story.html?utm_term=.36e08e1b033b].   The story included many false details provided by Democrat Adam Schiff ("Schiff"), then Ranking Member of the House Intelligence Committee, and his staff (who are mis-identified in the story as "congressional officials"), including that Plaintiff "swapped cars and slipped away from his staff".  The story was designed to ridicule Plaintiff as having acted in a strange, paranoid manner and having engaged in a late night "midnight run" to the White House. On March 30, 2017, WaPo doubled-down on the fictitious narrative by reiterating that Plaintiff had reviewed the "intelligence files" "during a surreptitious visit to the White House grounds last week." [https://www.washingtonpost.com/world/national-security/three-white-house-officials-tied-to-files-shared-with-house-intelligence-chairman/2017/03/30/de4b8c30-1589-11e7-9e4f-09aa75d3ec57_story.html?itid=lk_interstitial_manual_10].

acting at his direction, who sponsored the false "midnight run" narrative, had an axe to grind against Plaintiff and a reason to lie. *AdvanFort Co. v. Maritime Executive, LLC*, 2015 WL 4603090, at * 8 (E.D. Va. 2015) ("If, in fact, TME knew of the bad blood between Plaintiffs and Defendant Cartner, it would have indeed had obvious reason to doubt Cartner's veracity and the accuracy of his statements given the blatantly hostile and sarcastic tone of the Article.").  Nakashima also knew that Goldman, Rosenberg and Haberman habitually republished false and defamatory statements supplied to them by the Democrats, the FBI, and the State Department (CIA).  Nakashima had every reason to doubt the "midnight run" narrative fed to the press by Schiff and simply repeated by Goldman.  Nakashima ignored the obvious fact that she was dealing with persons with no first-hand knowledge, who had a nefarious agenda and who meant harm to Plaintiff. Third, Nakashima made up facts out of whole cloth, including that Plaintiff "believed" that "intelligence files" at the White House would "buttress his baseless claims of the Obama administration spying on Trump Tower."  Nakashima did not have one shred of evidence to support her statement about Plaintiff's "belief" because, in truth, she completely fabricated the accusation.  Based on her own prior reporting ***and*** her review of reporting by numerous other media outlets, including the New York Times, CNBC, CBS, Politico, Mother Jones, Business Insider and the AP, Nakashima knew that Plaintiff had made ***no*** "claims" – "baseless" or otherwise – that the Obama administration spied on Trump Tower.  Indeed, Nakashima knew that in each and every reported instance, without any exception, Plaintiff stated the ***exact opposite***: that there was no spying on Trump Tower.  [https://www.nytimes.com/2017/03/15/us/politics/trump-wiretap-claim-obama-comey-congress.html ("'I don't think there was an actual tap of Trump Tower'

and that Mr. Trump, if taken literally, is simply 'wrong.'"); https://www.theguardian.com/us-news/2017/mar/15/wiretap-trump-house-intelligence-committee ("**Republican Devin Nunes says he does not believe there was 'an actual tap of Trump Tower' as committee leaders say they are still waiting for evidence**"). In spite of their actual knowledge of the truth, WaPo and Nakashima misreported a flat out lie.[5]

        b.      WaPo and Nakashima intentionally concealed the identities of the sources of the Defamatory Statements because WaPo and Nakashima knew that the sources were unreliable, disreputable, and, in the case of the misstatement about spying on Trump Tower, non-existent.

        c.      WaPo and Nakashima conceived the story lines in advance of any investigation and then consciously published false statements that fit the preconceived stories.  WaPo insisted on publishing the narrative that Plaintiff is a Trump sycophant. Plaintiff's statements that there was no wiretap on Trump Tower did not fit WaPo's narrative, so WaPo and Nakashima falsified facts to fit the narrative after the fact.

        d.      WaPo and Nakashima abandoned all journalistic standards and integrity, including WaPo's own code of ethics, in writing, editing, and publishing the

---

    [5]      WaPo and Nakashima's own prior reporting demonstrates that they knew Plaintiff never claimed that the Obama administration had spied on or wire-tapped Trump Tower.  [https://www.washingtonpost.com/news/the-fix/wp/2017/03/15/the-evidence-of-trump-tower-being-wire-tapped-just-does-not-exist/ ("**Devin Nunes confirms it: The evidence of Trump Tower being wiretapped just doesn't seem to exist**"); https://www.washingtonpost.com/world/national-security/chairman-and-partisan-the-dual-roles-of-devin-nunes-raise-questions-about-house-investigation/2017/03/26/2c95ade2-1096-11e7-9b0d-d27c98455440_story.html?utm_term=.46361f5bc28e ("Nunes has been at odds with Trump in a few cases, most notably when Nunes said that Trump was simply 'wrong' about the claim that Obama had ordered a wiretap of Trump Tower to listen to the Republican presidential candidate")].

