UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DEVIN G. NUNES,

          Plaintiff,

v.

WP COMPANY LLC, d/b/a THE
WASHINGTON POST and ELLEN
NAKASHIMA,

          Defendants.

Case No. 1:21-cv-00506 (CJN)

**ORAL ARGUMENT REQUESTED**

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO SUPPLEMENT AMENDED COMPLAINT

WILLIAMS & CONNOLLY LLP

Kevin T. Baine (D.C. Bar No. 238600)
Thomas G. Hentoff (D.C. Bar No. 438394)
Nicholas G. Gamse (D.C. Bar No. 1018297)
Sean M. Douglass (D.C. Bar No. 1033069)

725 Twelfth Street, N.W.
Washington, DC 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
thentoff@wc.com

*Counsel for Defendants*

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................1

BACKGROUND .................................................................................................6

    A.     November 2020 Article and Procedural History ...............................6

    B.     Nunes's Resignation from Congress.................................................7

    C.     The December 2021 Column ............................................................9

    D.     The Motion To Supplement the Amended Complaint...........................11

ARGUMENT ....................................................................................................12

I.     THE SUPPLEMENTAL CLAIM RELATED TO THE DECEMBER 2021
      COLUMN SHOULD BE REJECTED AS FUTILE. .......................................12

    A.     The December 2021 Column Did Not Republish the Original or Corrected
         Versions of the November 2020 Article. ..........................................14

    B.     The Proposed Supplement Fails To State a Claim of Defamation Arising
         from the December 2021 Column......................................................17

         1.     Defamation Elements and Principles. ........................................17

         2.     The Challenged Statements Fail To State a Claim for Multiple
              Reasons. .............................................................................20

              a.     The "Trump-Branded Truth" Statement and Headline Are
                   Not Actionable. .............................................................20

              b.     The Statement That "Staffers Presented Him with Evidence
                   Meant to Bolster a Wild Claim Made by the President" Is
                   Not Actionable. .............................................................23

              c.     The Remaining Statements Are Not Actionable.............................26

    C.     The Proposed Supplement Fails to Plausibly Allege That the December
         2021 Column Was Published with Actual Malice. ..............................27

    D.     Plaintiff Failed to Comply with the California Retraction Statute. ........31

         1.     California Law Governs Any Claim Relating to the December
              2021 Column.........................................................................32

         2.     Plaintiff Is Entitled to Seek Only Special Damages Under
              California's Retraction Statute................................................34

         3.     Plaintiff Fails to Plausibly Allege That He Suffered Special
              Damages Resulting from the Publication of the December 2021
              Column.................................................................................35

II.    THERE IS NO "GOOD CAUSE" FOR PLAINTIFF'S UNTIMELY
      AMENDMENT RELATED TO ALLEGATIONS FROM 2016-2017............................36

A.     Plaintiff Cannot Show That Diligence Excuses His Failure to Include Allegations Related to 2016-2017 in His Prior Complaints. ...............................38

B.     The Amendment Would Prejudice Defendants. ....................................................41

CONCLUSION............................................................................................................................43

## TABLE OF AUTHORITIES

### CASES

*A Love of Food I, LLC v. Maoz Vegetarian USA, Inc.*, 292 F.R.D. 142
   (D.D.C. 2013) ...............................................................................................38, 40, 41, 43

∗*Abbas v. Foreign Pol'y Grp., LLC*, 975 F. Supp. 2d 1 (D.D.C. 2013) ................................ *passim*

*Adelson v. Harris*, 973 F. Supp. 2d 467 (S.D.N.Y. 2013) ................................................14, 18, 21

*Agora, Inc. v. Axxess, Inc.*, 90 F. Supp. 2d 697 (D. Md. 2000) ......................................................21

*Banks v. York*, 448 F. Supp. 2d 213 (D.D.C. 2006)................................................................5, 37

∗*Bauman v. Butowsky*, 377 F. Supp. 3d 1 (D.D.C. 2019)...........................................18, 21, 22, 25

*Biro v. Conde Nast*, 2014 WL 4851901 (S.D.N.Y. Sept. 30, 2014) ...............................................21

*Brewer v. Holder*, 2015 WL 13799993 (D.D.C. Apr. 8, 2015) ....................................................40

*BYD Co. v. All. for Am. Mfg.*, 2021 WL 3472386 (D.D.C. Aug. 6, 2021) ...................................13

*BYD Co. v. VICE Media LLC*, 531 F. Supp. 3d 810 (S.D.N.Y. 2021) .........................................29

*Clark v. Viacom Int'l Inc.*, 617 F. App'x 495 (6th Cir. 2015) .......................................................14

*Clean Water Action v. Pruitt*, 315 F. Supp. 3d 72 (D.D.C. 2018) ...........................................12, 42

*Copeland-Jackson v. Oslin*, 555 F. Supp. 2d 213 (D.D.C. 2008)..............................................18, 19

*Dag Enters., Inc. v. Exxon Mobil Corp.*, 226 F.R.D. 95 (D.D.C. 2005)................................40, 41

*Democracy Forward Found. v. White House Off. of Am. Innovation*, 356 F. Supp. 3d 61
   (D.D.C. 2019) .............................................................................................................................8

∗*Deripaska v. Associated Press*, 282 F. Supp. 3d 133 (D.D.C. 2017) ................................. *passim*

*Donald J. Trump for President, Inc. v. CNN*, 2020 WL 6608327 (N.D. Ga. Nov. 12,
   2020) ........................................................................................................................................29

*Dragulescu v. Va. Union Univ.*, 223 F. Supp. 3d 499 (E.D. Va. 2016)........................................14

*Edwards v. Schwartz*, 378 F. Supp. 3d 468 (W.D. Va. 2019) .......................................................21

---

∗ *Authorities upon which counsel chiefly rely are marked with asterisks.*

*EEOC v. Exel Inc.*, 259 F.R.D. 652 (N.D. Ga. 2008) ...................................................41

*Grunseth v. Marriott Corp.*, 868 F. Supp. 333 (D.D.C. 1994) .....................................43

*FAA v. Cooper*, 566 U.S. 284 (2012)............................................................................36

*\*Farah v. Esquire Mag.*, 736 F.3d 528 (D.C. Cir. 2013) ...................................... *passim*

*Freeman v. Busch*, 349 F.3d 582 (8th Cir. 2003) ..........................................................41

*Gomes v. Fried*, 186 Cal. Rptr. 605 (Ct. App. 1982)....................................................35

*Guilford Transp. Indus., Inc. v. Wilner*, 760 A.2d 580 (D.C. 2000).............................19

*Gullo v. City of N.Y.*, 540 F. App'x 45 (2d Cir. 2013)...................................................40

*Hartley v. Dombrowski*, 744 F. Supp. 2d 328 (D.D.C. 2010)........................................32

*Harvey v. CNN*, 520 F. Supp. 3d 693 (D. Md. 2021) ...................................................25

*Headfirst Baseball LLC v. Elwood*, 206 F. Supp. 3d 148 (D.D.C. 2016)......................39

*\*In re Papst Licensing GmbH & Co. KG Litig. [In re Papst]*, 762 F. Supp. 2d 56 (D.D.C. 2011) ......................................................................................................... *passim*

*Intelsat USA Sales LLC v. Juch-Tech, Inc.*, 2015 WL 13672835 (D.D.C. Mar. 2, 2015) .............42

*Jaffe v. Pallotta TeamWorks*, 374 F.3d 1223 (D.C. Cir. 2004) .....................................32

*Kaempe v. Myers*, 367 F.3d 958 (D.C. Cir. 2004) ..........................................................8

*Kahl v. Bureau of Nat'l Affairs, Inc.*, 856 F.3d 106 (D.C. Cir. 2017) ...........................31

*Kay v. N.H. Democratic Party*, 821 F.2d 31 (1st Cir. 1987) .........................................40

*King v. Am. Broad. Cos.*, 1998 WL 665141 (S.D.N.Y. Sept. 28, 1998) .......................35

*Lane v. Random House, Inc.*, 985 F. Supp. 141 (D.D.C. 1995)......................................22

*Liberty Lobby, Inc. v. Dow Jones & Co.*, 838 F.2d 1287 (D.C. Cir. 1988) ...................19

*Libre by Nexus v. Buzzfeed, Inc.*, 311 F. Supp. 3d 149 (D.D.C. 2018)..........................19

*Lovely-Coley v. D.C.*, 255 F. Supp. 3d 1 (D.D.C. 2017) ..................................37, 40, 43

*Lurie v. Mid-Atl. Permanente Med. Grp., P.C.*, 589 F. Supp. 2d 21 (D.D.C. 2008) ...................38

*\*Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496 (1991)................................. *passim*

*Mattiaccio v. DHA Grp., Inc.*, 20 F. Supp. 3d 220 (D.D.C. 2014) ................................32

*McDougal v. Fox News Network, LLC*, 489 F. Supp. 3d 174 (S.D.N.Y. 2020) ...........................30

*Mejia v. Telemundo Mid-Atl. LLC*, 440 F. Supp. 3d 495 (D. Md. 2020).......................................29

*Milkovich v. Lorain J. Co.*, 497 U.S. 1 (1990)..............................................................................18

*Montgomery v. Risen*, 197 F. Supp. 3d 219 (D.D.C. 2016).............................................4, 18, 23

*N.Y. Times Co. v. Sullivan*, 376 U.S. 254 (1964)........................................................3, 5, 27, 29

*Nicosia v. De Rooy*, 72 F. Supp. 2d 1093 (N.D. Cal. 1999) .......................................................21

*Nunes v. CNN*, 520 F. Supp. 3d 549 (S.D.N.Y. Feb. 19, 2021)......................................33, 34, 36

*Nunes v. Lizza*, 12 F.4th 890 (8th Cir. 2021) .......................................................................16, 30

*Ollman v. Evans*, 750 F.2d 970 (D.C. Cir. 1984) .....................................................4, 21, 22, 25

*Park B. Smith, Inc. v. CHF Indus. Inc.*, 811 F.Supp.2d 766 (S.D.N.Y. 2011) .............................39

*SAI v. DHS*, 149 F. Supp. 3d 99 (D.D.C. 2015).........................................................................12

*Secord v. Cockburn*, 747 F. Supp. 779 (D.D.C. 1990) ..............................................................17

*Sherwood v. Kerry*, 2006 WL 2228868 (E.D. Pa. Aug. 3, 2006) .................................................22

*Shipkovitz v. Wash. Post Co.*, 408 F. App'x 376 (D.C. Cir. 2010)...............................................19

*Smith v. Clinton*, 886 F.3d 122 (D.C. Cir. 2018) .......................................................17, 19, 20, 26

*St. Paul Mercury Ins. Co. v. Capitol Sprinkler Inspection, Inc.*, 2007 WL 1589495
(D.D.C. June 1, 2007) .........................................................................................................38, 40

*Stonecrest Partners, LLC v. Bank of Hampton Roads*, 770 F. Supp. 2d 778 (E.D.N.C.
2011) ........................................................................................................................................41

*Szymkowicz v. Frisch*, 2020 WL 4432240 (D.D.C. July 31, 2020) ..............................................36

*Tah v. Glob. Witness Publ'g, Inc.*, 991 F.3d 231 (D.C. Cir.)..................................................27, 31

*Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236 (2d Cir. 2017) .....................19

*Turner v. Wells*, 198 F. Supp. 3d 1355 (S.D. Fla. 2016) ............................................................24

*United States v. Eisenberg*, 149 F. Supp. 3d 71 (D.D.C. 2015)........................................38, 39, 41

*United States v. Hicks*, 283 F.3d 380 (D.C. Cir. 2002)................................................................37

*Wallace v. AlliedBarton Sec. Servs., LLC*, 309 F.R.D. 49 (D.D.C. 2015)....................................40

*Xereas v. Heiss*, 933 F. Supp. 2d 1 (D.D.C. 2013) .........................................................................22

## STATUTES AND RULES

Cal. Civ. Code § 48a ...............................................................................................................34, 35

D.C. Code § 16-4701 ....................................................................................................................43

Fed. R. Civ. P. 9(g) .......................................................................................................................36

Fed. R. Civ. P. 15(d) ................................................................................................................11, 37

Fed. R. Civ. P. 16(b)(4).............................................................................................................5, 37

## OTHER AUTHORITIES

1 Robert D. Sack, *Sack on Defamation* (5th ed. 2017).....................................................19, 23, 35

Restatement (Second) of Torts (Am. Law inst. 1977) .............................................................14, 18

W. Page Keeton et al., *Prosser & Keeton on the Law of Torts* (5th ed. 1984)...........................19

*Webster's Third New International Dictionary* (3d ed. 2002).......................................................26

## INTRODUCTION

On December 6, 2021, Plaintiff Devin Nunes ("Nunes") announced he was going to resign his position as one of the most powerful members of Congress (including as Ranking Member of the House Intelligence Committee) with more than a year remaining in his term, to become the CEO of former President Donald Trump's new media company, Trump Media and Technology Group ("TMTG"). The news was widely covered in the press. It was also the subject of political commentary, including a December 7, 2021 column on the Washington Post website, written by Post correspondent Philip Bump, and appearing under a "Politics Analysis" header (the "December 2021 Column") (Ex. A). The headline, "Devin Nunes Chose Trump-Branded Truth as a Career Five Years Ago," was a play on the name of TMTG's forthcoming "Truth Social" social media platform. The December 2021 Column offers a critical perspective about Nunes's close support of Trump through the years, discussing a series of episodes which are referenced through more than a dozen hyperlinks to news coverage and other sources.

