IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DEVIN G. NUNES )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>)<br>WP COMPANY, LLC )<br>d/b/a The Washington Post )<br>*et al* )<br>)<br>Defendants. )<br>_____) | Case No. 1:21-cv-00506-CJN |

# **REPLY TO OPPOSITION TO MOTION TO SUPPLEMENT AMENDED COMPLAINT**

Plaintiff, Devin G. Nunes ("Plaintiff" or "Nunes"), by counsel, pursuant to Local Civil Rule ("LCvR") 7(d), files this Reply to the memorandum of law in opposition to Plaintiff's Motion to Supplement Amended Complaint [*ECF No. 49*] filed by Defendants, WP Company, LLC d/b/a The Washington Post and Ellen Nakashima.

## I. **INTRODUCTION**

Washington Post correspondent Philip Bump ("Bump") knew the Post was involved in litigation when he republished the story about Plaintiff's March 21, 2017 visit to the While House. Bump also knew the false and defamatory details of the Post's November 9, 2020 story and December 8, 2020 "correction" implicating Plaintiff in the promotion of "baseless claims" of "Obama administration spying on Trump Tower".

1

Yet, Bump published the same piece a third time in the face of the pending litigation and after Plaintiff had notified the Post that its statements were false and defamatory:

| *November 9, 2020* | *December 8, 2020* | *December 7, 2021 (Bump)* |
|---|---|---|
| "In March 2017, … Nunes … was given access at the White House to intelligence files that Nunes believed would buttress his baseless claims of the Obama administration spying on Trump Tower" | "In March 2017, … Nunes … was given access at the White House to intelligence files that Nunes believed would buttress Trump's baseless claims of the Obama administration spying on Trump Tower" | "Two months after Trump was inaugurated, Nunes was riding in an Uber … when he got a message on his phone … He had been summoned to the White House complex, it turned out, where staffers presented him with evidence meant to bolster a wild claim made by the president. That claim was that federal authorities had tapped the phones at Trump Tower during the campaign … It wasn't true, as was made clear both immediately and continuously." |

These stories are fake. The details added by Bump are fake. The continuing implication that Plaintiff was actively involved and using his office and position (at the time) as Chairman of the House Permanent Select Committee on Intelligence to promote baseless claims of wire-tapping is egregiously defamatory.

## II. DISCUSSION

As much as it is evidence of reckless disregard for the truth, *Nunes v. Lizza*, 12 F.4th 890, 901 (8th Cir. 2021), the Post's decision to publish the Bump story is a swipe at the Court. On August 11, 2021, the Court decided that plaintiff had stated a claim of defamation. The Court held that the Post's statements were materially false, capable of a defamatory meaning, and were published with actual malice. [*ECF No. 41 ("Memorandum Opinion", pp. 6-13)*]. In light of the Court's ruling, the Post's decision to publish yet another story about Plaintiff's visit to the White House on March 21, 2017

can only be seen as an effort to frustrate the orderly administration of this case and to needlessly increase cost and expense.

The Post's opposition makes several incorrect statements, including:

1. The proposed First Supplement to Amended Complaint seeks to add one type of allegation under Rule 15(d). It seeks to add allegations relating to the new defamation and related allegations of actual malice. Plaintiff has not sought amendment pursuant to Rule 16, although Plaintiff believes that it would be entirely proper under the circumstances, where a defamation defendant continues to publish false and defamatory statements during the pendency of the litigation.

2. Bump's falsehoods are identical to the falsehoods leveled by the Post in the November 9, 2020 article and the December 9, 2020 correction, with one exception: Bump added an additional false detail – Bump claims that Plaintiff had been summoned to the White House to review files that would "bolster" *versus* "buttress" Trump's false claims. The gist and defamatory meaning of the story remains the same. The Post published the Bump piece with reckless disregard for the truth because the Post knew that Plaintiff denied the false and defamatory statements. The Post published that fake story in spite of its knowledge of Plaintiff's position, which is precisely what happened in *Nunes v. Lizza*.

3. The Post claims that Rule 16(b) applies to certain allegations in the proposed First Supplement to Amended Complaint, because "the Court's October 6, 2021 Scheduling Order imposed a deadline for Plaintiff to amend his claims–October 29, 2021–and that deadline passed." Obviously, the Post did not publish the Bump piece until December 9, 2021, so there was no way for Plaintiff to seek leave pursuant to Rule

16. Plaintiff sought leave under Rule 15(d) immediately, and, to the extent he needs to seek leave under Rule 16, it is obvious that Plaintiff acted with due diligence concerning the matter and that the Post has suffered no prejudice.  Leave should be granted under either the "interest of justice" or "good cause" standards.  The Post chose to level additional false and defamatory statements about Plaintiff.  Plaintiff should not be denied a remedy in light of the Post's actions.

      4.     A core issue in this case is the purpose of Plaintiff's visit to the White House on March 21, 2017.  In the November 9, 2020 article and December 8, 2020 "correction", the Defendants assert that the purpose of the "midnight run" was to review intelligence files that Plaintiff believed would buttress "baseless claims of the Obama administration spying on Trump Tower".  In truth, as reflected in Plaintiff's proposed First Supplement to Amended Complaint ¶¶ 14(a) – 14(d), Plaintiff went to the White House to look at files related to Plaintiff's ongoing investigation of the unmasking of names of Trump associates in intelligence reports and the criminal leaks of classified information by the Washington Post.  The allegations in the proposed First Supplement to Amendment Complaint are directly relevant to the claims in this case.

      5.     Finally, as part of its August 11, 2021 Memorandum Opinion, the Court decided that California law does not apply.  That is the law of the case.  Even if the Court's prior ruling does not control, Plaintiff suffered damage in the District of Columbia as a result of the publication of Bump's article.  These allegations have not been amended or supplemented.

DATED:       January 17, 2022

DEVIN G. NUNES

By: <u>*/s/ Steven S. Biss*</u>
Steven S. Biss (VSB # 32972)
300 West Main Street, Suite 102
Charlottesville, Virginia 22903
Telephone: (804) 501-8272
Facsimile: (202) 318-4098
Email: stevenbiss@earthlink.net
(*Admitted Pro Hac Vice*)

Richard S. Basile
(D.C. Bar No. 374069)
6305 Ivy Lane, Suite 416
Greenbelt, MD 20770
Telephone: 301-441-4900
Facsimile: 301-441-2404
Email: rearsb@gmail.com

*Counsel for the Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 17, 2022 a copy of the foregoing was served electronically in PDF upon counsel for the Defendants.

By: */s/ Steven S. Biss*
Steven S. Biss (VSB # 32972)
300 West Main Street, Suite 102
Charlottesville, Virginia 22903
Telephone:	(804) 501-8272
Facsimile:	(202) 318-4098
Email:	stevenbiss@earthlink.net
(*Admitted Pro Hac Vice*)

Richard S. Basile
(D.C. Bar No. 374069)
6305 Ivy Lane, Suite 416
Greenbelt, MD 20770
Telephone:	301-441-4900
Facsimile:	301-441-2404
Email:	rearsb@gmail.com

*Counsel for the Plaintiff*