IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DEVIN G. NUNES ) <br> ) <br>     Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ) <br> WP COMPANY, LLC ) <br> d/b/a The Washington Post ) <br>    *et al* ) <br> ) <br>     Defendants. ) <br> ) | Case No. 1:21-cv-00506-CJN |

# PLAINTIFF'S RESPONSE AND OPPOSITION TO DEFENDANTS' MOTION TO ENFORCE COMPLIANCE WITH OCTOBER 25 ORDER AND FOR SANCTIONS

Plaintiff, Devin G. Nunes ("Plaintiff"), by counsel, pursuant to Local Civil Rule ("LCvR") 7, respectfully submits this Response and Opposition to the motion to enforce compliance with October 25 Order and for sanctions filed by Defendants, W.P. Company, LLC and Ellen Nakashima (the "Defendants").

## I. INTRODUCTION

This is an action for defamation arising out of two articles published by the Washington Post: First, a November 9, 2020 article that falsely accuses Plaintiff of going to the White House on March 21, 2017 to review intelligence files that Plaintiff believed would buttress *his* baseless claims of the Obama administration spying on Trump Tower. Second, a December 8, 2020 "correction" that falsely accuses Plaintiff of

1

going to the White House to review intelligence files that Plaintiff believed would buttress *Trump's* baseless claims of the Obama administration spying on Trump Tower.

Discovery conclusively demonstrates that Defendants published the false statements in 2020 with actual malice. Specifically, Defendants knew in 2017 that Plaintiff went to the White House on March 21, 2017 to review files related to the incidental collection of intelligence on United States citizens, and the unmasking of the names of certain members of the Trump campaign and transition team, including Lieutenant General Michael T. Flynn ("General Flynn").

In order to distract the Court from the seriousness of their misconduct and the relevant issues, Defendants have manufactured a discovery dispute out of whole cloth and now accuse Plaintiff of refusing to comply with the Court's October 25, 2022 Order. Defendants misrepresent facts. Contrary to Defendants suggestion:

- ▇▇▇▇▇▇ ("▇▇▇▇") is ***not*** a staffer or former staffer. He was a constituent. Defendants asked for information about Plaintiff's interactions with staffers, not with constituents or anyone else. **Defendants falsely suggest to the Court that ▇▇▇▇ was a staffer. This is an egregious misrepresentation, especially since Plaintiff produced lists of his staff members and Turner's name is not on any list.**

- ▇▇▇▇▇▇ ("▇▇▇▇") played no part in arranging the visit to the White House on March 21, 2017. Indeed, as she testified at her deposition, ▇▇▇▇ was not even aware that Plaintiff went to the White House on March 21, 2017. **Plaintiff's visit to the White House was arranged solely with Michael Ellis ("Ellis"). Plaintiff supplemented his interrogatory answers to disclose this fact.**

- ▇▇▇▇ responded to a Rule 45 subpoena from Defendants. She called Plaintiff and asked him about the subpoena. Plaintiff told ▇▇▇▇ to give Defendants everything she had. ▇▇▇▇ preserved documents at Plaintiff's direction. She searched all known and available repositories, and produced all responsive documents, including an email chain that specifically disclosed how the visit to the White House on March 22, 2017 was arranged.

- **Significantly, there is no issue in this case about the March 22, 2017 visit to the White House. It is undisputed that Plaintiff met with the President at the White House on March 22, 2017.**

- It appears that Staffer ▓▓▓▓▓▓▓▓▓ ("▓▓▓▓▓▓") drove Plaintiff to the White House on March 22, 2017. Plaintiff has no independent recollection of that, but one of the documents preserved by ▓▓▓▓▓ and produced in discovery, reflects the fact that ▓▓▓▓▓ drove Plaintiff to the White House.

- The version of the schedule produced by Plaintiff in discovery (Defendants' Exhibit 14) was preserved *prior* to this litigation. Plaintiff did not make any changes to it. **Plaintiff did not receive a text from ▓▓▓▓▓ during this litigation with the full schedule.** ▓▓▓▓▓ retained a copy of the full schedule (Defendants' Exhibit 15), which she produced to Defendants in response to a subpoena. Defendants had the full schedule prior to filing the instant motion. Plaintiff has not objected to a single third-party subpoena and has done nothing to impede the production of documents from his former staff members. The documents fully vindicate Plaintiff.