Article.  WaPo and Nakashima did not seek the truth or report it.  They betrayed the truth for the sake of their institutional bias against Plaintiff.  The Article is an example of opposition research published by WaPo and Nakashima acting as alter egos for others, including Schiff, as part of a lengthy campaign against Plaintiff, who has repeatedly shown the media's full participation in promoting the Russia collusion hoax.  Rather than minimize harm, WaPo and Nakashima set out to inflict maximum pain and suffering on Plaintiff in order to harm Plaintiff's reputation.  WaPo and Nakashima never once considered the long-term implications of the extended reach and permanence of the Article.

e.      WaPo and its agents harbor an institutional hostility, hatred, extreme bias, spite and ill-will towards Plaintiff and President Trump, going back many years.  This bias and prejudice motivated WaPo and Nakashima to publish intentionally false statements about Plaintiff.  WaPo and Nakashima intended to inflict harm through knowing or reckless falsehoods.

f.      WaPo, Nakashima and their agents reiterated, repeated and excessively published and republished the false defamatory statements about Plaintiff out of a desire to hurt Plaintiff and to permanently stigmatize him.  The defamation set in motion by Nakashima on November 9, 2020 continues unabated and unapoligetically. [*See*   https://www.washingtonpost.com/outlook/2020/11/13/deep-state-putsch-pentagon-trump/ ("Nunes showed up at the White House at midnight three months into Trump's presidency.  Cohen-Watnick backhanded him a sheaf of documents purporting to show illegal intelligence surveillance of Trump's campaign.  The result of the midnight ride was political theater — or, you might say, a hoax.  The Obama administration hadn't

committed crimes.  Team Trump had.  (Michael Ellis,[6] formerly chief counsel to Nunes, was part of this shadow play.")].

g.     WaPo published the Article out of reprisal or revenge.  Plaintiff exposed WaPo's prior misreporting about the Russia collusion hoax, which led to public exposure of WaPo's agenda and embarrassment on national television.  [*See, e.g.*, https://www.foxnews.com/transcript/ig-report-confirms-steele-dossier-used-to-justify-spying-on-carter-page ("The [IG] report was a disaster for the credibility of our bureaucratic class in Washington.  But it's also a big, big problem for the American news media.  They were exposed as liars and know-nothings, as well.  We could [cite] you a million examples of this, but we're going to give you just a few because they paint the picture.  Here's one.  In early 2018, Washington Post intelligence and national security correspondent, Shane Harris, lectured Kim Strassel of The Wall Street Journal – someone who's frequently on this show – about how little she knew about the story.  'Yes,' he wrote condescendingly, 'I am telling you the dossier was not used as the basis for a FISA warrant on Carter Page,' – end quote.  Now, you may wonder how he could have known that since the FISA warrant was classified.  He's never explained.  But it doesn't matter.  It was false.  And now we know it's false.  But here's the key:  Harris has not apologized or even acknowledged his role in repeating falsehoods.  'Democracy dies in darkness,' right?  No.  His motives remain shrouded in darkness.")].  In February 2020, Plaintiff sued WaPo over other false reports.  In November 2020, WaPo published the Defamatory Statements in a story about Michael Ellis as a political and personal attack upon Plaintiff.

---

[6]     This is a hyperlink to the Article.

The Article was a calculated act of revenge by WaPo and Nakashima to further injure Plaintiff's reputation.

23.     As a direct result of WaPo and Nakashima's defamation, Plaintiff suffered presumed damages, actual damages and special damages, including, but not limited to, insult, pain, embarrassment, humiliation, mental suffering, injury to his reputation, loss of business and income, lost future earnings, costs and other out-of-pocket expenses, in a sum to be determined by the Jury.

## COUNT II – <u>NEGLIGENCE</u>

24.     Plaintiff restates paragraphs 1 through 23 of this Amended Complaint, and incorporates them herein by reference.

25.     As a media organization and national security reporter, holding themselves out to the public as purveyors of truthful statements and trusted sources of information, WaPo and Nakashima owed Plaintiff a professional duty to exercise that degree of care which ordinarily prudent persons in the same profession exercise under similar conditions and a legal duty of reasonable care to prepare and publish the Article in such a manner so as to avoid causing damage to Plaintiff.  In an era plagued by social media, where the risk of unreasonable harm from a single publication is entirely foreseeable, indeed certain, media defendants owe a duty to investigate and verify facts prior to publication, especially where, as here, the truth can be determined and harm prevented with minimal effort.  The failure to investigate and verify facts and to publish in a manner that increases or maximizes the risk of harm constitutes negligence.