Two days later, on December 9, Nunes filed a "Motion to Supplement Amended Complaint," ECF No. 45 ("Mot."), attaching a "[Proposed] First Supplement to Amended Complaint," ECF No. 45-2 ("Proposed Supplement"). The Proposed Supplement seeks to add two types of allegations to the Amended Complaint, which are analyzed under two different Federal Rules of Civil Procedure. First, it seeks to add a new defamation claim arising from the December 2021 Column. This claim relating to events postdating the Amended Complaint is evaluated under Rule 15(d), and should be rejected as futile. Second, the Proposed Supplement seeks to add pages of unrelated older allegations from the 2016-2017 time period. Even if the Proposed Supplement about the December 2021 Column were not futile, this proposed addition is evaluated pursuant to Rule 16(b), because it pertains to older information and the deadline for amending pleadings has passed. It should be rejected because there is no "good cause" for the amendment. This Opposition

analyzes both issues in turn below.

Nunes tries to sweep the December 2021 Column into the underlying suit by calling it a "republication" of challenged statements in the November 9, 2020 article titled "White House Official and Former GOP Political Operative Michael Ellis Named as NSA General Counsel" at issue in this case (the "November 2020 Article"), Mot. ¶ 6, but it is no such thing.  The November 2020 Article initially stated that "Nunes . . . was given access at the White House to intelligence files that Nunes believed would buttress his baseless claims of the Obama administration spying on Trump Tower."  The Post issued a correction changing that statement to ". . . intelligence files that Nunes believed would buttress Trump's baseless claims of the Obama administration spying on Trump Tower," while noting that "Nunes has stated he did not believe there had been any wiretapping of Trump Tower."  Memorandum Opinion (Aug. 11. 2021) ("Op.") 2, 3-4, ECF No. 41.  The Court held that the initial statement was potentially defamatory because it might be construed to mean "that Nunes had made baseless claims."  *Id*. 8.

But the December 2021 Column does not assert that Nunes made baseless claims about wiretapping of Trump Tower or believed he was buttressing them.  Rather, it states that in March 2017 Nunes was "summoned to the White House complex," "where *staffers presented him* with evidence meant to bolster a wild claim made by the president," i.e., "that federal authorities had tapped the phones at Trump Tower during the campaign."  Ex. A (emphasis added).  In other words, he was *presented* with information about incidental collection that *White House staffers* meant to bolster the President's claim.

And the December 2021 Column makes clear that Nunes's public statements about the information he received were limited to allegations of incidental collection and unmasking, which his Amended Complaint itself asserts are true.  *Compare* Ex. A ("'I recently confirmed that on

numerous occasions the intelligence community incidentally collected information about U.S. citizens involved in the Trump transition,' [Nunes] said at a news conference.") *with* Am. Compl. ¶ 22(a) n.3, ECF No. 22 ("Plaintiff's truthful statements that there was unmasking, FISA and other surveillance used against certain members of the Trump campaign . . . ").  Although the Column is critical of Nunes for "dutifully" "hyp[ing]" this revelation (in a passage that the Proposed Supplement does not challenge), it does *not* say that Nunes "hyped" the Trump Tower wiretapping claim.  Rather, it says that Nunes made statements about incidental collection and unmasking that the White House could use as legitimate evidence analogous enough to Trump's claim for its purposes.  Ex. A; *see id.* (noting Trump's excitement about Nunes's discovery).

Nunes's claim for defamation arising from the December 2021 Column is futile.  While Nunes alleges that the December 2021 Column is a "republication" of the November 2020 Article, in fact, it is a new, independent piece of political commentary.  Evaluated on its own terms, the Proposed Supplement fails to state a claim for defamation, for multiple independent reasons.

First, the Proposed Supplement fails to identify any false and defamatory statement that is "of and concerning" Nunes, particularly in light of the wide constitutional latitude afforded political commentary.  The December 2021 Column must be evaluated against the backdrop of the First Amendment, which protects "our profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964).

Bump's criticism that Nunes pursued "Trump-branded truth" is classic "loose, figurative" political rhetoric that is non-verifiable, and non-actionable.  *See, e.g.*, *Farah v. Esquire Mag.*, 736 F.3d 528, 540 (D.C. Cir. 2013) ("Any reasonable reader of political blog commentary knows that

it often contains conjecture and strong language."). But even if the political jab were capable of verification, it would certainly not be defamatory. It does not rise above the level of "criticism, disparagement, and even wounding assessments" that are stock-in-trade for politicians like Nunes. *See, e.g.*, *Ollman v. Evans*, 750 F.2d 970, 1005 (D.C. Cir. 1984) (en banc) (Bork, J., concurring) ("We think the first amendment demands a hide that tough.").

The statement that White House "staffers presented [Nunes] with evidence meant to bolster a wild claim made by the president" is not actionable, either. It is not "of and concerning" Nunes, *see Deripaska v. Associated Press*, 282 F. Supp. 3d 133, 144 (D.D.C. 2017), because, in context, it can be interpreted as nothing other than a statement that the *White House staff* meant for this to happen. In addition, Bump's commentary about the "possible feelings or motivations behind [the staffers'] actions" is also a "non-actionable statement of opinion," because it "is a subjective judgment that is not verifiable." *Montgomery v. Risen*, 197 F. Supp. 3d 219, 248-49 (D.D.C. 2016), *aff'd* 875 F.3d 709 (D.C. Cir. 2017). And the basis for Bump's commentary is fully disclosed to readers, who can form their own opinions. The statement is also not defamatory of Nunes; it does not disgrace him to state that he received information about incidental collection, or to quote him describing that information to the public.

The remaining statements are non-actionable for similar reasons; Nunes's gripes that the December 2021 Column falsely says he was "riding in an Uber with a staffer," or that he was "summoned" to the White House, are at most nothing more than minor inaccuracies that cannot support a claim. *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 517 (1991).

Second, the Proposed Supplement fails to plausibly allege that Defendants published the December 2021 Column with actual malice. Plaintiff's allegations as to the December 2021 Column are threadbare and fail for multiple reasons, including because they do not "bring home"

4

the state of mind required for actual malice to "to the persons in the [Post] organization having responsibility for the publication," i.e., Bump himself.  *N.Y. Times*, 376 U.S. at 287.

Third, any claim arising from the December 2021 Column should be governed by California law, and because Plaintiff failed to comply with the terms of California's retraction statute, he can recover only special damages, which he has not even attempted to plead.  Although the Court held that D.C. law applied to Nunes's prior defamation claim, that conclusion was influenced by his allegations that he would suffer damages in the D.C. area related to his work as a Congressman.  Those considerations recede in connection with a column published after Nunes announced he would resign from public service to become a social media company's CEO.

In addition to his new allegations regarding the December 2021 Column, Nunes also seeks to use his Motion to further amend his Amended Complaint with pages of allegations relating to events that supposedly took place from 2016-2017.  *See* Proposed Supp. ¶¶ 14(a)-(d) (the "New 2016-2017 Allegations").  Where, as here, a plaintiff seeks to add factual information that existed prior to the filing of the complaint, "Rule 15(d) is inapplicable."  *Banks v. York*, 448 F. Supp. 2d 213, 214 (D.D.C. 2006).  Instead, Rule 16(b) applies to these allegations, because the Court's October 6, 2021 Scheduling Order imposed a deadline for Plaintiff to amend his claims–October 29, 2021–and that deadline passed.  Plaintiff did not file his Motion until December 9, 2021.

Rule 16(b) provides that a scheduling order shall be modified "only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4).  To establish good cause under this "more stringent" standard, "the moving party must show *both* diligence and a lack of prejudice to the opposing parties."  *In re Papst Licensing GmbH & Co. KG Litig.* [*In re Papst*], 762 F. Supp. 2d 56, 59 (D.D.C. 2011) (emphasis added).  But there is no good cause here.  Nunes cannot show he was diligent because he had this information available to him for *years* before filing his Complaint;

this failure alone ends the inquiry. *Id.* And his attempt to include irrelevant and burdensome material would prejudice Defendants by expanding the relevant time period and articles at issue.

Because the supplemental allegations about the December 2021 Column are futile, the Motion should be denied with prejudice. But even if the Proposed Supplement as to the December 2021 Column were allowed, the New 2016-2017 Allegations should nevertheless be rejected, because there is no good cause to allow them after the pleading deadline.

## BACKGROUND

### A.    November 2020 Article and Procedural History

In this case, former Congressman Devin Nunes sued the Washington Post and Post journalist Ellen Nakashima, claiming he was defamed in the "November 2020 Article."

The November 2020 Article reported that Michael Ellis, who previously worked as Nunes's chief counsel before leaving for a job at the White House, had been appointed to the position of NSA general counsel. In discussing Ellis's professional background, the November 2020 Article briefly mentioned Nunes in two statements that Plaintiff's February 4, 2021 Amended Complaint contends are defamatory. First, the November 2020 Article stated: "In March 2017, [Ellis] gained publicity for his involvement in a questionable episode involving Nunes, who was given access at the White House to intelligence files that Nunes believed would buttress his baseless claims of the Obama administration spying on Trump Tower." Second, it continued: "News reports stated that Ellis was among the White House officials who helped Nunes see the documents — reportedly late at night, earning the episode the nickname 'the midnight run.'" Nunes alleged that these two statements were false and defamatory because he did not make or believe claims that anyone wiretapped Trump Tower, Am. Compl. ¶¶ 17(b)-(c), and because the incident described as "the midnight run" took place during daylight hours, *id.* ¶ 22(a).

The Post published a corrected version of the November 2020 Article in December 2020, which edited the challenged statements by changing the reference from "his baseless claims" to "Trump's baseless claims," and by adding the following sentence to clarify the timing of Nunes's March 2017 White House visit: "The precise timing of the visit is unclear, and Nunes has said it took place during daylight hours."  The Post also added a correction note at the top of the Article: "As originally published, this article inaccurately attributed claims that the Obama administration spied on Trump Tower to Rep. Devin Nunes (R-Calif.), rather than to President Trump.  Nunes has stated that he did not believe there had been any wiretapping of Trump Tower.  This article has also been updated to note that Nunes says an incident known as the 'midnight run' took place during daylight hours."  Op. 3-4.