- ▓▓▓▓▓ served as Plaintiff's scheduler for many years. As she testified at her deposition, between 2003 and 2021, ▓▓▓▓▓ may have texted Plaintiff "generally" about his schedule, but those texts have absolutely nothing to do with this case.

- **Plaintiff does not remember receiving any texts from ▓▓▓▓▓ about this lawsuit, and, in any case, Plaintiff does not have any such texts.**

- Plaintiff identified every known repository used by his staff members to send, receive, and store information ***relevant to this case***, and that would ***only*** be the staffers' congressional email accounts. Plaintiff is not aware that any staffer ever used a private email to communicate anything relevant to this case.

- Plaintiff's March 21, 2017 visit to the White House was arranged with Michael Ellis. **Plaintiff did not use email or any messaging account to coordinate the meeting with Ellis. He has no records relating to his visit to the White House on March 21, 2017 because it was classified.** Defendants have taken Ellis' deposition. They examined Ellis on every aspect of how he arranged the March 21, 2017 visit to the White House. Ellis' testimony is entirely consistent with Plaintiff's discovery responses, including that the meeting did not occur at or near "midnight", the length of the meeting, the participants, and the purpose of the meeting. Ellis' testimony fully vindicates Plaintiff.

- Plaintiff did not retain the February 5, 2021 text message produced by former staffer ▇▇▇▇▇ in response to Defendants' subpoena. He did not feel it had any relevance to this case because ▇▇ was not a staffer. The text message merely reiterated Plaintiff's oft-stated opinion that the false narrative that he went to the White House at "midnight" was "▇▇▇▇". Importantly, the text message does confirm that Plaintiff ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, and was not on a "midnight run" to the White House.

- **Plaintiff disclosed the names of all staffers who worked on his campaign's website post about the "lawsuits against The Washington Post".** <u>There was only one, Jack Langer.</u> Anthony Ratekin ("Ratekin") and Johnny Amaral ("Amaral") *never* worked on the post about the lawsuits. Ratekin left Plaintiff's staff in 2018, long before Plaintiff filed his lawsuits against the Post. Amaral left Plaintiff's staff in 2015. Defendants issued a Rule 45 subpoena to Ratekin. Ratekin confirmed that he had no documents.

- In ▇▇▇▇▇▇▇▇▇▇▇▇▇▇ [Defendant's Exhibit 9], Plaintiff's former chief of staff, ▇▇▇▇ ("▇▇▇▇") notified Ratekin and Amaral that "▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇." **Plaintiff confirmed with Langer that neither Ratekin, Amaral, nor anyone else aside from Plaintiff and Langer ever offered any edits, changes, or any other contributions to the biography. Plaintiff specifically confirmed that neither Ratekin nor Amaral, nor anyone else other than himself and Langer, contributed or edited any language or did any other kind of "work" on the section of the website concerning the Washington Post lawsuits.** Defendants have no good faith basis for asserting that any staffer other than Langer worked on the website post about the lawsuits against the Washington Post.

Defendants' misrepresentations and hyperbole are themselves sanctionable. Defendants argue that the "outstanding discovery requests" are important to their defenses "because they target facts and contemporaneous records about fundamental events at issue, such as Nunes's reasons for visiting the White House on March 21, 2017, including whether he went to buttress 'baseless claims of the Obama administration spying on Trump Tower.'" This is an entirely specious argument. None of the matters

4

referred to in Defendants' motion – including the single text message that **_was_** produced to Defendants by Plaintiffs' former staffer, ▬▬▬, before Defendants filed their motion – is important to any defense raised by Defendants. Whether ▬▬▬ or ▬▬▬ or anyone else was riding in a car with Plaintiff on March 21, 2017 is not relevant to the purpose of Plaintiff's visit, which was to look at intelligence files related to unmasking.