26.     Defendants breached their duties and were negligent by publishing the statement that Plaintiff made "claims" that the Obama administration wire-tapped Trump

Tower.  Defendants, *inter alia*, ignored their own prior reporting, ignored the reporting of over ten (10) mainstream media outlets, ignored Jack Langer's statements, and ignored Plaintiff's 14-plus minute interview with Wolf Blitzer.  Defendants had the means and methods to determine the truth.  A reasonable person in the circumstances here would have researched and reviewed prior reporting, and determined whether Plaintiff ever made a statement about the Obama administration wire-tapping or spying on Trump Tower.  The relevant customs and practices of media organizations, including WaPo, are to investigate the accuracy of facts prior to publication.  Defendants ignored their own code of ethics and ignored customs and practices in the media and journalism industry.

27.     Defendants' actions and omissions constitute negligence.

28.     As a direct result of WaPo and Nakashima's negligence, Plaintiff suffered actual damages and special damages in a sum to be determined by the Jury.

## COUNT III – <u>INJUNCTION</u>

29.     Plaintiff restates paragraphs 1 through 28 of this Complaint, and incorporates them herein by reference.

30.     Defendants, acting in concert, disseminated false and defamatory statements that caused irreparable harm to Plaintiff.  Plaintiff is unable to repair his reputation with the persons that Defendants unilaterally contacted, especially the millions of WaPo subscribers and viewers and millions more on Twitter whose identities are unknown.

31.     Monetary damages will not provide an adequate remedy for Plaintiff because, in the event Defendants continue to defame Plaintiff, he would be required to

bring a succession of lawsuits to deter Defendants from continuing to defame Plaintiff. Monetary damages may not effectively deter "judgment proof" or wealthy defendants.

32.     In light of the balance of the hardships between Plaintiff and Defendants, a remedy in equity is warranted because Defendants remain able to express themselves in a manner that does not repeat the Defamatory Statements.

33.     The public interest would be served by an injunction narrowly tailored to prohibit repetition of the statements set forth in paragraph 2 that qualify as defamatory under Virginia law because such an injunction does not threaten to silence Defendants completely.

34.     Because Defendants have engaged in repeated acts of defamation *per se*, and the defamatory conduct at issue threatens to continue in the future, Defendants should be permanently restrained and enjoined from publishing the Defamatory Statements set forth in paragraph 2 to recipients in and outside Virginia by mail, wire, email, text message, encrypted or private message, or social media.


Plaintiff alleges the foregoing based upon personal knowledge, public statements of others, and records in his possession.  Plaintiff believes that substantial additional evidentiary support, which is in the exclusive possession of WaPo, Nakashima, and their agents and other third-parties, will exist for the allegations and claims set forth above after a reasonable opportunity for discovery.

Plaintiff reserves his right to amend this Complaint upon discovery of additional instances of Defendants' wrongdoing.

## <u>CONCLUSION AND REQUEST FOR RELIEF</u>

WHEREFORE, Plaintiff respectfully requests the Court to enter Judgment against

Defendants, jointly and severally, as follows:

A.      Compensatory damages in a sum determined by the Jury;

B.      Punitive damages in an amount to be determined by the Jury;

C.      Prejudgment interest at the rate of six percent (6%) per annum until paid;

D.      Postjudgment interest at the rate of six percent (6%) per annum until paid;

E.      Injunctive relief as requested in Count III above;

F.      Costs and other recoverable amounts as allowed by law;

G.      Such other relief as is just and proper.


## TRIAL BY JURY IS DEMANDED


DATED:        February 4, 2021


DEVIN G. NUNES


By:    */s/ Steven S. Biss*
        Steven S. Biss (VSB # 32972)
        300 West Main Street, Suite 102
        Charlottesville, Virginia 22903
        Telephone:      (804) 501-8272
        Facsimile:      (202) 318-4098
        Email:          stevenbiss@earthlink.net

        *Counsel for the Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on February 4, 2021 a copy of the foregoing was filed electronically using the Court's CM/ECF system, which will send notice of electronic filing to counsel for the Defendants and all interested parties receiving notices via CM/ECF.

By: _/s/ Steven S. Biss_
              Steven S. Biss (VSB # 32972)
              300 West Main Street, Suite 102
              Charlottesville, Virginia 22903
              Telephone:    (804) 501-8272
              Facsimile:    (202) 318-4098
              Email:       **stevenbiss@earthlink.net**

              _Counsel for the Plaintiff_