Defendants previously moved to dismiss Plaintiff's Amended Complaint for failure to state a claim.  On August 11, 2021, the Court held that "[a]lthough the question is a close one, Nunes's allegations suffice to survive dismissal as to his defamation claim, but not as to his negligence claim." *Id.* 1.

On October 1, 2021, the parties submitted a proposed case schedule to the Court.  The parties' agreed schedule contemplated "that any amendment to the pleadings . . . shall take place on or before October 29, 2021."  *See* Joint Report of Local Rule 16.3 Conference, ECF No. 44. The Court subsequently entered a minute order on October 6, 2021, adopting the October 29, 2021 deadline for amendments to the pleadings.

### B.    Nunes's Resignation from Congress

On December 6, 2021, Nunes announced that he was resigning from Congress at the end of the year to accept a position as CEO of TMTG.  Proposed Supp. ¶ 14(g).  Former President Donald Trump, the Chairman of TMTG, issued the following statement in the company's press release announcing Nunes's appointment as CEO: "Congressman Devin Nunes is a fighter and a

7

leader.  He will make an excellent CEO of TMTG.  Devin understands that we must stop the liberal media and Big Tech from destroying the freedoms that make America great.  America is ready for TRUTH Social and the end to censorship and political discrimination."[1]  Trump's reference to "TRUTH Social" is to "TMTG's upcoming social media platform," which the company states "will provide an outlet that encourages open global conversation without discrimination against political ideology."  *Id.*

Nunes's announcement was major news and widely reported in the press.  On December 6, 2021, the same day as the announcement, the Post published a news article which explained that he was leaving as one of the most powerful members of Congress: "Nunes would have been in line to be chairman of the House Ways and Means Committee, if the GOP takes back the House majority in 2022.  But by stepping down, he is giving up what is considered the most powerful committee gavel."  Amy B. Wang & David Weigel, *Rep. Devin Nunes to Leave Congress to Become Trump Media Company CEO*, Wash. Post (Dec. 6, 2021).[2]  The TMTG press release stated that Nunes will begin his role as CEO "starting in January."  *Id.*  Thus, Nunes chose to step down with "about a year" remaining in his current term, *id.*, including his position as Ranking Member of the House Intelligence Committee.

---

[1]  *See* Press Release, TMTG, *Congressman Devin G. Nunes, Ranking Member of the House Intelligence Committee, To Join Trump Media & Technology Group as Chief Executive Officer* (Dec. 6, 2021), https://ir.tmtgcorp.com/news-events/press-releases/.  The Court may take judicial notice of such public records in assessing the sufficiency of allegations at the motion to dismiss stage.  *See Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004).

[2]  *See* https://www.washingtonpost.com/politics/2021/12/06/rep-devin-nunes-leave-congress-become-trump-media-company-ceo/.  The Court may take judicial notice of this article because it is "directly referenced and cited" in the Proposed Supplement.  *See* Proposed Supp. ¶ 14(g); *see also Democracy Forward Found. v. White House Off. of Am. Innovation*, 356 F. Supp. 3d 61, 70 n.8 (D.D.C. 2019).  Additionally, "[j]udicial notice is properly taken of publicly available historical articles."  *Farah v. Esquire Mag.*, 736 F.3d 528, 534 (D.C. Cir. 2013).

C.      The December 2021 Column

On December 7, 2021, the day after Nunes's announcement, the Post published an online analysis column by Philip Bump titled "Devin Nunes Chose Trump-Branded Truth as a Career Five Years Ago." Ex. A.[3]  The December 2021 Column includes an "Analysis" header at the top of the webpage.  *Id.*  The December 2021 Column features Bump's analysis and criticism of Nunes's close affiliation with President Trump over the course of his presidential term.

Bump writes that while "Nunes will be able to help shape 'Truth Social,'" i.e., Trump's new social media platform, in his new position as CEO, "the reality, of course, is that Nunes has been working primarily on behalf of Trump-branded truth since the earliest days of Trump's presidency." *Id.*  He then proceeds to criticize how Nunes had supported President Trump through various controversies over the years, linking to numerous source materials providing the basis for a number of statements.  These sources include, for example, the Post's news article about Nunes's resignation, which had been published the day before; Nunes's own press release; and more than ten other hyperlinks to prior columns and news articles.

The first episode Bump analyzes is the so-called midnight run (although the Column does not use that terminology or state what time it happened).  Specifically, the December 2021 Column says:

> Two months after Trump was inaugurated, Nunes was riding in an Uber with a staffer when he got a message on his phone.  Suddenly, he stopped the car and got out without explanation. He had been summoned to the White House complex, it turned out, where staffers presented him with evidence meant to bolster a wild claim made by the president.  That claim was that federal authorities had tapped the phones at Trump Tower during the campaign, an allegation that was elevated by right-wing radio host Mark Levin.  It wasn't true, as was made clear both immediately and continuously.

---

[3] Plaintiff's allegation that the Post published the statements in "the print edition of its newspaper," Proposed Supp. ¶14(i), is incorrect.

Ex. A.

The word "stopped" includes a hyperlink to a March 30, 2017 timeline piece titled "The Nunes-White House Question, Assessed Minute-by-Minute," which provided substantially more detail about the episode, and discussed newly reported evidence at the time that White House officials had provided the intelligence material to Nunes during his visit. Ex. B (the "2017 Timeline"). The 2017 Timeline included several quotations of contemporaneous statements from Nunes, President Trump, Sean Spicer, and others, such as Nunes's March 20, 2017 statement that "we know there was not a wiretap on Trump Tower. However, it's still possible that other surveillance activities were used against President Trump and his associates," as well as Nunes's March 22, 2017 statement that "I recently confirmed that on numerous occasions, the intelligence community incidentally collected information about U.S. citizens involved in the Trump transition." *Id.* The 2017 Timeline also included links related to President Trump's March 22, 2017 statements that he thought that the incidental collection information announced by Nunes had at least partially vindicated him. *Id.*

The December 2021 Column proceeds to explain what Nunes actually said about the information he had been shown, quoting his public statements as follows:

> "I recently confirmed that on numerous occasions, the intelligence community incidentally collected information about U.S. citizens involved in the Trump transition," he said at a news conference. He later added that he had "confirmed that additional names of Trump transition team members were unmasked."

Ex. A. The Column also explains that this "was not evidence that phones were tapped at Trump Tower during the campaign." *Id.* Thus, the December 2021 Column makes clear that Nunes's public statements indicated that he had seen evidence of incidental collection and unmasking, and not evidence of wiretapping.

The December 2021 Column then goes on to describe and opine on Nunes's involvement in other events and controversies that occurred later during Trump's presidency.

### D.    The Motion To Supplement the Amended Complaint

Plaintiff did not contact the Post to request a correction or retraction to the December 2021 Column.  Instead, on December 9, 2021, he filed what he styles as a "Motion to Supplement Amended Complaint," attaching his Proposed Supplement.[4]

Plaintiff states that he "requests leave to supplement his amended complaint" pursuant to Fed. R. Civ. P. 15(d) in light of two recent developments: Nunes's December 6, 2021 announcement of his resignation from Congress to accept a position as CEO of TMTG and the Post's subsequent December 2021 Column.  Mot. 5-6.

The Proposed Supplement regarding these allegations is relatively brief, and appears to include paragraphs 14(i)-14(l), as well as 22(g).  Plaintiff seeks to supplement his Amended Complaint to allege that two paragraphs in the December 2021 Column were a republication of challenged statements in the November 2020 Article and false and defamatory.  Specifically, he identifies the December 2021 Column's headline and the following statement:

> The reality, of course, is that Nunes has been working primarily on behalf of Trump-branded truth since the earliest days of Trump's presidency.
>
> Two months after Trump was inaugurated, Nunes was riding in an Uber with a staffer when he got a message on his phone.  Suddenly, he stopped the car and got out without explanation.  He had been summoned to the White House complex, it turned out, where staffers presented him with evidence meant to bolster a wild claim made by the president. That claim was that federal authorities had tapped the

---

[4] The Court's Standing Order for Civil Cases requires that "[a]ny amended pleadings shall be accompanied by a redline comparison of the original and amended pleading," ECF No. 37, but Plaintiff's Motion was not accompanied by a redline.  The Proposed Supplement *appears* to be intended to replace the prior pleading beginning at paragraph 14 (where the numbering of the "supplemental" allegations begins).

phones at Trump Tower during the campaign . . . It wasn't true, as
was made clear both immediately and continuously.

*See* Proposed Supp. ¶ 14(i) (collectively, the "Challenged Statements").  Beyond this excerpt,

Plaintiff's Proposed Supplement does not include allegations pertaining to any other statements in

the December 2021 Column.  Nor does it include any allegation to explain how the December

2021 Column specifically defamed Plaintiff, or caused him to suffer any damage.

In addition to adding these few allegations regarding the December 2021 Column, the

Proposed Supplement also includes more than twelve pages of new allegations relating to events

that allegedly took place years before Plaintiff filed his initial Complaint.  *See id.* ¶¶ 14(a)-(d).

Although neither Plaintiff's original Complaint nor his Amended Complaint discuss the issue of

leaking to the media, Plaintiff now seeks to add extensive allegations asserting a new theory that

"[b]etween December 2016 and March 21, 2017, WaPo aided and abetted multiple criminal leaks

of highly classified information from the U.S. Intelligence Community."  *Id.* ¶¶ 14(a).  Plaintiff's

"timeline" of these asserted "leaks" seeks to sweep into the case numerous Post articles which

were not previously at issue, most of which predated the so-called "midnight run."  His allegations

clarify that he had this information years before he filed his initial Complaint or Amended

Complaint, long before the deadline to further amend his Amended Complaint had passed.

## ARGUMENT

### I.   THE SUPPLEMENTAL CLAIM RELATED TO THE DECEMBER 2021 COLUMN SHOULD BE REJECTED AS FUTILE.

Whether the Court construes Plaintiff's Motion as a motion to amend or to supplement, it

"should be denied where amendment (or supplementation) would be futile, *i.e.*, if the proposed

claim would not survive a motion to dismiss."  *Clean Water Action v. Pruitt*, 315 F. Supp. 3d 72,

80 (D.D.C. 2018) (cleaned up); *SAI v. DHS*, 149 F. Supp. 3d 99, 126 (D.D.C. 2015).  "Rule 12

plays an especially important role in defamation cases, such as this one.  . . .  Early resolution of

defamation cases under Federal Rule of Civil Procedure 12(b)(6) not only protects against the costs of meritless litigation, but provides assurance to those exercising their First Amendment rights that doing so will not needlessly become prohibitively expensive." *BYD Co. v. All. for Am. Mfg.*, 2021 WL 3472386, at *2 (D.D.C. Aug. 6, 2021) (quotation marks omitted).

With regard to the December 2021 Column, Plaintiff's Proposed Supplement alleges that the Challenged Statements "republished" allegedly defamatory statements in the November 2020 Article, *see* Proposed Supp. ¶ 14(i), and are false because:  (1) "Plaintiff did not go to the White House complex on March 21, 2017 as part of an effort to promote 'Trump-branded truth'"; (2) "Plaintiff was not 'summoned to the White House complex' by anyone"; (3) "[Plaintiff] was not 'riding in an Uber' with anyone"; and (4) "'[S]taffers' did not 'present[] him with evidence meant to bolster a wild claim made by the president' 'that federal authorities had tapped the phones at Trump Tower during the campaign,'" *id.* ¶ 14(j).