## II. PLAINTIFF FULLY COMPLIED WITH THE COURT'S ORDER

Plaintiff is not in violation of the Court's Order. He complied fully and to the best of his understanding and ability. There are no former staffers, other than Ellis[1] and Langer, who have **_any_** relevant information about the March 21, 2017 visit to look at the intelligence files. There are **_no_** known potential repositories of documents out there somewhere that have not been identified, disclosed and searched.

### A. Paragraph 1

In paragraph 1 of the Order, the Court directed Plaintiff to:

"[i]dentify all individuals who possess relevant knowledge or information in response to Defendants' Interrogatories 2, 3, and 15, which includes, but is not limited to, (A) the unidentified staffer(s) who Plaintiff asserted traveled with him "in a cab" before he visited White House grounds on March 21, 2017; (B) the unidentified Congressional Office or Intelligence Committee staffer(s) who worked (in any manner) on Plaintiff's March 2017 statements regarding surveillance of the Trump Campaign; and (C) the unidentified staffer(s) who worked (in any manner) on Plaintiff's campaign website post about "lawsuits against The Washington Post".

Defendants' Interrogatories 2, 3 and 15 state as follows:

---

[1] Ellis left his position as General Counsel for the House Permanent Select Committee on Intelligence ("HPSCI") in February 2017, and accepted a position at the White as a lawyer on the National Security Council. Defendants issued a Rule 45 subpoena to Ellis. Ellis fully complied. He had no documents of any kind that would be relevant to the issues in this action.

> **INTERROGATORY NO. 2**
>
> Identify each person you believe to possess knowledge or information concerning the allegations in this action, and the subject matter of the knowledge or information you believe that person to possess.

> **INTERROGATORY NO. 3**
>
> Identify each individual with whom you communicated during your March 21, 2017 White House Visit and March 22, 2017 White House Visit, including, but not limited to, each of the "numerous people" and "foreign dignitaries" referenced in paragraph 22(a) of the Amended Complaint. For each individual, identify the approximate date(s), time(s), and subject(s) of your conversation(s), and whether you spoke to that individual during your March 21, 2017 White House Visit or during your March 22, 2017 White House Visit.

> **INTERROGATORY NO. 15**
>
> Identify all members of your Campaign Staff, your Congressional Office Staff, and your Intelligence Committee Staff during the time periods of March–April 2017 and November–December 2020. For each staff member, state whether he or she had or has knowledge of any facts related to your allegations in this action, including, but not limited to: (1) your March 21, 2017 or March 22, 2017 White House Visits; (2) the documents you reviewed or discussed on such visits; (3) allegations of the Obama administration spying, surveilling, or wiretapping on former President Donald Trump, Trump Tower, or any members of the Trump campaign or Trump presidential transition team; (4) your public or private communications regarding such allegations; (5) your damages; (6) the Article; or (7) this lawsuit. For each individual, briefly summarize the subject(s) of his or her knowledge.

In his supplemental answers to Interrogatory Nos. 2, 3 and 15 (Defendants' Exhibit 2), Plaintiff identified (a) all individuals known or believed to possess knowledge

6

or information concerning the allegations in this action, (b) all individuals with whom Plaintiff communicated during his visits to the White House on March 21, 2017 and March 22, 2017, and (c) all members of his campaign staff, congressional office staff and HPSCI staff. Plaintiff supplied all information requested in Interrogatory No. 15 for any staff member with knowledge of facts related to Plaintiff's allegations in this action. Specifically, in his supplemental answers, Plaintiffs confirmed the following facts in response to each subpart of paragraph 1 of the Court's Order:

> "a. Jennifer Morrow was my scheduler. She prepared an agenda for March 21, 2017 and March 22, 2017, which has been produced. She helped arrange my visit to the White House on March 22, 2017. Caitlin Shannon drove me to the White House on March 22, 2017.
>
> b. I don't recall any staffers traveling with me in a cab. I am aware that Jake Tapper asserted in an article that a member of my "staff" rode with me in a cab. I do not remember, but can only speculate that the "staff" referred to by Jake Tapper was Damon Nelson.
>
> c. I only communicated with Jack Langer in preparing the March 2017 statements.
>
> d. I only communicated with Jack Langer in creating the campaign website post about 'lawsuits against The Washington Post.'"[2]