Plaintiff's attempt to add a defamation claim arising from the Post's publication of the December 2021 Column is futile.  The December 2021 Column did not republish the original or corrected versions of the November 2020 Article, contrary to Plaintiff's assertions.  And, analyzed on their own terms, none of the Challenged Statements in the December 2021 Column can support a defamation claim for multiple reasons, including because they are not of and concerning Nunes, they are not materially false (including because some are protected opinion), and they are not reasonably capable of defamatory meaning.  In addition, Plaintiff fails to plausibly allege actual malice.  Finally, any claim arising from the December 2021 Column should be governed by California law, and because Plaintiff failed to comply with the terms of California's retraction statute, he can recover only special damages, which he has not attempted to plead.

A.      **The December 2021 Column Did Not Republish the Original or Corrected Versions of the November 2020 Article.**

Plaintiff seeks to supplement his Amended Complaint to add allegations that the December 2021 Column "republished the false and defamatory statements at issue in this action."  Mot. 3, 6; Proposed Supp. ¶¶ 14(i) ("On December 7, 2021 . . . WaPo republished the false and defamatory statements at issue in this action in the print edition of its newspaper, online, and to 18,500,000+ social media followers."), 14(k) ("WaPo invented this story in December 2020 and republished it again in December 2021 as an alternate reality after Plaintiff pointed out the falsehoods in the November 9, 2020 Article and demanded retraction.").  Plaintiff's assertions of republication are incorrect.

"[T]he test of whether a statement has been republished is if the speaker has affirmatively reiterated it in an attempt to reach a new audience that the statement's prior dissemination did not encompass."  *Clark v. Viacom Int'l Inc.*, 617 F. App'x 495, 505 (6th Cir. 2015).  But where, as here, the allegedly defamatory statements are separate, they should be analyzed as separate causes of action on their own terms.  *See, e.g.*, *Dragulescu v. Va. Union Univ.*, 223 F. Supp. 3d 499, 513 (E.D. Va. 2016) (where the allegedly defamatory "content does not match" prior publication, the new statements "cannot be considered a 're-publication'"); *Adelson v. Harris*, 973 F. Supp. 2d 467, 503 n.25 (S.D.N.Y. 2013) (rejecting argument that press release was a republication where it did not contain the same allegedly defamatory statements); Restatement (Second) of Torts § 577A (1977).

The December 2021 Column does not repeat or reference allegedly defamatory statements in the November 2020 Article.

First, the Column does not repeat the allegedly defamatory statement in the November 2020 Article that Nunes was given access at the White House to intelligence files that "Nunes

14

believed would buttress his baseless claims" (as stated in the original publication in November 2020) or "Trump's baseless claims" (as stated in the corrected version in December 2020) of the Obama administration spying on Trump Tower.  The Column does *not* attribute any "wild" or "baseless claims" to Nunes—it states that Nunes was "summoned to the White House complex" where "*staffers* presented him with evidence meant to bolster a wild claim made by the president." Ex. A (emphasis added).  *Compare* Op. 7 ("A reasonable juror could therefore conclude that the article was materially false because it stated that Nunes had made such a baseless claim (when he had not).").[5]

The Column also does not repeat that Nunes "believed" intelligence files he reviewed would buttress "Trump's baseless claims" of the Obama administration spying on Trump Tower.[6] Rather, Nunes is described as having been "presented with" or "shown" files that were "not evidence that phones were tapped at Trump Tower during the campaign," but "evidence that, while surveilling a Russian official, the government had captured a discussion involving Michael Flynn, then working as an adviser to Trump's transition team."  Ex. A.  And the Column quotes Nunes's public statements about the evidence he was shown, making clear that they addressed incidental collection and unmasking.  *See* Ex. A ("'I recently confirmed that on numerous occasions, the intelligence community incidentally collected information about U.S. citizens involved in the

---

[5] In addition, the Column hyperlinks a March 30, 2017 article, which explicitly quotes Nunes's statement denying the wiretapping claim.  *See* Ex. B ("[W]e know there was not a wiretap on Trump Tower.  However, it's still possible that other surveillance activities were used against President Trump and his associates.").

[6] This excerpt of the corrected version of the November 2020 Article must be viewed in the context of the correction published at the top of the Article, which states explicitly that Nunes denied the wiretapping claim: "As originally published, this article inaccurately attributed claims that the Obama administration spied on Trump Tower to Rep. Devin Nunes (R-Calif.), rather than to President Trump.  Nunes has stated that he did not believe there had been any wiretapping of Trump Tower.  This article has also been updated to note that Nunes says an incident known as the 'midnight run' took place during daylight hours."  Op. 4.

Trump transition,' he said at a news conference.  He later added that he had 'confirmed that additional names of Trump transition team members were unmasked.'").  Nunes does not and cannot suggest that the quotations of his statements are inaccurate.  Indeed, he specifically alleges in the Amended Complaint that his statements about such unmasking were "truthful."  *See* Am. Compl. ¶ 22(a) & n.3.  Although the Column notes that the White House was able to use evidence like this to argue that what Trump had said was at least somewhat analogous, *see* Ex. A, there is not a statement that Nunes made false allegations himself, or aimed to bolster or buttress Trump's false wiretapping claims.  Instead, the Column states that Nunes reported evidence about the incidental collection and unmasking intelligence he had been presented, which "could be considered evidence of" Trump's statements "when considered with an abundance of generosity in the right light."  Ex. A.

Second, the December 2021 Column does not reference any "midnight run" by Plaintiff, or make any statement regarding the alleged timing of Plaintiff's trip to the White House (and Nunes does not allege that there was a republication of this statement).

Plaintiff cites the Eighth Circuit's recent decision in *Nunes v. Lizza*, 12 F.4th 890 (8th Cir. 2021), to suggest that the Column is a republication.  Mot. 5.  But that case is inapposite.  In *Lizza*, the court held that a journalist's tweet *linking to the challenged article at issue in ongoing litigation* constituted a republication of that article because the author "consciously presented the material to a new audience."  12 F.4th at 900-02.  But here, the Column did not link or refer to any version of the November 2020 Article, or repeat statements in that Article.  Accordingly, the December 2021 Column does not "consciously present[] the material [in the November 2020 Article] to a new audience."  *Id.*  It is simply a different publication.

In sum, the Column did not republish the allegedly defamatory statements in the November 2020 Article.  To the extent that Plaintiff asserts a claim based on new statements in the December 2021 Column, his Proposed Supplement fails to state a claim upon which relief can be granted. This is so for the multiple independently dispositive reasons discussed below.

### B.   The Proposed Supplement Fails To State a Claim of Defamation Arising from the December 2021 Column.

#### 1.   Defamation Elements and Principles.

A plaintiff claiming defamation must allege: (1) the defendant made a false and defamatory statement of fact (i.e., not opinion) concerning the plaintiff; (2) the defendant published the statement without privilege to a third party; (3) the defendant's fault in publishing the statement; and (4) either the statement was actionable as a matter of law irrespective of special harm, or its publication caused the plaintiff special harm.  *See Smith v. Clinton*, 886 F.3d 122, 128 (D.C. Cir. 2018) (per curiam); *Secord v. Cockburn*, 747 F. Supp. 779, 783 (D.D.C. 1990).  The statements at issue in the December 2021 Column are not actionable for one or more of the following reasons:

- **Of and Concerning:** "Defamation is personal; a plaintiff who alleges defamation must show that the statement was published 'of and concerning' him."  *Deripaska v. Associated Press*, 282 F. Supp. 3d 133, 138, 144 (D.D.C. 2017).  Accordingly, a plaintiff cannot state a claim based on a statement that is about someone else—no matter how closely associated the plaintiff is with that person.  *See, e.g.*, *id.* (statement that Paul Manafort engaged in illegal lobbying while "secretly work[ing]" for plaintiff were not of and concerning the plaintiff); *Abbas v. Foreign Pol'y Grp., LLC*, 975 F. Supp. 2d 1, 19 (D.D.C. 2013) (statements concerning alleged "ill-gotten gains" of plaintiff's father "cannot be the basis of any libel claim brought by [plaintiff], because they are not of and concerning him"), *aff'd*, 783 F.3d 1328 (D.C. Cir. 2015).

- **Opinion:** "A statement of opinion that 'does not contain a provably false factual connotation' is not actionable under the First Amendment, and receives 'full constitutional protection.'" *Montgomery*, 197 F. Supp. 3d at 247-48 (quoting *Milkovich v. Lorain J. Co.*, 497 U.S. 1, 20 (1990)). Thus, a statement is not actionable if it cannot be objectively verified as false or cannot "reasonably be interpreted as stating actual facts" about the plaintiff. *Milkovich*, 497 U.S. at 18-20. "[E]xpressions of a subjective view, an interpretation, a theory, conjecture, or surmise are not provably false and thus cannot undergird a claim of defamation." *Bauman v. Butowsky*, 377 F. Supp. 3d 1, 10–11 (D.D.C. 2019). "Similarly, statements that are loose, figurative, or hyperbolic generally are not actionable." *Montgomery*, 197 F. Supp. 3d at 247; *see Farah*, 736 F.3d at 540 (holding that such language "negate[d] the impression that a factual statement was being made") (quotation marks omitted). In addition, where an author sets forth the facts upon which his interpretation is based, leaving the reader "free to draw his or her own conclusions based upon those facts," the author's opinion is protected by the First Amendment and "is not actionable in defamation." *Farah*, 736 F.3d at 535, 539 (quotation marks omitted); *see also Bauman*, 377 F. Supp. 3d at 11 n.7 (similar, quoting *Adelson*, 973 F. Supp. 2d at 484); Restatement (Second) of Torts § 566 cmt. c. (Am. Law Inst. 1977). To determine whether a statement is one of opinion or fact, "the publication must be taken as a whole, and in the sense in which it would be understood by the readers to whom it was addressed. The First Amendment demands that the court assess the disputed statements in their proper context." *Farah*, 736 F.3d at 535 (cleaned up).

- **Material Falsity:** The truth of the publication is a complete defense in a libel action." *Copeland-Jackson v. Oslin*, 555 F. Supp. 2d 213, 217 (D.D.C. 2008). "Minor inaccuracies do not amount to falsity so long as the substance, the gist, the sting, of the libelous charge be justified." *Masson v. New Yorker Mag.*, 501 U.S. 496, 517 (1991) (internal quotation

marks omitted); *accord Liberty Lobby, Inc. v. Dow Jones & Co.*, 838 F.2d 1287, 1296 (D.C. Cir. 1988) (noting that a statement is nonactionable if "[t]he sting of the charge . . . is substantially true"). A statement is only materially false if it has "a different effect on the mind of the reader from that which the pleaded truth would have produced." *Shipkovitz v. Wash. Post Co.*, 408 F. App'x 376, 378 (D.C. Cir. 2010) (per curiam) (quoting *Masson*, 501 U.S. at 517). Courts here and elsewhere regularly dismiss defamation cases at the motion to dismiss stage where the factual allegations in the complaint fail to establish that the publication was materially false. *See, e.g.*, *Copeland-Jackson*, 555 F. Supp. 2d at 217 (granting motion to dismiss); *Libre by Nexus v. Buzzfeed, Inc.*, 311 F. Supp. 3d 149, 158 (D.D.C. 2018) (same); *Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 247 (2d Cir. 2017) ("[W]hen falsity is an element of a state defamation claim, federal courts have required plaintiffs to plead facts that, if proven, would allow a reasonable person to consider the statement false.") (citing cases).