As stated above, ▇▇▇▇▇▇ was ***never*** a staffer. Plaintiff does not recall riding in a cab with any staffers prior to his visit to the White House on March 21, 2017. To the extent that the events of March 22, 2017 are relevant to Plaintiff's defamation claims – and they are not – ▇▇▇▇'s involvement in those events was fully disclosed. The fact that Plaintiff went to dinner with Turner and other constituents later in the evening of

---

[2] Defendants' Exhibits 10 and 11 demonstrates that ▇▇▇▇▇▇ and ▇▇▇▇▇▇ did not work on the website post about the Washington Post lawsuits. Exhibit 12 demonstrates that ▇▇▇▇▇▇ reviewed "early age stuff". Plaintiff is not aware that Mr. House did any work on the website post about the Washington Post lawsuits.

March 21, 2017 does not make ▮▮▮ a person believed to have knowledge or information relevant to the allegations in this case. Plaintiff fully complied with paragraph 1 of the Court's Order.

B. **Paragraph 2**

Paragraph 2 of the Order states as follows:

"For each individual with relevant knowledge or information on Plaintiff's staff or otherwise within his control … identify in response to Defendants' Interrogatory 16 every repository ever used by that custodian to send, receive, or store relevant communications or documents; the subject matter of the documents in that repository; the date range of documents retained in that repository; and whether Plaintiff collected documents from the repository".

Defendants' Interrogatory No. 16 reads as follows:

> **INTERROGATORY NO. 16**
>
> Identify all custodians who have relevant documents within your possession, custody or control (including, but not limited to, you, your Campaign Staff, your Congressional Office Staff, and your Intelligence Committee Staff). For each custodian, state (a) every repository ever used by that custodian to send, receive, or store relevant communications or documents; (b) the date range of documents retained by that custodian for each repository; (c) the subject matter of the relevant documents located in each repository; and (d) whether you have collected documents from the repository.

In his supplemental answer to Defendants' Interrogatory No. 16, Plaintiff identified every known[3] repository used by persons believed to have relevant documents

---

[3] Plaintiff does not know the telephone numbers and House email accounts used by his staff in 2017. He could not possibly be expected to know this detail. Plaintiff produced in discovery staff lists that includes all known information about all staff members. [*See, e.g.,* Defendants' Exhibit 16 (Plaintiff's Response to Request for Production of Documents No. 52)]. Plaintiff preserved all relevant documents that show his itinerary and activities on March 21, 2017 and all of Langer's email communications. Langer was the only one who communicated with anyone in 2017 about the events of March 21, 2017 or the follow-on press conferences.

within their possession. Plaintiff identified House email accounts and known personal email accounts, and the business believed to have been conducted by each individual that would be reflected in documents believed to be in those repositories. Plaintiff either collected documents directly from the repository, as in the case of Langer, or Plaintiff's counsel (Mr. Biss) conferred with counsel (Elliot Berke) for Plaintiff's former staffers (*i.e.* ███ and ███████) and ensured that a thorough search of all available repositories had been done and all responsive documents had been produced in response to subpoenas issued by Defendants' counsel. Plaintiff also discussed with several former staffers, including Scott Glabe ("Glabe") and George Pappas ("Pappas"), whether they had any potentially responsive information in any repository, and they said no.

      Defendants speculate that there are missing documents. This is completely false. Plaintiff preserved and produced in discovery all responsive documents from all known repositories. Plaintiff did not use any repository to communicate with anyone regarding his visits to the White House or any events relevant to this action, and that fact has been communicated to Defendants' counsel repeatedly. Plaintiff's visit to the White House on March 21, 2017 was arranged with Michael Ellis, but neither Ellis nor Plaintiff has any documents. Any computers or hard drives used by Plaintiff's staff in 2017 to store relevant documents, such as relevant press statements and drafts of those statements (which Plaintiff has acknowledged were written by Langer), are not in Plaintiff's control. He has no access to those servers. Copies of the emails and press releases were preserved, and produced! In his supplemental answer (Defendants' Exhibit 2), Plaintiff confirmed as follows:

"Each individual with relevant knowledge or information on my staff or otherwise formerly within my control used the House and/or personal email address that is identified in the documents produced by me in discovery and produced by former staff members subpoenaed by the Defendants. These email repositories were used to conduct House business within the scope of each individual's duties and authority. I collected documents from Jack Langer. My lawyer reached out to counsel for staff members who were subpoenaed, and confirmed that all relevant documents relating to the allegations in this action were searched for and produced. I personally reached out to Scott Glabe and George Pappas to determine whether they had documents relevant to the allegations in this action. They did not. I'm not aware of any staff member aside from those identified above, who would have any documents relevant to the allegations in this action. I myself had no such repository. Jack Langer had relevant communications using his House of Representatives' email account and his personal gmail account relating to the campaign website post, all of which have been provided to Defendants' counsel."

Plaintiff fully and completely responded to paragraph 2 of the Court's Order. There is no other known repository of information that may be relevant to this action. Plaintiff has no additional documents to produce. Plaintiff cannot look for something he knows does not exist.

C.  **Paragraph 3**

Paragraph 3 of the Order states as follows:

"For each individual listed in paragraph (2) above, supplement Plaintiff's responses to Defendants' first and second sets of requests for production of documents (including Requests for Production of Documents 1–41) to include all responsive, non-privileged documents and any original metadata resulting from a reasonably diligent search of those custodians' files".

In response to paragraph 3 of the Court's Order, Plaintiff supplemented his responses to Defendants' request for production of documents, and produced additional documents from Langer (including any original metadata) relating to the editing of the website devinnunes.com. **Plaintiff has produced well in excess of 1,630 pages of documents in response to Defendants' five requests for production of documents**. Emails were also produced in native format. Plaintiff has no additional documents.

10

Plaintiff did not produce e-mails from his former staff, which he did not know existed, but which his former staff already produced. Plaintiff is aware that his former staff, including ▮▮▮, ▮▮▮ and ▮▮▮, did produce all documents in their possession and control. Knowing what Plaintiff already knows, that all documents have been searched for and produced, it would be entirely superfluous for Plaintiff to go back to his former staff and ask, "did you look for and produce all documents." They did.

D.  **Paragraph 4**

Paragraph 4 of the Order directed the Plaintiff to:

"Supplement Plaintiff's responses to Defendants' Interrogatories 1 and 17 by consulting with Plaintiff's former scheduler (Jennifer Morrow) or other relevant staffers concerning (A) Plaintiff's complete itinerary on March 21, 2017 and (B) how Plaintiff's March 21, 2017 and March 22, 2017 visits to the White House were arranged".

Defendants' Interrogatory Nos. 1 and 17 read as follows:

> **INTERROGATORY NO. 1**
>
> Provide a complete itinerary identifying your activities and whereabouts on March 21, 2017. Your response should identify the specific location and time at which you departed for your March 21, 2017 White House Visit, the specific location and time at which you arrived for your March 21, 2017 White House Visit, the specific location and time at which you concluded your March 21, 2017 White House Visit, and your destination(s) after your March 21, 2017 White House Visit.

> **INTERROGATORY NO. 17**
>
> Identify all communications you, your Campaign Staff, your Congressional Office Staff, or your Intelligence Committee Staff ever had on March 21, 2017 or March 22, 2017, related to (1) your March 21, 2017 or March 22, 2017 White House Visits; (2) the documents or information you reviewed or discussed on such visits; or (3) allegations of the Obama administration spying, surveilling, or wiretapping on former President Donald Trump, Trump Tower, or any members of the Trump campaign or Trump presidential transition team. For each communication, identify (a) the date and time of the communication; (b) the sender or speaker; (c) the recipient(s); (d) the method of communication (e.g., voice, email, phone, text message, Signal, etc.); (e) whether the communication was retained; and (f) if not, when it was deleted or not retained. This list should include, but is not limited to, all communications coordinating the March 21, 2017 or March 22, 2017 White House Visits, and every person you communicated with regarding your Visits or the information you learned.