- **Defamatory Meaning:** Even if challenged statements of and concerning the plaintiff are materially false, a plaintiff must also plead that they are defamatory. "An allegedly defamatory remark must be more than unpleasant or offensive; the language must make the plaintiff appear odious, infamous, or ridiculous." *Smith*, 886 F.3d at 128 (quotation marks omitted). "There is common agreement that a communication that is merely unflattering, annoying, irksome, or embarrassing . . . is not actionable." 1 Robert D. Sack, *Sack on Defamation* § 2.4.1 (5th ed. 2017). Rather, defamation "*necessarily . . . involves the idea of disgrace.*" *Guilford Transp. Indus., Inc. v. Wilner*, 760 A.2d 580, 594 (D.C. 2000) (emphasis in original) (quoting W. Page Keeton et al., *Prosser & Keeton on the Law of Torts* § 111, at 773 (5th ed. 1984)). Whether the challenged statements are defamatory is a legal question to be resolved by the court in the first instance. *Smith*, 886 F.3d at 128. "The plaintiff has the burden of proving the defamatory nature

of [the challenged] publication, and the publication must be considered as a whole, in the sense in which it would be understood by the readers to whom it was addressed." *Abbas*, 975 F. Supp. 2d at 14 (cleaned up). Courts routinely dismiss defamation claims where the challenged statements fall short. *See, e.g.*, *id.* at 16; *Smith*, 886 F.3d at 128; *Deripaska*, 282 F. Supp. 3d at 149.

> **2.**     **The Challenged Statements Fail To State a Claim for Multiple Reasons.**
>
> **a.**     **The "Trump-Branded Truth" Statement and Headline Are Not Actionable.**

Nunes takes issue with the following sentence in the December 2021 Column: "The reality, of course, is that Nunes has been working primarily on behalf of Trump-branded truth since the earliest days of Trump's presidency." Proposed Supp. ¶ 14(i). This statement mirrors the Column's headline, "Devin Nunes chose Trump-branded truth as a career five years ago." *Id.* Nunes complains that these statements are false and defamatory because he "did not go to the White House complex on March 21, 2017 as part of an effort to promote 'Trump-branded truth.'" *Id.* ¶ 14(j). But the "Trump-branded truth" statements are not actionable for multiple reasons.

To start, both the general context of the column and specific language of the "Trump-branded truth" statement and headline show that they are non-actionable opinion.

Readers of the December 2021 Column understand that it is online political *commentary*. The Column appears on the Post website under a "Politics *Analysis*" header. *See* Ex. A (emphasis added). Courts in this Circuit and elsewhere have repeatedly recognized that readers of such political commentary, and especially *online* political commentary, are "fully aware that the statements found there are not 'hard' news like those printed on the front page," but are instead the author's personal analysis and interpretation of news reported elsewhere. *See Abbas*, 975 F. Supp. 2d at 17 ("It is reasonable to assume that the 'Arguments' section of FP is one in which readers expect to find analytical and opinionated pieces that reflect a particular viewpoint."); *see*

*also Farah*, 736 F.3d at 540 ("Any reasonable reader of political blog commentary knows that it often contains conjecture and strong language."); *Biro v. Conde Nast*, 2014 WL 4851901, *4 (S.D.N.Y. Sept. 30, 2014) (similar), *aff'd in part*, 807 F.3d 541 (2d Cir. 2015), *aff'd*, 622 F. App'x 67 (2d Cir. 2015).

In addition, the facts supporting Bump's commentary are disclosed throughout the December 2021 Column, including with hyperlinks to fourteen different sources. This "hyperlinked source material" further "serves to put the reader on notice that the piece is one of opinion." *Abbas*, 975 F. Supp. 2d at 16.[7] The reader of the December 2021 Column is, therefore, "free to review" the disclosed factual information, including through the hyperlinks, and "to draw his or her own conclusions based upon those facts." *Farah*, 736 F.3d at 539; *see Bauman*, 377 F. Supp. 3d at 11 & n.7. Readers are capable of deciding for themselves whether they agree with Bump that Nunes "chose Trump-branded truth as a career."

Where, as here, the general context of the publication shows it is political commentary, "courts have rightly been wary of finding statements to be defamatory, unless the statements . . . clearly go beyond the realm of interpretation." *Ollman*, 750 F.2d at 988. Such commentary is "at the heart of the First Amendment" protection of "the free flow of ideas and opinions on matters of

---

[7] For online publications, underlying facts may be "disclosed" either by reference in the text of the publication itself, or with hyperlinks, which are "the twenty-first century equivalent of the footnote for purposes of attribution in defamation law." *Adelson*, 973 F. Supp. 2d at 484. Thus, courts across the country routinely dismiss defamation cases where stated opinions are based on facts disclosed through hyperlinks. *See, e.g.*, *Abbas*, 975 F. Supp. 2d at 16 & 18 n.7; *Adelson*, 973 F. Supp. 2d at 484; *Biro*, 2014 WL 4851901, at *4; *see also, e.g.*, *Edwards v. Schwartz*, 378 F. Supp. 3d 468, 538 n.33 (W.D. Va. 2019) (inclusion of hyperlinks to supporting material "alleviates whatever defamatory potential existed in the first place"); *Agora, Inc. v. Axxess, Inc.*, 90 F. Supp. 2d 697, 704-05 (D. Md. 2000) (dismissing defamation claim based in part on facts disclosed in hyperlinked documents), *aff'd*, 11 F. App'x 99 (4th Cir. 2001); *Nicosia v. De Rooy*, 72 F. Supp. 2d 1093, 1103 (N.D. Cal. 1999) (providing "a hyperlink for immediate access to such articles . . . adequately disclosed the facts underlying" the opinion expressed).

public interest and concern." *See Abbas*, 975 F. Supp. 2d at 17.  "[T]his recognition has been vigorously upheld in the District of Columbia." *Id.* Criticism of a Congressman related to his resignation to become the CEO of a former president's new media company falls within the guarded ground of constitutionally protected political speech.

In addition, the phrase "Trump-branded truth"—a play on words referencing the Trump company's forthcoming "Truth Social" social media platform referenced in the Column's second paragraph—is "loose, figurative" rhetoric that is commonplace in political commentary (as well as politics itself), and non-actionable.  *See, e.g.*, *Bauman*, 377 F. Supp. 3d at 5 (statements that plaintiff was "simply a hired guy who will say anything" and "should apologize to the country for crafting a lie" are non-verifiable opinion); *Xereas v. Heiss*, 933 F. Supp. 2d 1, 18 (D.D.C. 2013) (statements that plaintiff engaged in "dishonest" and "deceptive" business practices are non-verifiable opinion); *Lane v. Random House, Inc.*, 985 F. Supp. 141, 151 (D.D.C. 1995) (statement that plaintiff was "guilty of misleading the American public" is non-verifiable opinion); *Sherwood v. Kerry*, 2006 WL 2228868, at *2 (E.D. Pa. Aug. 3, 2006) (statements that plaintiff was a "Bush hack" who "should be ashamed of his dishonesty" are non-verifiable opinion).  This is simply "the kind of hyperbole that must be accepted in the rough and tumble of political argument."  *See Ollman*, 750 F.2d at 998 (Bork, J., concurring).

Even if a colorful political jab were capable of verification, it could not rise to the level of being defamatory.  The public knows that "[t]hose who step into areas of public dispute, who choose the pleasures and distractions of controversy, must be willing to bear criticism, disparagement, and even wounding assessments."  *Id.* at 993; *see, e.g.*, *Lane*, 985 F. Supp. at 149 (same).  As the leading libel treatise has observed, "[w]hen insults occur during political disputation, courts are particularly likely to dismiss them as nonactionable epithets, both because

they probably will be understood that way and in order to insure protection of vigorous political speech." *Sack on Defamation*, *supra*, § 2:4.7.

> **b.**     **The Statement That "Staffers Presented Him with Evidence Meant to Bolster a Wild Claim Made by the President" Is Not Actionable.**

Plaintiff also challenges the statement that White House "staffers presented [Nunes] with evidence meant to bolster a wild claim made by the president."  Proposed Supp. ¶ 14(i).  This statement is not actionable for several reasons.

First, anything allegedly false and defamatory about the statement that staffers "presented him with evidence meant to bolster a wild claim" is not "of and concerning" Nunes.  *See, e.g.*, *Deripaska*, 282 F. Supp. 3d at 144.  It is a statement about *the staffers'* plans.

This point is illustrated in *Deripaska*, where the plaintiff, a Russian oligarch, brought a defamation action against the Associated Press ("AP") for statements that Paul Manafort had engaged in illegal lobbying while "secretly work[ing]" for the oligarch.  282 F. Supp. 3d at 138, 145-46.  The court emphasized that "[e]ven if the AP unequivocally stated that Manafort had engaged in criminal activity," the statement was not of and concerning Deripaska, even though he was the presumed beneficiary of the allegedly illegal lobbying.  *Id.* at 145.

Second, Bump's view regarding the supposed motive of the White House staffers—or Nunes, if the statement had been about him—for sharing intelligence in a highly controversial event is protected opinion.  Courts consider this kind of commentary about the "possible feelings or motivations behind [a party's] actions" to be "non-actionable statement of opinion," because "it is a subjective judgment that is not verifiable."  *Montgomery*, 197 F. Supp. 3d at 248-49 (citation omitted) (citing cases); *Farah*, 736 F.3d at 540 (statement that plaintiff authors were "not motivated by genuine belief, but rather by a desire to hold their readers 'captive' and to 'sell books'" was protected opinion).  Bump's point of view about the staffers' "state of mind at a

particular point in time" is "not capable of being proven true or false" because it "is not subject to empirical proof." *Turner v. Wells*, 198 F. Supp. 3d 1355, 1370 (S.D. Fla. 2016), *aff'd*, 879 F.3d 1254 (11th Cir. 2018).

In addition, the facts underlying Bump's commentary are disclosed to the reader. The specific paragraph challenged by Plaintiff includes a hyperlink to the March 30, 2017 piece authored by Bump, titled "The Nunes-White House Question, Assessed Minute-By-Minute." Ex. B. This 2017 Timeline featured significant additional details and sources, including with numerous quotations from Plaintiff, White House Press Secretary Sean Spicer, and President Trump regarding the events in question. For example, the piece quoted Plaintiff's March 20, 2017 statement: "Let me be clear: we know there was not a wiretap on Trump Tower. However, it's still possible that other surveillance activities were used against President Trump and his associates." *Id.* The piece also quoted Nunes's March 22 statement in which he described the intelligence he had been shown. *Id.* Interpreting this March 22 announcement, the 2017 Timeline expressed the view that "we were left to assume [this] might mean that Trump's March 4 tweets about having been wiretapped by former president Barack Obama had *some* validity." *Id.* (emphasis added). The 2017 Timeline also noted that President Trump himself claimed that his wiretapping allegation was at least "somewhat" vindicated by the information supposedly uncovered about incidental collection, with a hyperlink to a video of his statement. *Id.*

The December 2021 Column thus shows the reader its clear factual basis—including Nunes's own statements, various reporting that he received the intelligence from White House sources, and President Trump's claim that he had been somewhat vindicated—which all support Bump's interpretation that the evidence presented to Nunes was meant to provide political cover to President Trump and his wiretapping claim. There is nothing in the December 2021 Column

that "impl[ies] unstated defamatory facts" known only to Bump (and Plaintiff does not purport to identify any). *Farah*, 736 F.3d at 539 (citation omitted).[8]  Rather, the information is provided to the reader, who can make a judgment about the meaning of the underlying facts and sources.  *See id.*; *Bauman*, 377 F. Supp. 3d at 11 n.7.

Third, the statement that "staffers presented him with evidence meant to bolster a wild claim made by the president" does not rise to the level of being defamatory.  Plaintiff cannot explain how it could bring shame or disgrace to a politician to say that he received intelligence information which others believed might help a political ally, or that he went on to provide the information to the public and it was used to help his ally.  *See, e.g.*, *Bauman*, 377 F. Supp. 3d at 15 (statement that plaintiff was "Democrat crisis management person" "assigned" by the DNC to act as the Rich family spokesperson was not defamatory, where he was a political consultant who occasionally worked on Democratic causes); *Harvey v. CNN*, 520 F. Supp. 3d 693, at 716 (D. Md. 2021) (implication that Nunes's aide dug up dirt on political rival not defamatory); *see also Deripaska*, 282 F. Supp. 3d at 144-46 ("Defamation is not made up of hints and suggestions and it cannot be merely unpleasant or offensive.").  Politicians receive information from a variety of sources every day, irrespective of their sources' motives.