Plaintiff supplemented his responses to Defendants' Interrogatories 1 and 17 by consulting with a relevant staffer (Langer) and by reviewing the documents produced by Morrow in response to her subpoena. In his supplemental interrogatory answers, Plaintiff supplied the following information:

> "I arranged the March 21 visit with Michael Ellis.[4] Jennifer Morrow helped arrange the March 22, 2017 visit to the White House. Beyond that, I have consulted with all the relevant staffers, and both they and I have provided all relevant documents, including a complete itinerary for March 21, 2017 and March 22, 2017."

Plaintiff fully complied with paragraph 4 of the Court's Order. A complete itinerary and all documents that show how Plaintiff's March 21-22, 2017 visits to the White House were arranged have been produced. Everything. Defendants complain that

---

[4] Defendants have taken Ellis' deposition. They know exactly who was involved in arranging the March 21, 2017 visit and how it was arranged. Plaintiff's supplemental answers are neither "threadbare" nor "incomplete."

the schedule does reflect certain events or individuals. However, the schedule nowhere states how Plaintiff got from event to event and it does not account for the visit to the White House on March 21, 2017 because ▇▇▇ did not know about the visit, and because the visit was not arranged until March 21, 2017. These are matters for deposition and, indeed, Defendants asked ▇▇▇▇▇ many of these questions. In addition to documents produced by Plaintiff and his former staff, Defendants subpoenaed the National Archives and received additional documents relating to Plaintiff's visits to the White House. Although beyond the scope of Defendants' discovery requests, the itinerary produced by Plaintiff in discovery shows that after his visit with Michael Ellis at the White House, Plaintiff attended a NRCC function at the National Museum. After that function, Plaintiff went to dinner with several constituents (▇▇▇▇▇) and former North Carolina representative George Holding ("Holding").

Defendants never asked about the evening of March 21, 2017 because it conflicts with their false narrative about a "midnight run" to the White House. In fact, Plaintiff spent the evening with friends as opposed to reviewing intelligence files to buttress anyone's "baseless claims" of wiretapping.

### CONCLUSION AND REQUEST FOR RELIEF

*<u>NONE</u>* of the documents produced by Plaintiff or by any of his former staffers or by NARA support Defendants' false accusations at issue in this case. Indeed, documents produced by NARA confirm and demonstrate that there was no "midnight run".

Plaintiff has fully cooperated in discovery. He has positively encouraged all former staff members to search all available devices and produce whatever documents they have. In good faith, he has relied on former staffers' responses to subpoenas, which

Plaintiff confirmed with their counsel (Elliot Berke) are complete.  Plaintiff has acted reasonably to ensure that his discovery responses are complete and that he complied with the Court's October 25 Order.

For the reasons stated above, Plaintiff respectfully requests the Court to DENY the Defendants' motion.

DATED:	December 19, 2022

			DEVIN G. NUNES


		By:	*/s/ Steven S. Biss*
			Steven S. Biss (VSB # 32972)
			300 West Main Street, Suite 102
			Charlottesville, Virginia 22903
			Telephone:  (804) 501-8272
			Facsimile:  (202) 318-4098
			Email:  stevenbiss@earthlink.net
			(*Admitted Pro Hac Vice*)

			Richard S. Basile
			(D.C. Bar No. 374069)
			6305 Ivy Lane, Suite 416
			Greenbelt, MD 20770
			Telephone:  301-441-4900
			Facsimile:  301-441-2404
			Email:  rearsb@gmail.com

			*Counsel for the Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on December 19, 2022 a copy of the foregoing was filed electronically using the Court's CM/ECF system, which will send notice of electronic filing to counsel for the Defendants and all interested parties receiving notices via CM/ECF.

By:   */s/ Steven S. Biss*
      Steven S. Biss (VSB # 32972)
      300 West Main Street, Suite 102
      Charlottesville, Virginia 22903
      Telephone: (804) 501-8272
      Facsimile: (202) 318-4098
      Email: stevenbiss@earthlink.net
      (*Admitted Pro Hac Vice*)

      Richard S. Basile
      (D.C. Bar No. 374069)
      6305 Ivy Lane, Suite 416
      Greenbelt, MD 20770
      Telephone: 301-441-4900
      Facsimile: 301-441-2404
      Email: rearsb@gmail.com

      *Counsel for the Plaintiff*