Even if the statement might be read to imply that Nunes made accurate statements about the incidental collection and unmasking information he received, but with an ulterior motive of providing some cover to President Trump, that report of assistance to an ally would not be defamatory, particularly in the context of political commentary.  *See Ollman*, 750 F.2d at 1002 (Bork, J., concurring) ("Where politics and ideas about politics contend, there is a first amendment

---

[8] As explained *supra*, the December 2021 Column is clear about what Nunes actually did with the information he received.  It quotes his statements, and makes clear that they were about incidental collection and unmasking.

arena.  The individual who deliberately enters that arena must expect that the debate will sometimes be rough and personal.").  Further, one of the ways in which the statement challenged here differs from the statement challenged in the November 2020 Article is that this Court ruled that a potentially defamatory "gist" of the November 2020 Article was "insinuating that Nunes is the type of official who would spend his time searching for evidence to support claims with no foundation in fact."  Op. 9.  Here, by contrast, nowhere does the December 2021 Column state that Nunes disseminated information without a basis in fact.  This statement does not make Plaintiff "appear odious, infamous, or ridiculous."  *Smith*, 886 F.3d at 12.

### c.    The Remaining Statements Are Not Actionable.

Nunes also disputes that he was "riding in an Uber with anyone," or that he was "summoned" to the White House.  Proposed Supp. ¶ 14(j).  Nunes does not even attempt to explain *why* these statements are false, or *how* they are defamatory, which is his burden.  *See, e.g.*, *Abbas*, 975 F. Supp. 2d at 14.  Those statements cannot support a defamation claim.

The statement that "Nunes was riding in an Uber with a staffer when he got a message on his phone" is neither materially false nor defamatory.  Whether Nunes was "riding in an Uber with anyone" is at most a "[m]inor inaccuracy" that "do[es] not amount to falsity so long as the substance, the gist, the sting, of the libelous charge be justified."  *Masson*, 501 U.S. at 517.  Nunes does not dispute that he travelled in a vehicle to a meeting at the White House.  The details regarding his transportation are immaterial to any defamatory sting he has claimed.  Nor is it defamatory to suggest that a senior official with clearance to receive the country's most sensitive secrets might not tell a staffer about a meeting with a source providing intelligence information.

It also is not defamatory to say that Nunes "had been summoned to the White House complex."  The dictionary definition of "summon" is "to bid to come or go: command *or request* the presence."  *Summon*, *Webster's Third New International Dictionary* (3d ed. 2002) (emphasis

added).  The word is perfectly innocuous (e.g., the jurors were summoned to court; the surgeon was summoned to the operating room).  And here, the word seems particularly inoffensive, given that Nunes was called to receive information he ultimately thought was so important that he returned to the White House the next day to personally brief the President.  In addition, Nunes acknowledges that he visited the White House complex on March 21, 2017 to obtain the intelligence materials at issue.  Proposed Supp. ¶ 22(a).  Whether he was "summoned," or was invited, is at most a quibble about an alleged "[m]inor inaccurac[y]."  *Masson*, 501 U.S. at 517.

### C.    The Proposed Supplement Fails to Plausibly Allege That the December 2021 Column Was Published with Actual Malice.

This Court already has recognized that, as a public official, Plaintiff must plead and prove that the defendant published the false and defamatory statements with "'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not."  *N.Y. Times Co.*, 376 U.S. at 280; Op. 9-10.  This is a "famously daunting" standard, including at the motion to dismiss stage, *Tah v. Glob. Witness Publ'g, Inc.*, 991 F.3d 231, 240 (D.C. Cir.), *cert. denied*, 142 S. Ct. 427 (2021), that embodies our "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks" on public figures, *N.Y. Times*, 376 U.S. at 270.

In assessing the sufficiency of Plaintiff's actual malice allegations regarding the November 2020 Article under this daunting standard, this Court previously held that "[m]ost of Nunes's allegations, without more, do not demonstrate actual malice."  Op. 10.  The allegations that the Court found insufficient included Nunes's "bald assertions that the Post knew that its statements were false," "conclusory references to the Post's purported animus and lack of standards," and "allegations regarding his denials."  *Id.* 10-11; *see also, e.g., Tah*, 991 F.3d at 241-43 (explaining

why several "interlocking theories" are insufficient to establish actual malice, including allegations of "preconceived notions," departure from "standards," "failure to credit [plaintiffs'] denials," and "ill will").

The only allegation that the Court found to "plead more than just legal conclusions" was the allegation that "the Post itself had [previously] reported that Nunes had *denied* President Trump's claims about a wiretap at Trump Tower," which the Court concluded could "give the paper reason to seriously doubt the truth of its later publication" that Nunes made that baseless claim himself. Op. 11-12. The Court also emphasized that "Nakashima was a contributor to at least one of the articles distinguishing Nunes's position on the wiretap claims from the former President's stance." *Id.* 12 n.12.

Here, Plaintiff's Proposed Supplement includes very few allegations about the December 2021 Column. *See, e.g.*, Proposed Supp. ¶¶ 14(j)-(k), 22(g). There are multiple reasons why its limited conclusory allegations fail to support a plausible inference that the Post published the December 2021 Column with actual malice.

First, unlike the statements at issue in the November 2020 Article, Nunes cannot allege that the challenged statements in the December 2021 Column are *contradicted* by Bump's prior reporting. Although Nunes alleges that "Bump *never claimed* that the purpose of the visit was to 'bolster a wild claim made by the president'" in his prior coverage, *id.* ¶ 14(k) (emphasis added), that does not move the needle on actual malice. Even if Nunes were right, it would amount to nothing more than an allegation that Bump offered a slightly different interpretation of events than he had more than *four and a half years prior*; it does not come close to plausibly establishing that he published with reckless disregard of falsity.

In any event, Bump's statements are entirely *consistent* with the prior reporting identified

by Plaintiff, which is linked in the December 2021 Column.  Bump's 2021 statement that "staffers presented [Nunes] with evidence meant to bolster a wild claim made by the president" is supported by substantial information from the 2017 Timeline, including (1) Bump's view that Nunes's March 22, 2017 statement "suggesting that some Trump associates had been caught up in government surveillance" left room for the public "to assume . . . that Trump's March 4 tweets about having been wiretapped by former president Barack Obama had some validity"; (2) President Trump's statements touting the disclosures Nunes had received from his White House sources even before Trump had been "briefed" about them by Nunes; and (3) President Trump's claim that he was "somewhat" vindicated by the disclosures.  Plaintiff does not even attempt to identify any other aspect of the 2021 Column that is not supported by the disclosed sources.

Second, Plaintiff's Proposed Supplement does not include sufficient allegations about *Bump's* alleged knowledge or reckless disregard of probable falsity.  Under well-established Supreme Court precedent, Plaintiff cannot impute knowledge of other reporting to Bump; he must "bring home" the state of mind required for actual malice to "to the persons in the [Post] organization having responsibility for the publication" at issue, i.e., Bump himself.  *See N.Y. Times*, 376 U.S. at 287.  Courts routinely dismiss defamation claims for failure to plausibly allege actual malice where there is no material allegation about the fault of the journalist responsible for the allegedly defamatory publication.  *See, e.g.*, *BYD Co. v. VICE Media LLC*, 531 F. Supp. 3d 810, 823 (S.D.N.Y. 2021) (granting motion to dismiss where plaintiff did not "make any allegations about specific individuals at VICE to whom such knowledge could be imputed"); *Mejia v. Telemundo Mid-Atl. LLC*, 440 F. Supp. 3d 495, 502 (D. Md. 2020) (granting motion to dismiss where plaintiff had not plausibly "brought home" knowledge of falsity to the "individual in charge of Defendant's [allegedly defamatory] banners"); *Donald J. Trump for President, Inc. v. CNN*,

2020 WL 6608327, at *5 n.4 (N.D. Ga. Nov. 12, 2020) (granting motion to dismiss where "the complaint does not connect the CNN staff members . . . to the specific article in question"); *McDougal v. Fox News Network, LLC*, 489 F. Supp. 3d 174, 187 (S.D.N.Y. 2020) (granting motion to dismiss where plaintiff did not "bring home" a connection between Tucker Carlson and defendant Fox News's prior reporting).

For the same reasons, Nunes cannot impute knowledge of the December 2021 Column to Ellen Nakashima (who is also a named defendant).  Nunes does not allege, and cannot allege, that she had any involvement with the Column.  So any claim against her must be dismissed as well.

Third, Plaintiff's allegation that the fact of his lawsuit alone should give rise to actual malice is also insufficient.  Plaintiff tries to argue that this case is like *Nunes v. Lizza* because the "republication of these false statements by WaPo after it was notified by Plaintiff that the statements were false and defamatory is evidence of WaPo's reckless disregard."  Proposed Supp. ¶ 22(g).  But as discussed above, *supra* Section I(A), Plaintiff's reliance on *Lizza* is misplaced because the statements in the December 2021 Column are entirely different from the statements in the November 2020 Article.  Plaintiff alleges that the challenged statements in the 2021 Column "were denied in the amended complaint filed on February 4, 2021," Proposed Supp. ¶ 14(j), but does not explain how.  At best, this amounts to nothing more than a conclusory denial.[9]  And "[a]

---

[9] Plaintiff's Motion, Mot. 3 n.1, points to the Amended Complaint's allegations that he "never took any action to support or buttress any claim by the President of spying on Trump Tower," Am. Compl. ¶ 7; "never sought access to any 'intelligence files' at the White House for the nefarious purpose of spreading 'baseless claims' about the Obama administration or aiding in any such disinformation" and "never 'believed' that any intelligence files would buttress a claim Plaintiff or President Trump made that the Obama administration was spying on Trump Tower," *id.* ¶ 17(a-b); and that his "visit [to the White House] was part of the House Intelligence Committee's ongoing oversight investigation into concerns that Americans' identities were not protected (masked) properly in intelligence reports or were unmasked improperly," *id.* ¶ 22(a).  None of these allegations, all of which relate to Nunes's beliefs, goals, and state of mind, is contradicted by the

publisher 'need not accept denials, however vehement; such denials are so commonplace in the world of polemical charge and countercharge that, in themselves, they hardly alert the conscientious reporter to the likelihood of error.'" *Tah*, 991 F.3d at 242 (citing cases).

That the Proposed Supplement makes clear that Nunes denied the wiretapping allegations has no bearing on the actual malice analysis here, because Bump makes no statement to the contrary. Indeed, his 2017 Timeline quoted Nunes's statement denying the wiretapping claim expressly, and still reached a nuanced interpretation that the disclosure of the incidental collection allegations nevertheless reflected an effort to provide some political cover for President Trump.

As the *Tah* court recognized, to survive 12(b)(6) dismissal, a plaintiff must identify "readily verifiable evidence needed to support a plausible—and we emphasize the word plausible—case that [the Defendants] published with a 'high degree of awareness of probable falsity.'" 991 F.3d at 242. There is no such readily verifiable evidence here, and the claim should be dismissed.[10]

**D.    Plaintiff Failed to Comply with the California Retraction Statute.**

Plaintiff's motion to add a defamation claim based on the December 2021 Column should also be denied as futile because any such claim is governed by California law, and Plaintiff failed to comply with the California retraction statute.

---

Challenged Statements in the December 2021 Column regarding *White House staffers'* beliefs, goals, and state of mind when they "presented him with evidence." Nunes does not deny that President Trump and other White House officials argued that the incidental collection disclosures partially vindicated the President's wiretapping claim. And he does not deny that the December 2021 Column accurately quoted his actual statements about the intelligence he was shown. *See supra* Section I(A).

[10] Insofar as Plaintiff seeks to argue that the Post's publication of the December 2021 Column somehow demonstrates that it published the November 2020 Article with actual malice, this is unavailing because "the actual malice inquiry focuses on the defendant's state of mind at the time of publication." *Kahl v. Bureau of Nat'l Affairs, Inc.*, 856 F.3d 106, 118 (D.C. Cir. 2017).

While the Court previously determined that D.C. law applied to Plaintiff's defamation claim based on the November 2020 Article, *see* Op. 18, "choice of law analysis is performed for each issue adjudicated, therefore a different law can apply to different issues," *Hartley v. Dombrowski*, 744 F. Supp. 2d 328, 336 (D.D.C. 2010) (citing *Jaffe v. Pallotta TeamWorks*, 374 F.3d 1223, 1227 (D.C. Cir. 2004)); *Mattiaccio v. DHA Grp., Inc.*, 20 F. Supp. 3d 220, 228 (D.D.C. 2014). Based on the new allegations Plaintiff seeks to add, any claim arising from the December 2021 Column should be governed by California law. And under California law, because Plaintiff failed to seek a correction of the December 2021 Column pursuant to the California retraction statute, he can recover only special damages, which he has not attempted to plead he suffered as a result of the December 2021 Column.

1.    **California Law Governs Any Claim Relating to the December 2021 Column.**

The fact of Nunes's resignation substantially changes the relevance of his prior damages allegations, and makes the choice of law analysis for the December 2021 Column materially different than it was for the November 2020 Article.[11]

Applying Virginia's conflicts rules, Op. 13, this Court previously held that the law of "the state where the plaintiff is primarily injured as a result of the allegedly tortious online content" should govern Plaintiff's claims as to the November 2020 Article, *id.* 15. The Court went on to conclude that D.C. law applied because Plaintiff's "injuries—at least as alleged in the Complaint— are primarily suffered in the District of Columbia. That is where he alleges he meets and interacts with other public officials, was considered for appointed positions, received numerous threats, and performs the majority of his duties as Ranking Member of the House Intelligence Committee." *Id.*

---

[11] As with Defendants' prior Motion to Dismiss, the choice of law analysis here does not affect the outcome of any other argument presented in this Opposition.

18.     The Court determined that these allegations constituted the "strong countervailing circumstances" required to counter the presumption that Nunes was primarily injured in California, where he was domiciled.  *Id.* 16-17 (quoting *Nunes v. CNN*, 520 F. Supp. 3d 549, 557-58 (S.D.N.Y. Feb. 19, 2021)).

Plaintiff does not allege any such "strong countervailing circumstances" as to the December 2021 Column.  *See CNN*, 520 F. Supp. 3d at 557-58.  The Proposed Supplement does not allege that Plaintiff suffered *any* injuries as a result of the publication of the December 2021 Column, let alone injuries concentrated in the District of Columbia.  This distinguishes the allegations regarding the December 2021 Column from those regarding the November 2020 Article, and the Court's prior analysis.  Op. 18.

Further, while the Court previously credited Plaintiff's allegations that his "injuries are concentrated in the Washington, D.C. metropolitan area because that is where he works, has an office, and performs his role as Ranking Member of the House Intelligence Committee," *id.* 17, the weight of these allegations have been diminished by his announcement that he is resigning from Congress to become a social media CEO, which occurred prior to the Column's publication. *See* Proposed Supp. ¶ 14(g) (describing the announcement of his plans "to resign from Congress and accept a position in the private sector as Chief Executive Officer of [TMTG]").  Any prior allegations regarding supposed impact to his "role as Ranking Member of the House Intelligence Committee" are no longer applicable because he has voluntarily resigned from that position.  The Proposed Supplement is utterly silent as to the location of any damage Plaintiff might suffer as the new CEO of a global social media company based in Florida.  For this claim, there is no "strong countervailing circumstances" to suggest that the law of any jurisdiction other than California

should apply to any claims arising from the publication of the December 2021 Column.  *See CNN*, 520 F. Supp. 3d at 557-58.

While the Court previously stated that the Post "reports on local D.C. news and is more directed toward D.C. audiences than media outlets such as CNN," *see* Op. 17, the Court's holding was influenced by its determination that "the types of reputational harm suffered by Nunes—who in his capacity as the Ranking Member of the House Intelligence Committee regularly meets with heads of agencies, Members of Congress, White House staff, and other public officials in and around the District—are less concentrated in his domicile than they would be if he lived and worked in the same jurisdiction," *Id.* 17-18.  That consideration carries much less weight with regard to the December 2021 Column, given Plaintiff's decision to resign his powerful position in Congress in favor of a career as a social media CEO.  In addition, Bump's piece was published online only, i.e., with no geographic limitations to print circulation.[12]

### 2.   Plaintiff Is Entitled to Seek Only Special Damages Under California's Retraction Statute.

As set forth in Defendants' prior motion to dismiss briefing, *see* Mem. in Supp. of Mot. to Dismiss 28, ECF No. 27, California's retraction statute provides that "[i]n any action for damages for the publication of a libel in a daily or weekly news publication," a defamation plaintiff "shall only recover special damages unless a correction is demanded and is not published or broadcast, as provided" by the terms of the statute.  Cal. Civ. Code § 48a.  To comply with the terms of the statute, a "written notice specifying the statements claimed to be libelous and demanding that those statements be corrected" must be served upon the publisher "within 20 days after knowledge of the publication or broadcast of the statements claimed to be libelous."  *Id.*  The publisher then has

---

[12] And, as the December 2021 Column makes clear, Bump himself resides in New York, not Washington, D.C.  *See* Ex. A.

three weeks to publish a correction in "substantially as conspicuous a manner in the same daily or weekly news publication." *Id.* If the publisher does so, it is immune from liability for all but special damages. *See id.*

As required by the statute, Plaintiff must therefore plead "notice, demand and failure to correct" in order to recover anything beyond special damages. *Id.* Plaintiff does not attempt to plead any of these elements with regard to the December 2021 Column. Nor can he. Instead of serving the Post with a written notice and demand as required by the California retraction statute and giving the Post three weeks to determine whether to publish a correction, Plaintiff sought leave from the Court to add allegations pertaining to the December 2021 Column two days after it was published. He did not request a correction or retraction within 20 days as required by the statute.

### 3.     Plaintiff Fails to Plausibly Allege That He Suffered Special Damages Resulting from the Publication of the December 2021 Column.

Because Plaintiff fails to plead that a correction of the December 2021 Column was demanded and not provided, he "shall only recover special damages." Cal. Civ. Code § 48a. Accordingly, "without an allegation of special damages, the complaint does not allege a legally sufficient cause of action," and it must be dismissed. *King v. Am. Broad. Cos.*, 1998 WL 665141, at *3-4 (S.D.N.Y. Sept. 28, 1998).

The retraction statute defines "special damages" to include damages suffered by the Plaintiff "in respect to his or her property, business, trade, profession, or occupation." Cal. Civ. Code § 48a. Whereas "general damages encompass the loss of reputation, shame and mortification and hurt feelings in any context, including the plaintiff's trade or business," "special damages are defined narrowly to encompass only economic loss." *Gomes v. Fried*, 186 Cal. Rptr. 605, 614 (Ct. App. 1982); *see Sack on Defamation*, *supra*, § 2.8.7.1 ("Special damages refers only to pecuniary damages such as out-of-pocket loss."). In addition, special damages must be pleaded with

35

specificity. *See, e.g.*, Fed. R. Civ. P. 9(g) (special damages must be "specifically stated"); *FAA v. Cooper*, 566 U.S. 284, 295 (2012) (similar).

Plaintiff does not allege that he suffered *any* damages specifically as a result of the publication of the December 2021 Column, let alone special damages pleaded with the requisite specificity. "He does not, for instance, [allege] that he has lost clients as a result of [the December 2021 Column]. Nor does he claim that he has been unable to pursue professional opportunities because his reputation has been purportedly tarnished." *See Szymkowicz v. Frisch*, 2020 WL 4432240, at *6 (D.D.C. July 31, 2020).[13] Nor does he "explain what the damages comprise or how they are calculated, denying both Defendant[s] and the Court information as to the substance of the complaint." *CNN*, 520 F. Supp. 3d at 561. This is plainly insufficient to satisfy the requirement that special damages be pled with specificity.

"Plaintiff's defamation claim [as to the December 2021 Column] thus fails to meet the requirements of Rule 9(g) and fails to state a claim upon which relief may be granted, warranting dismissal pursuant to Rule 12(b)(6)." *Id.* The Motion to add a defamation claim based on the December 2021 Column should be denied as futile.

## II.  THERE IS NO "GOOD CAUSE" FOR PLAINTIFF'S UNTIMELY AMENDMENT RELATED TO ALLEGATIONS FROM 2016-2017.

In addition to the claim regarding the December 2021 Column, the Proposed Supplement also includes the New 2016-2017 Allegations, which include several pages related to Plaintiff's new allegation that, "Between December 2016 and March 21, 2017, WaPo aided and abetted multiple criminal leaks of highly classified information from the U.S. Intelligence Community." Proposed Supp. ¶¶ 14(a)-(e).

---

[13] To the contrary, Plaintiff's new position was so compelling that he chose to resign from one of the most powerful positions in Congress during the middle of his term.

This constitutes an improper attempt to substantially broaden the scope of the case. Neither Plaintiff's initial Complaint, nor his Amended Complaint, nor any of the motion to dismiss briefing included these allegations or discussed the allegation of leaking to the media (or even mentioned the word "leak"). Plaintiff's proposed allegations about leaking seek to add to the case numerous Post articles which were not previously at issue.

The New 2016-2017 Allegations must be considered as a proposed amendment under Rule 16(b), rather than as a supplement under Rule 15(d). The Rule 15(d) supplementation provision, by its plain terms, applies only to a "transaction, occurrence, or event that happened *after* the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d) (emphasis added). Thus, where, as here, the plaintiff seeks to use Rule 15(d) to bring in factual information that existed prior to the filing of the complaint, "Rule 15(d) is inapplicable." *Banks v. York*, 448 F. Supp. 2d 213, 214 (D.D.C. 2006); *see also, e.g.*, *United States v. Hicks*, 283 F.3d 380, 385 (D.C. Cir. 2002) (emphasizing that "[s]upplements therefore contrast with amendments, which typically rest on matters in place *prior to* the filing of the original pleading") (emphasis added).

Notably, the Scheduling Order imposed a deadline for Plaintiff to amend his claims-- October 29, 2021—and that deadline passed. *See* Scheduling Order, Oct. 6, 2021. Plaintiff did not file his Motion until more than one month later, on December 9, 2021.

Therefore, the Rule that governs Plaintiff's proposed amendment of the New 2016-17 Allegations is Rule 16(b), which provides that a scheduling order shall be modified "only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4); *see, e.g.*, *Lovely-Coley v. D.C.*, 255 F. Supp. 3d 1, 5 (D.D.C. 2017) ("This District's case law makes clear that once the court enters a scheduling order, that schedule can only be modified with the court's consent and with good cause shown."); *In re Papst*, 762 F. Supp. 2d at 59 ("Because Papst seeks leave to amend which deviates

from a court-ordered deadline, the more stringent good cause standard imposed by Federal Rule of Civil Procedure 16(b) applies."). "While motions to amend pleadings filed *within* the time set by a scheduling order are subject to review under the standard of Fed. R. Civ. P. 15, which provides that the 'court should freely give leave when justice so requires,' such motions filed after a scheduling order deadline has passed are subject to the more stringent 'good cause' standard of Fed. R. Civ. P. 16(b)(4)." *A Love of Food I, LLC v. Maoz Vegetarian USA, Inc.*, 292 F.R.D. 142, 144 (D.D.C. 2013) (cleaned up). "To hold otherwise would allow Rule 16's standards to be 'short circuited' by those of Rule 15 and would allow for parties to disregard scheduling orders, which would 'undermine the court's ability to control its docket, disrupt the agreed-upon course of the litigation, and reward the indolent and the cavalier.'" *In re Papst*, 762 F. Supp. 2d at 59.

To establish good cause under this "more stringent" Rule 16(b), "the moving party must show *both* diligence and a lack of prejudice to the opposing parties." *Id.* (emphasis added). Plaintiff fails both parts of the test, so his attempt to add new allegations should be denied.

### A.    Plaintiff Cannot Show That Diligence Excuses His Failure to Include Allegations Related to 2016-2017 in His Prior Complaints.

"To determine whether good cause exists, courts consider, first and foremost, the diligence of the moving party, 'focus[ing] on the timeliness of the amendment and the reasons for its tardy submission.'" *United States v. Eisenberg*, 149 F. Supp. 3d 71, 85 (D.D.C. 2015); *see Lurie v. Mid-Atl. Permanente Med. Grp., P.C.*, 589 F. Supp. 2d 21, 23 (D.D.C. 2008) (similar). "The Court's good cause inquiry must focus on [the] reason for the delay, not the anticipated results of granting the motion." *A Love of Food I*, 292 F.R.D. at 145. This factor is an independent requirement. "If [the movant] was not diligent, the inquiry should end." *St. Paul Mercury Ins. Co. v. Capitol Sprinkler Inspection, Inc.*, 2007 WL 1589495, at *6 (D.D.C. June 1, 2007); *A Love of Food I*, 292 F.R.D. at 145 (similar).

As a threshold matter, Plaintiff has not made even a cursory attempt to show that he was diligent.  His Motion does not mention the words "good cause" or "diligence."  This failure alone warrants denial of his motion.  *See, e.g.*, *Eisenberg*, 149 F. Supp. 3d at 85-86 (denying motion to amend where plaintiff offered "absolutely no explanation, and the Court cannot infer any, for his delay in filing his proposed counterclaims"); *compare, e.g.*, *Headfirst Baseball LLC v. Elwood*, 206 F. Supp. 3d 148, 154 (D.D.C. 2016) (considering movant's "proffer" of "good cause" in deciding whether to grant leave to amend after the scheduling order deadline).  Indeed, a failure to offer any explanation for an attempted amendment would be grounds to deny a motion under the far more lenient Rule 15(a) standard.  *See, e.g.*, *Park B. Smith, Inc. v. CHF Indus. Inc.*, 811 F.Supp.2d 766, 779-81 (S.D.N.Y. 2011).

Plaintiff cannot show that he was diligent here.  The New 2016-2017 Allegations he seeks to add were indisputably in his possession at the time he filed both the original complaint in November 2020, and his prior amendment in February 2021.  The Proposed Supplement asserts that the information was so public that the Post should have been aware of it.  *See, e.g.*, Proposed Supp. ¶¶ 14(c) ("Plaintiff had *publicly (and repeatedly)* expressed his astonishment at the criminal leaks aided and abetted by WaPo and the unmaskings that enabled them.") (emphasis added); 14(d) (emphasizing that his "timeline" of allegations from 2016-2017 demonstrates his very public "alarm at the unmaskings and criminal leaks in which WaPo and other media outlets were engaged").  Given Plaintiff's admission that he had made these statements "publicly (and repeatedly)" in 2016 and 2017, it is impossible for him to establish good cause for his failure to assert such allegations *more than three and a half years later*.

Courts refuse to find a party was diligent where, as here, the party seeks to add information that was public or otherwise in his possession well before filing the prior pleading.  For example,

in *In re Papst*, the court held that the plaintiff "was not diligent" and denied leave to amend where

he sought leave to amend his complaint to include facts that were "a matter of public knowledge"

more than a year earlier.  762 F. Supp. 2d at 59; *see also, e.g.*, *Lovely-Coley*, 255 F. Supp. 3d at 7

(finding lack of diligence where plaintiff knew of the proposed additional facts at the beginning of

the litigation); *A Love of Food I, LLC*, 292 F.R.D. at 144 (finding lack of diligence where movant

was aware of information more than one year prior); *Brewer v. Holder*, 2015 WL 13799993, at *2

(D.D.C. Apr. 8, 2015) (finding lack of diligence where plaintiff had known of proposed

information when he filed prior amendment).[14]

Plaintiff's failure to include the allegations in his prior Complaints amounts to, at best,

carelessness.  But, as a matter of law, that is not enough.  "[C]arelessness is not compatible with a

finding of diligence and offers no reason for a grant of relief."  *Dag Enters., Inc. v. Exxon Mobil

Corp.*, 226 F.R.D. 95, 105 (D.D.C. 2005) (denying leave to amend expert reports); *St. Paul

Mercury Ins.*, 2007 WL 1589495, at *6 (denying leave to amend Rule 26 disclosures), *aff'd*, 630

F.3d 217 (D.C. Cir. 2011).

It is not significant to the diligence analysis that discovery is ongoing in the case.  Courts

in this District and across the country regularly find that the diligence requirement has not been

---

[14] Indeed, even when information is *newly discovered*—which the allegations here were not—
courts routinely hold that a party was not diligent where it failed to act promptly upon learning
that information.  *See, e.g.*, *Wallace v. AlliedBarton Sec. Servs., LLC*, 309 F.R.D. 49, 51 (D.D.C.
2015) (finding no diligence when plaintiff waited two months from learning new information
before filing an amendment); *Gullo v. City of N.Y.*, 540 F. App'x 45, 47 (2d Cir. 2013) (holding
that plaintiff's three-month failure to move for amendment after learning new information
prevented plaintiff from demonstrating the diligence necessary to satisfy Rule 16(b)); *Kay v. N.H.
Democratic Party*, 821 F.2d 31, 34 (1st Cir. 1987) (holding that "three months constitutes the
'undue delay' noted as a justifiable basis for denial" of leave to amend).

satisfied even where discovery is ongoing. *See, e.g.*, *Eisenberg*, 149 F. Supp. 3d at 85-86; *In re Papst*, 762 F. Supp. 2d at 61.[15]

Because Plaintiff cannot establish that diligence excuses his failure to include the New 2016-2017 Allegations in his Amended Complaint before the pleading deadline, he cannot establish good cause, and his Motion to include these allegations should be denied. *See, e.g.*, *Eisenberg*, 149 F. Supp. 3d at 85-86; *In re Papst*, 762 F. Supp. 2d at 59-60, 62. "The Court's inquiry must end, regardless of whether the amendment[s] will assist the factfinder or result in prejudice to the plaintiff." *A Love of Food I*, 292 F.R.D. at 145.

### B. The Amendment Would Prejudice Defendants.

Even if Plaintiff had been diligent in amending his complaint, that is only the first step of the analysis. "The Court must [also] consider the prejudice to other parties and its obligation to manage its docket." *In re Papst*, 762 F. Supp. 2d at 60; *Dag Enters.*, 226 F.R.D. at 110 ("The existence or degree of prejudice to the party opposing modification may supply an additional reason to deny a motion to modify a scheduling order, but it is irrelevant to the moving party's exercise of diligence and does not show good cause.") (quotation omitted). "An amendment [under Rule 16(b)] is prejudicial to the non-moving party if it 'would require the opponent to expend significant additional resources to conduct discovery and prepare for trial or significantly

---

[15] *See also, e.g.*, *Freeman v. Busch*, 349 F.3d 582, 589 (8th Cir. 2003) (holding that district court did not abuse its discretion by denying plaintiff's motion to amend complaint to add punitive damages where motion was filed seven weeks before end of discovery, where plaintiff provided no reason why those damages could not have been alleged earlier); *Stonecrest Partners, LLC v. Bank of Hampton Roads*, 770 F. Supp. 2d 778, 784 (E.D.N.C. 2011) (affirming magistrate judge's denial of motion to amend where the movant knew of evidence months before filing the proposed amendment, even though discovery was still ongoing); *EEOC v. Exel Inc.*, 259 F.R.D. 652, 653 (N.D. Ga. 2008) (denying leave to amend under Rule 16(b) even though discovery was still ongoing because the movant waited over two months between learning new information and filing the proposed amendment). The fact that discovery is ongoing may be relevant to the prejudice element, but that element is assessed only if the movant's diligence is established first.

delay the resolution of the dispute.'"  *Intelsat USA Sales LLC v. Juch-Tech, Inc.*, 2015 WL 13672835, at *4 (D.D.C. Mar. 2, 2015) (alteration in original) (citation omitted).  Plaintiff's amendment would prejudice Defendants because it would expand the scope of discovery to include irrelevant and burdensome material, including by expanding the relevant time period and the articles at issue.

Plaintiff's proposed amendment would open up the case to fishing expeditions for discovery related to numerous other Post articles having nothing to do with the challenged statements in this case.  For example, Plaintiff seeks to add allegations regarding a December 6, 2016 Post article about a CIA assessment of Russia's involvement in the 2016 election; a January 12, 2017 Post article regarding calls between General Michael Flynn and Russian Ambassador Sergey Kislyak; and a February 12, 2017 Post article regarding a call between President Trump and Australian Prime Minister Malcolm Turnbull.  *See* Proposed Supp. ¶ 14(d).

Plaintiff's attempt to expand the scope of discovery in this way is prejudicial.  For the past year, "the Court and the parties have proceeded believing" that this case is about the November 9, 2020 article.  *In re Papst*, 762 F. Supp. 2d at 61.  Expanding the discovery period and adding additional, irrelevant articles into the scope of the case would do nothing more than distract from the merits and delay the resolution of this case.  *Id.*; *Clean Water Action*, 315 F. Supp. 3d at 84 (denying leave to amend where proposed additions "would significantly alter the scope of this case").  Plaintiff does not need any discovery from the Post about these articles in order to make factual assertions regarding his own motives and activities during the so-called midnight run—that evidence is already in *his* possession.

Finally, the New 2016-2017 Allegations do not arise from the December 2021 Column. Indeed, on November 24 and November 27, 2021—well before the Column was published on

December 7, 2021—Plaintiff attempted to serve 14 "subpoenas" on the Post, seeking disclosure of "sources" for many of the articles referenced in the New 2016-2017 Allegations.[16]

Because Plaintiff's proposed amendment would prejudice Defendants, he cannot establish good cause to amend to include the New 2016-2017 Allegations, and the Court should deny the Motion. *Lovely-Coley*, 255 F. Supp. 3d at 5; *In re Papst*, 762 F. Supp. 2d at 59; *A Love of Food I, LLC*, 292 F.R.D. at 143.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion should be denied.


Dated: January 7, 2022

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By:      */s/  Thomas G. Hentoff*

Kevin T. Baine (D.C. Bar No. 238600)
Thomas G. Hentoff (D.C. Bar No. 438394)
Nicholas G. Gamse (D.C. Bar No. 1018297)
Sean M. Douglass (D.C. Bar No. 1033069)

725 Twelfth Street, N.W.
Washington, DC 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
thentoff@wc.com

*Counsel for Defendants*

---

[16] For these reasons, the proposed amendment should be denied. But in the event that it is not, the Post reserves its argument that the identity of its sources for such articles is squarely protected by both an absolute privilege under the D.C. Shield Law, *see* D.C. Code § 16-4701 *et seq.*, *Grunseth v. Marriott Corp.*, 868 F. Supp. 333, 336-37 (D.D.C. 1994) ("[T]he D.C. statute accords *total protection to news sources*, whether confidential or not, and whether disclosed to others or not. Thus, by its clear wording, the statute applies to and covers the present case and *gives an absolute privilege for all news sources*.") (emphasis added), as well as a qualified privilege pursuant to the First Amendment, *see Grunseth*, 868 F. Supp. at 336.

## CERTIFICATE OF SERVICE

I hereby certify that on January 7, 2022, I electronically filed the foregoing Defendants'
Memorandum of Law in Opposition to Plaintiff's Motion to Supplement Amended Complaint with
the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing
to registered CM/ECF participants.

/s/ Thomas G. Hentoff
*Counsel for Defendants*

44