# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DEVIN G. NUNES,

       Plaintiff,

v.

WP COMPANY LLC, d/b/a THE
WASHINGTON POST and ELLEN
NAKASHIMA,

       Defendants.

**FILED UNDER SEAL**

**CONTAINS INFORMATION
DESIGNATED AS HIGHLY
CONFIDENTIAL**

Case No. 1:21-cv-00506 (CJN)

---

## DEFENDANTS' MOTION TO ENFORCE COMPLIANCE WITH THE OCTOBER 25 ORDER AND FOR SANCTIONS

WILLIAMS & CONNOLLY LLP

Kevin T. Baine (D.C. Bar No. 238600)
Thomas G. Hentoff (D.C. Bar No. 438394)
Nicholas G. Gamse (D.C. Bar No. 1018297)
Sean M. Douglass (D.C. Bar No. 1033069)

680 Maine Avenue, SW
Washington, DC 20024
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
thentoff@wc.com

*Counsel for Defendants*

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................ 1

BACKGROUND ....................................................................................................... 5

LEGAL STANDARD ................................................................................................ 8

ARGUMENT ............................................................................................................ 8

I.      NUNES FAILED TO COMPLY WITH THE COURT'S OCTOBER 25
        ORDER IN MULTIPLE RESPECTS. ........................................................ 8

        A.      Nunes Did Not Identify "All Individuals Who Possess Relevant
                Knowledge or Information.".......................................................... 8

        B.      Nunes Did Not Sufficiently Disclose His "Complete Itinerary on
                March 21, 2017" or Sufficiently Explain How His "March 21,
                2017 and March 22, 2017 Visits to the White House Were
                Arranged.".................................................................................... 11

        C.      Nunes Did Not Identify, with Specificity, the Repositories of
                Relevant Information, and Has Admitted That He Only Collected
                Documents from One Custodian.................................................... 14

        D.      Nunes Did Not Conduct a Reasonably Diligent Search in
                Response to the Post's Document Requests. ................................ 16

        E.      Nunes Continues To Fail To Provide Metadata............................. 19

II.     SANCTIONS ARE WARRANTED. .......................................................... 19

        A.      The Court Should Order Nunes To Comply with the October 25
                Order Within Two Weeks.............................................................. 20

        B.      The Court Should Order Nunes To Provide a Sworn Statement
                Certifying His Compliance and Detailing the Steps Taken To
                Comply with Each Part of the Order. ........................................... 20

        C.      The Court Should Order a Supplemental Deposition, or, if the
                Court Prefers, an Evidentiary Hearing, To Examine Nunes
                Regarding His Compliance............................................................ 21

        D.      The Court Should Require Nunes To Pay Costs in Connection
                with This Motion. ......................................................................... 22

CONCLUSION........................................................................................................ 23

STATEMENT PURSUANT TO LCVR 7(M) .......................................................... 23

i

## <u>TABLE OF AUTHORITIES</u>

### CASES

*\* Butowsky v. Folkenflik*, 2020 U.S. Dist. LEXIS 267938 (E.D. Tex. Aug. 25, 2020) ................21

*Crocs, Inc. v. Effervescent, Inc.*, 2017 WL 1325344 (D. Colo. Jan. 3, 2017) .............................21

*Keys v. Wash. Metro. Area Transit Auth.*, 272 F.R.D. 243 (D.D.C. 2011) ...................................20

*\* Lebron v. Powell*, 217 F.R.D. 72 (D.D.C. 2003) ................................................................15, 19

*Martinez v. Asian 328, LLC*, 2016 WL 1698261 (D.D.C. Apr. 27, 2016) ....................................23

*McNair v. District of Columbia*, 325 F.R.D. 20 (D.D.C. 2018) ....................................................18

*McNearney v. Wash. Dep't of Corr.*, 2012 WL 3155099 (W.D. Wash. Aug. 2, 2012) ................20

*Micula v. Gov't of Romania*, 2020 WL 6822695 (D.D.C. Nov. 20, 2020) ...................................23

*Nekich v. Wis. Cent. Ltd.*, 2017 WL 11454634 (D. Minn. Sept. 12, 2017) .................................22

*Net-Com Servs., Inc. v. Eupen Cable USA, Inc.*, 2012 WL 12887396 (C.D. Cal. Nov. 14, 2012) ........................................................................................................................................22

*P.R. Med. Emergency Grp., Inc. v. Iglesia Episcopal Puertorriqueña, Inc.*, 318 F.R.D. 224 (D.P.R. 2016) ...........................................................................................................18

*\* Parsi v. Daioleslam*, 778 F.3d 116 (D.C. Cir. 2015) ......................................................... *passim*

*Peskoff v. Faber*, 244 F.R.D. 54 (D.D.C. 2007) ...........................................................................22

*\* Ruiz-Bueno v. Scott*, 2013 WL 6055402 (S.D. Ohio Nov. 15, 2013) .......................................21

*Shepherd v. Am. Broad. Cos.*, 62 F.3d 1469 (D.C. Cir. 1995)......................................................8

*U.S. Commodity Futures Trading Comm'n v. Trade Exch. Network Ltd.*, 61 F. Supp. 3d 1 (D.D.C. 2014) ...........................................................................................................................4

*Walls v. Paulson*, 250 F.R.D. 48 (D.D.C. 2008)...........................................................................23

*Webb v. District of Columbia*, 146 F.3d 964 (D.C. Cir. 1998) .......................................................4

*\* Young v. Off. of U.S. Senate Sergeant at Arms*, 217 F.R.D. 61 (D.D.C. 2003) ...................20, 22

_____

*\*Authorities upon which counsel chiefly rely are marked with asterisks.*

**RULES**

Federal Rule of Civil Procedure 30(d)(1) ....................................................................................22

Federal Rule of Civil Procedure 37(b) ................................................................................. *passim*

## INDEX OF EXHIBITS

**Exhibit 1**:  Plaintiff's Third Supplemental Answers and Responses to Defendants' Discovery Requests (November 8, 2022)

**Exhibit 2**:  Plaintiff's Fourth Supplemental Answers and Responses to Defendants' Discovery Requests (November 16, 2022)

**Exhibit 3**:  Text Messages between D. Nunes and ███████ (February 5, 2021) (BF.Nunes.████.101822) (filed under seal)

**Exhibit 4**:  Excerpts from the Deposition Transcript of ██████████ (December 9, 2022) (filed under seal)

**Exhibit 5**:  Email from S. Biss to N. Gamse (December 10, 2021)

**Exhibit 6**:  Email from S. Biss to N. Gamse, T. Hentoff and S. Douglass (July 12, 2022)

**Exhibit 7**:  Letter from N. Gamse to S. Biss (November 11, 2022)

**Exhibit 8**:  Email from S. Biss to T. Hentoff, N. Gamse and S. Douglass (November 16, 2022)

**Exhibit 9**:  Email from ██████ to ████████ and ██████ (August 30, 2021) (BF.Nunes.WP.████.00171) (filed under seal)

**Exhibit 10**:  Email from ██████████ to █████ (September 30, 2021) (BF.Nunes.WP.████.00636) (filed under seal)

**Exhibit 11**:  Email from ███████ to ████████ (September 16, 2021) (BF.Nunes.WP.████.00138) (filed under seal)

**Exhibit 12**:  Email from ███████ to ██████ (October 1, 2021) (BF.Nunes.WP.████.00326) (filed under seal)

**Exhibit 13**:  Defendants' Second Set of Interrogatories (December 21, 2021)

**Exhibit 14**:  Nunes Production of March 21 and 22, 2017 Agenda (PX 0009) (filed under seal)

**Exhibit 15**:  ██████ Production of March 21 and 22, 2017 Agenda (██████████████ (filed under seal)

**Exhibit 16**:  Plaintiff's Objections, Answers and Responses to Defendants' Fourth Discovery Requests (June 20, 2022)

**Exhibit 17**:   Email from ███████ to C. Simms (March 22, 2017)

**Exhibit 18**:   Email from B. Scully to ████████ (March 22, 2017) (filed under seal)

**Exhibit 19**:   Email from The White House to ██████ (March 22, 2017) (██████████)

**Exhibit 20**:   Plaintiff's Objections, Answers and Responses to Defendants' Third Discovery Requests (April 3, 2022)

**Exhibit 21**:   Plaintiff's Objections, Answers and Responses to Defendants' Fifth Discovery Requests (October 20, 2022)

## **INTRODUCTION**

Plaintiff Devin Nunes has persistently refused to provide discovery important to litigation of his claims in response to the longstanding and ongoing efforts by Defendants, the Washington Post and Ellen Nakashima (collectively, the "Post"), and now in violation of a Court Order.  In its original motion to compel, the Post explained that Nunes had flouted his discovery obligations.  ECF No. 56.  The Court's October 25, 2022 Order, ECF No. 65 (the "October 25 Order"), granted the Post's motion in substantial part, requiring Nunes to consult with his staffers and supplement multiple interrogatory responses; to provide an accounting for "every repository ever used to send, receive, or store relevant communications or documents" by "each individual with relevant knowledge or information on Plaintiff's staff or otherwise within his control"; and to conduct a reasonably diligent search for information and documents responsive to nearly all of the Post's discovery requests.

Nunes's response to the Court's October 25 Order is a continuation of his intransigence.  His attempt to comply was, at best, entirely superficial.  And its insufficiency has been confirmed by third-party discovery recently obtained by the Post, which further establishes the extent to which Nunes ignored what the Court ordered him to do.  The Post therefore brings this motion to enforce compliance with the October 25 Order, and for sanctions pursuant to Rule 37(b) and the Court's inherent authority.

In this Motion, the Post presents a few of the most consequential examples of how Nunes has failed to comply with four different parts of the October 25 Order.  They include:

First, the Court ordered Nunes to supplement interrogatories to identify knowledgeable witnesses, including "the unidentified staffer(s) who Plaintiff asserted traveled with him 'in a cab' before he visited White House grounds on March 21, 2017."  October 25 Order ¶ 1.  In response, Nunes attested that he didn't "recall any staffers traveling with me in a cab."  Ex. 1 (the "First

Supplemental Disclosure") ¶ 1(a); Ex. 2 (the "Second Supplemental Disclosure") ¶ 1(a).  But his former Deputy Chief of Staff Caitlin Canter, in response to a Post subpoena, produced a text message conversation with Nunes *during this litigation*—on February 5, 2021—in which █



Ex. 3 (Feb. 5, 2021 Text Exchange Between D. Nunes and ████ at 1.  Nunes never disclosed ███████████████████████████████████████████████.  Nor did he produce a copy of this ███████████████████████████████████.

Second, the Court ordered Nunes to supplement his responses to interrogatories calling for "Plaintiff's complete itinerary on March 21, 2017" and "how Plaintiff's March 21, 2017 and March 22, 2017 visits to the White House were arranged," and ordered Nunes to consult "with Plaintiff's former scheduler (Jennifer Morrow) or other relevant staffers" before doing so.  October 25 Order ¶ 4.  Nunes responded that he had "consulted with all the relevant staffers," and that "all relevant documents had been provided."  Ex. 2 ¶ 3.  But during a deposition last week, ████ testified that ███████████████████████████████████████████████████████████████ Ex. 4 (████ Dep.) at 123:16–123:19.  She also testified that ███████████████████████████████████████████████████████████████████████████████████████████ *Id.* at 113:23–114:2.  ████ testified that ████ ███████████████████████████████████████████ *Id.* at 119:22–119:23.  The document has ███████████████████, while discovery was ongoing in this lawsuit, and two days before Nunes served his initial discovery responses.  But Nunes never

produced any such ████████████████████████████████████████

Third, the Court ordered Nunes to "identify 'every repository ever used by' each individual with relevant knowledge or information on Plaintiff's staff to 'send, receive, or store relevant communications or documents,' along with the 'date range' and 'subject matter' of documents in that repository," and disclose "whether [he] collected documents from that repository." October 25 Order ¶ 2. Nunes's supplement disclosed only that his staffers used Congressional email accounts. He failed to disclose, for example, any information regarding his own devices and email or messaging accounts, including the method of communication he used to coordinate the so-called midnight run with Michael Ellis. He also failed to disclose any other locations of documents, such as computer files, paper files, and text messages, even though there is now documentary evidence ███████████████████ that Nunes sent and received relevant texts.

And it bears emphasis that this comes after telling the Post and the Court on October 1, 2021, that he would "produce any documents of information that may be in the possession or control of his congressional staff," "without the need for third-party discovery." Joint Report L.R. 16.3 Conf., ECF No. 44 ¶ 16(b). He also confirmed to the Post that his departure from Congress would have "no impact on his efforts to preserve relevant documents and information." Ex. 5 (Dec. 10, 2021 Email from S. Biss to N. Gamse) at 1. But now, despite these representations, Nunes attests that "I have no access to such documents or repositories." Ex. 1 ¶ 3.

Fourth, the Court ordered Nunes to "supplement Plaintiff's responses to Defendants' first and second sets of requests for production of documents (including Requests for Production of Documents 1–41) to include all responsive, non-privileged documents and any original metadata resulting from a reasonably diligent search of those custodians' files." October 25 Order ¶ 3. But in response, Nunes produced a mere seven emails from his spokesman Jack Langer, all of which

concerned revisions to Nunes's campaign website biography.  Langer remains the *only* custodian from whom Nunes has produced documents in this case, even though other staffers within his control, such as ███████ had relevant information.  In addition, Nunes still has not produced a single communication he ever sent or received.  It is not only inconceivable that Nunes would not have *any* communications relevant to his $200 million lawsuit, it is now demonstrated to be false, as his responsive text messages with ████████████████████.

Nunes's violations of the Court's October 25 Order merit sanctions.  "A district court may order sanctions . . . for misconduct either pursuant to Rule 37(b)(2) of the Federal Rules of Civil Procedure, which authorizes a court to assess a sanction for violation of a discovery order, or pursuant to the court's inherent power to 'protect [its] integrity and prevent abuses of the judicial process.'"  *Webb v. District of Columbia*, 146 F.3d 964, 971 (D.C. Cir. 1998) (alteration in original) (citation omitted).  Here, Nunes has "engaged in a disturbing pattern of delay and intransigence," in which he has repeatedly "deferred producing relevant documents, withheld them, or denied their existence altogether."  *Parsi v. Daioleslam*, 778 F.3d 116, 118 (D.C. Cir. 2015).  His "failure to produce documents in a timely manner forced" the Post "to waste resources and time" pursuing third-party discovery.  *Id.*  And the limited evidence from third-party discovery that the Post has obtained shows that Nunes not only failed to comply with Order, but also "misrepresented to the District Court that [he] did not possess key documents."  *Id.*

The Post's outstanding discovery requests are important to its defenses because they target facts and contemporaneous records about fundamental events at issue, such as Nunes's reasons for visiting the White House on March 21, 2017, including whether he went to buttress "baseless claims of the Obama administration spying on Trump Tower."  It "stretches credulity past its breaking point," *see U.S. Commodity Futures Trading Comm'n v. Trade Exch. Network Ltd.*, 61

F. Supp. 3d 1, 8 (D.D.C. 2014), for Nunes to take the position that neither he nor his staff possess (or possessed) contemporaneous communications, such as those reflecting internal discussion, deliberation, coordination, or commentary on Trump's wiretapping allegations, Nunes's so-called "midnight run," the House Ethics investigation into his disclosure of information he obtained during that meeting, or his subsequent recusal from leading the Russia investigation.

For these reasons, the Post requests that the Court order Nunes to: (1) comply with the October 25 Order; (2) certify the steps he took to comply with each part of the Order; and (3) sit for a supplemental deposition (or, if the Court prefers, appear at an evidentiary hearing) to be examined under oath about his compliance and the location of relevant records.  The Court should also award the Post costs and fees in connection with this Motion.  *See* Fed. R. Civ. P 37(b).

## BACKGROUND

On June 10, 2022, the Post filed a motion to compel discovery from Nunes because of his failure to produce responsive documents and information within his control that (1) he would be reasonably expected to have and (2) his counsel promised to preserve.  ECF No. 56.  The Post incorporates by reference its previous briefing.  *Id.*

The Post also propounded document subpoenas on the Devin Nunes Campaign Committee (the "Campaign") and multiple former members of Nunes's congressional staff whom Nunes's counsel said he did not represent.[1]  In response to the subpoenas, the Post received documents from the Campaign and from four former members of Nunes's congressional staff: former Chief

---

[1] On July 11, 2022, the Post requested deposition dates from Nunes's counsel for ███████████████ ███████████████████████████████████████████  Nunes's counsel responded on July 12, 2022, that he only represented Langer and that the Post would have to subpoena the remaining witnesses.  Ex. 6 (July 12, 2022 Email from S. Biss to N. Gamse).  The Post then served document subpoenas on ████████████████ on August 27, 2022, ████████████████ on August 29, 2022, ████████████ on September 8, 2022, ████████████ on September 26, 2022, and ████████████ (who was identified in documents produced by ████████ on October 12, 2022.

of Staff ████████████, former Deputy Chief of Staff ███████████, former Executive

Assistant ██████████████, and former Staff Assistant ████████████

On October 25, 2022, the Court granted the Post's motion in part, ordering Nunes to:

(1) identify "all individuals who possess relevant knowledge or information" in response to several interrogatories, including "the unidentified staffer(s) who Plaintiff asserted traveled with him 'in a cab' before he visited White House grounds on March 21, 2017;

(2) identify "every repository ever used by" each individual with relevant knowledge or information on Plaintiff's staff to "send, receive, or store relevant communications or documents," along with the "date range" and "subject matter" of documents in that repository and "whether Plaintiff collected documents from that repository";

(3) produce "all responsive, non-privileged documents and any original metadata resulting from a reasonably diligent search of those custodians' files" in response to 41 requests for production of documents; and

(4) identify his "complete itinerary on March 21, 2017" and how his "March 21, 2017 and March 22, 2017 visits to the White House were arranged" after consulting with Plaintiff's former scheduler or other staffers.

October 25 Order ¶¶ 1–4.

On November 8, 2022, Nunes provided the Post with a two-page "supplement" in response

to the Order and a cover email informing the Post that he would produce additional emails two

days after the Court's deadline, on November 10, 2022.  Ex. 1.  In his First Supplemental

Disclosure, Nunes stated that he "didn't recall any staffers traveling with [him] in a cab," that he

"only communicated with Jack Langer in preparing the March 2017 statements," and "in creating

the campaign website post about 'lawsuits against The Washington Post.'"  *Id.* ¶ 1.  He stated that

he was "not aware of anyone aside from Jack Langer who would have relevant knowledge or

documents in any repository," "other than the documents that have already been provided by me

and those individuals in response to subpoenas."  *Id.* ¶ 2.  Nunes also stated that he had "no such

repository," and that he "did not collect documents" from any of his staffers' repositories.  *Id*.

With regard to the 41 document requests he was ordered to supplement, he stated that he would

later produce additional documents from Langer, but was otherwise "not aware" of any staffer having "any responsive documents beyond what they have already provided in response to Defendants' subpoenas" and that he had "no access to such documents or repositories." *Id.* ¶ 3.

On November 11, 2022, three days after the Court-ordered deadline, the Post sent a letter to Nunes identifying deficiencies in his First Supplemental Disclosure and offering to confer with his counsel by November 15, 2022. *See* Ex. 7 (Nov. 11, 2022 Letter from N. Gamse to S. Biss).

On November 16, 2022, more than a week after the Court's deadline, Nunes provided a second supplement. *See* Ex. 2. His Second Supplemental Disclosure acknowledged that his staffers used House of Representatives email addresses and personal email accounts "to conduct House business within the scope of each individual's duties and authority," but then stated that he only "collected documents from Jack Langer." *Id.* ¶ 2. In his cover email to the Second Supplemental Disclosure, Nunes stated that he had "reviewed the concerns outlined in [the Post's] letter," that he had "responded fully to the Court's Order," and that he had "no further information or documents to supply." Ex. 8 (Nov. 16, 2022 Email from S. Biss to N. Gamse) at 1.

On November 23, 2022, the Post submitted a request to chambers seeking leave to file a motion to compel compliance with the October 25 Order and for sanctions. On December 6, 2022, the Court issued a Minute Order for the Post to file its motion by December 13, 2022.

On December 8, 2022, the Post deposed ███████████, Nunes's former staffer who had worked as his scheduler for more than twenty years, through the time Nunes filed the lawsuit and departed from Congress on January 1, 2022. During her deposition, ████████ testified about ██████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████

███████████████████████████████ *See* Ex. 4 at 142:10–144:3.

## LEGAL STANDARD

When a party "fails to obey an order to provide or permit discovery," Federal Rule of Civil Procedure 37(b)(2)(A) provides federal courts with authority to issue appropriate sanctions through "further just orders." This rule affords district courts "broad discretion" in fashioning sanctions that are responsive to discovery violations. *Parsi v. Daioleslam*, 778 F.3d 116, 125 (D.C. Cir. 2015) (granting motion to compel and Rule 37(b) sanctions).

In addition to the sanctions authorized by Rule 37(b), federal courts have inherent authority to issue sanctions: "When rules alone do not provide courts with sufficient authority to protect their integrity and prevent abuses of the judicial process, the inherent power fills the gap." *Shepherd v. Am. Broad. Cos.*, 62 F.3d 1469, 1474 (D.C. Cir. 1995).

## ARGUMENT

### I.    Nunes Failed To Comply with the Court's October 25 Order in Multiple Respects.

#### A.    Nunes Did Not Identify "All Individuals Who Possess Relevant Knowledge or Information."

Nunes failed to adequately respond to the Court's Order directing him to "identify 'all individuals who possess relevant knowledge or information' in response to Defendants' Interrogatories 2, 3, and 15." October 25 Order ¶ 1.

Nunes's "supplements" are demonstrably incomplete and noncompliant with the Court's Order. To take a few examples only:

- The Court expressly ordered Nunes to identify "the unidentified staffer(s) who Plaintiff asserted traveled with him 'in a cab' before he visited White House grounds on March 21, 2017." October 25 Order ¶ 1. Nunes attested that he doesn't "recall any staffers traveling with me in a cab" and that "I do not remember, but can only speculate that the 'staff'

referred to by [CNN] was ▮▮▮▮▮▮.” Ex. 2 ¶ 1(b).  But in response to a subpoena,

his former Deputy Chief of Staff ▮▮▮▮▮ produced a text message with Nunes

("DGN" for Devin G. Nunes), dated February 5, 2021, in which ▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮ Ex. 3 at 1.



Nunes never disclosed ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮, even though he personally texted with her about it.  Nor did

he produce his text messages with her, even though they were sent after he filed the lawsuit

and therefore indisputably had an obligation to preserve them.  Indeed, Nunes has not

produced a single text message in this case.

- In his February 5, 2021 text message with ████ Nunes also confirmed that ████████ ████████████████ *Id.* ████████████████████████ ████████████████████████████████████ *Id.* Nunes has never disclosed ████████████████████ ██████████████

- The Court expressly ordered Nunes to disclose the "unidentified staffer(s) who worked (in any manner) on Plaintiff's campaign website post about 'lawsuits against The Washington Post.'" October 25 Order ¶ 1. In response, Nunes attested that he "only communicated with Jack Langer . . . in creating the campaign website post about 'lawsuits against The Washington Post.'" Ex. 2 ¶ 1. But an email produced by his Campaign shows that this is false, because Nunes ████████████████████████████████████ ████████████████████████████████. *See* Ex. 9 (Aug. 31, 2021 Email from ████ to ████████ and ████████) at 1 ████████████████ ████████████████████████████ Campaign emails also revealed that ████████████████████████████████████ ████████████████████████████████ *See* Ex. 10 (Sept. 30, 2021 Email from ████████ to ████); Ex. 11 (September 16, 2021 Email from ████ to ████████); Ex. 12 (Oct. 1, 2021 Email from ████ to ████). Nunes never disclosed ████████████████████████████. This establishes that his search for responsive information in the face of the October 25 Order did not include (1) reviewing evidence in his control; (2) consulting with any of ████ ████████████████████████ the relevant campaign emails; or (3) adequately

consulting with his Campaign's counsel who produced the relevant campaign emails.

**B.    Nunes Did Not Sufficiently Disclose His "Complete Itinerary on March 21, 2017" or Sufficiently Explain How His "March 21, 2017 and March 22, 2017 Visits to the White House Were Arranged."**

The Court also ordered Nunes to supplement his "responses to Defendants' Interrogatories 1 and 17 by consulting with Plaintiff's former scheduler (Morrow) or other relevant staffers concerning (A) Plaintiff's complete itinerary on March 21, 2017 and (B) how Plaintiff's March 21, 2017 and March 22, 2017 visits to the White House were arranged."  October 25 Order ¶ 4.

Nunes responded to this directive by stating that he "arranged the March 21 visit with Michael Ellis," that "Jennifer Morrow helped arrange the March 22, 2017 visit," and that he "consulted with all the relevant staffers, and both they and I have provided all relevant documents, including a complete itinerary for March 21, 2017 and March 22, 2017."  Ex. 2 ¶ 4.  His response is demonstrably incomplete and misleading, in multiple respects:

- Nunes's attestation that he "arranged the March 21 visit with Michael Ellis," is threadbare and plainly incomplete.  Among other information, Interrogatory 17 also called for him to disclose:  "the date and time of the communication"; "the method of communication (e.g., voice, email, phone, text message, Signal, etc.)"; "whether the communication was retained"; and "if not, when it was deleted or not retained."  Ex. 13 (Defs.' Second Set of Interrogs.) at 7.  Nunes's superficial response fails to include this critical information.

- Nunes's attestation that he consulted with "all relevant staffers" about his itinerary is impossible to reconcile with the fact that his produced itinerary does not reflect ▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  For example, the itinerary does not reveal that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮.  *See* Ex. 14 (D. Nunes Production of March 21 and 22, 2017 Agenda)

at 1.  It cannot be the case that Nunes "consulted with all the relevant staffers" because had

Nunes consulted with ████████████████████████████████████████████

████████████████████████████████████████████████

- Nunes's attestation that he consulted with "all relevant staffers" about his itinerary is

  surprising, given that Jennifer ███████ testified that ████████████████████:

  ████████████████████████████████████████████████████

Ex. 4 at 123:12–123:19.

- Nunes's attestation that he provided a "complete itinerary" is demonstrably false as well.

  During her deposition, ███████ testified that ████████████████████████

  ████████████████████████████████████████████████████

  ████████████████████████████████████████████████████

  ████████████████████████████████████████████████████

  ████████████████████████████████████████████████████

  *Compare* Ex. 14 *with* Ex. 15 (███████ Production of March 21 and 22, 2017 Agenda)

  ██████████████████████████████████████████, *see* Ex. 4

  at 72:17–72:18).  The only reason the Post knows about ███████ significance to this case

  is because ████████████████████████████████████████

  ████████████████████





- ███ testified that ████████████████████████████████

  ████. Ex. 4 at 113:23–114:2. Despite being Nunes's scheduler for more than two

  decades, she could not explain ████████████████████████████████

  ████████████████████. *Id.* at 115:14–117:14.[2]

- In addition, ███ testified that ████████████████████████████

  ████████████. *Id.* at 119:22–119:23. The document has a ████████████

---

[2] It is impossible to determine who prepared ████████████ produced by Nunes, because it
was produced without metadata. *See infra* Section I(E).



███████████, Ex. 15, shortly after discovery commenced in this litigation, and two days before Nunes served his initial discovery responses. But Nunes produced neither the text message nor ████████████████ itinerary. ██████ also testified that ████████████████████████████. *Id.* at 32:7–32:17, 122:4–122:18. None of those text messages were ever produced, and ██████ testified that ████████████████. *Id.* at 123:4–123:5.

### C. Nunes Did Not Identify, with Specificity, the Repositories of Relevant Information, and Has Admitted That He Only Collected Documents from One Custodian.

Nunes also has failed to comply with the Court's Order that he "identify 'every repository ever used by' each individual with relevant knowledge or information on Plaintiff's staff to 'send, receive, or store relevant communications or documents,' along with the 'date range' and 'subject matter' of documents in that repository," and disclose "whether [he] collected documents from that repository." October 25 Order ¶ 2. He has refused to provide nearly all of the information required, and he has made a significant misrepresentation as to the existence of the relevant communications from a key witness: himself.

First and most seriously, given his status as the Plaintiff in this case, Nunes twice attested that "I myself had no such repository." Ex. 1 ¶ 2; Ex. 2 ¶ 2. But the Post's third-party discovery (compelling the disclosure from witnesses who were largely within Nunes's control when the case was filed) has revealed that it is false that Nunes had no relevant communications. For example:



- ████████████ text messages proves that Nunes ████████████████████████████ ████████ while this litigation was ongoing. *See* Ex. 3.

- ████████████ testified that ████████████████████████, *see* Ex. 4 at 122:6–122:9 ████████████████████████████████, and ████████████

████████████████████████████████████, *id.* at 119:12–119:23.  In addition, she

testified that ███████████████████████████████████ *Id.* at 32:7–32:17

████████████████████████████████████████████████████████████

████████████████████████████

- Even apart from these examples, it is inconceivable that Nunes had zero responsive personal communications on any topic at issue, including not only the so-called "midnight run" that led to a personal briefing with the President and multiple press conferences by Nunes, but also broader topics such as Nunes's schedule in March 2017, ethics complaints filed against him in March and April 2017, or his litigation against the Post.

Nunes's attestation that he at no point had repositories used to send, receive, or store relevant communications is false and sanctionable.  *See, e.g.*, *Parsi*, 778 F.3d at 118 (affirming sanctions where responding party mispresented that it did not "possess key documents"); *Lebron v. Powell*, 217 F.R.D. 72, 77 (D.D.C. 2003) (imposing sanctions where responding party obstructed efforts to collect relevant documents and failed to "answer[] . . . discovery responses accurately and honestly").  It is no answer for Nunes to vaguely imply that he failed to preserve the records; the Order still required him to disclose "every repository" he and his staff "ever used" to send, receive, and store relevant communications.  October 25 Order ¶ 2.  That information is necessary precisely so the Post can evaluate what was preserved, and what was not.

Nunes also has failed to do due diligence with regard to the staffers under his control.  In his "supplements," he acknowledges that his staffers had House of Representatives email accounts, but he otherwise does not provide any specific information as to phone numbers or email addresses for any of those staffers, including individuals he has texted regarding this lawsuit.  Nor has he provided any information regarding any computers or hard drives used by his staff to create and

store relevant documents, such as his schedule (███████████) or relevant press statements and drafts of those statements (Jack Langer).  This failure is particularly egregious because Nunes previously represented to the Court that his office's congressional records were under his control, *see* Joint Report L.R. 16.3 Conf. ¶ 16(b), and to the Post that he would preserve relevant materials in connection with his departure from office, *see* Ex. 5 at 1.  Now it appears that much of that relevant evidence may have been lost because Nunes failed to follow through on that representation.  For example, Nunes concedes that he "no longer [has] access to documents that would show my itinerary and activities for every day in March 2017, including any agendas." Ex. 16 (Pl.'s Resps. to Defs.' Fourth Discovery Requests) at 7.

In short, Nunes's response to the Order provides the Post no way of knowing which repositories existed, when they existed, and whether documents they contained were properly collected or retained.

### D.   Nunes Did Not Conduct a Reasonably Diligent Search in Response to the Post's Document Requests.

Nunes's failure to "produce 'all responsive, non-privileged documents and any original metadata resulting from a reasonably diligent search'" of at least eight staffers' "'files' in response to 41 requests for production of documents," October 25 Order ¶ 3, can be demonstrated by the miniscule volume of documents he produced on November 11, 2022:  seven emails from a single custodian, his spokesperson Jack Langer, in response to a single request for production.

Nunes admits that he "did not collect documents" from any staffer, Ex. 1 ¶ 2, except for from Langer, *see* Ex. 2 ¶ 2.[3]  Even at face value, that is ridiculous.  And, the third-party documents

---

[3] Nunes attempts to dismiss his discovery failures by stating that his "lawyer reached out to counsel for staff members who were subpoenaed, and confirmed that all relevant documents relating to the allegations in this action were searched for and produced."  Ex. 2 ¶ 2.  But three of the five subpoenaed staffers were not represented by counsel at all at the time Nunes made that

and testimony obtained by the Post prove beyond any doubt that Nunes failed to collect and produce relevant documents from other witnesses.  To take a few examples only, Nunes failed to produce:  (1) a single one of his own communications, even though he is the Plaintiff in this case; (2) ███████████████████████████████████████████████████████████████

███████████████████████████████████, *see* Ex. 4 at 31:9–32:17; (3) a February 5, 2021 text exchange between █████ and Nunes ████████████████████████████████

█████████ Ex. 3 at 1; (4) emails between members of his Congressional staff and the White House confirming his March 22, 2017 visit, *see* Ex. 17 (March 22, 2017 Email from █████ to C. Simms); Ex. 18 (March 22, 2017 Email from B. Scully to █████ and █████r), Ex. 19 (March 22, 2017 Email from the White House to █████); and (5) drafts of his campaign website biography, which discusses his litigation against the Post, *see, e.g.*, Ex. 12 at 25.



In addition, Nunes similarly has failed to produce relevant information in response to the Post's discovery requests that postdated the prior motion to compel, broadly insisting that he has "no documents."[4]

Given Nunes's demonstrated failure to preserve, collect and produce relevant documents, Nunes cannot credibly say that the handful of documents from Jack Langer that he produced in

---

representation.  These staffers include █████████, ███████████, and ███████████.
Nunes's counsel was later retained to represent █████ at her deposition.

[4] For example, Nunes has stated that he has "no documents" in response to requests for documents sufficient to show all means by which he communicated with his [staff], or former President Trump or employees of the Executive Office of the President between March 4, 2017 and April 6, 2017 (RFP 42); documents sufficient to show his phone calls on March 21, 2017 and March 22, 2017 (RFP 43); documents related to his appointments, calendar, or schedule for March 20, 2017 through March 22, 2017 (RFP 49); and phone bills or statements reflecting calls or text messages during the month of March 2017 and during the month of November 2020 (RFP 53).  *See* Ex. 20 (Pl.'s Resps. to Defs.' Third Discovery Requests); Ex. 16; Ex. 21 (Pl.'s Resps. to Defs.' Fifth Discovery Requests).  Nunes did not make specific objections in response to any of these requests; he simply said he had no documents.

response to the Court's Order constitutes the universe of outstanding discovery material.

Nunes appears to take the position that his discovery obligations are satisfied because any undisclosed documents have now been "produced by former staff members subpoenaed by the Defendants." Ex. 2 ¶ 3. However, the subpoenas issued to Nunes's staff were narrower than the Post's discovery requests to the Plaintiff and cannot possibly satisfy his own discovery obligations. And it is his obligation, as the party in this case, to produce information within his custody and control. *McNair v. District of Columbia*, 325 F.R.D. 20, 21 (D.D.C. 2018) ("the fact the requesting party can obtain records from another source does not relieve a party from producing those records in its possession, custody, or control" and imposing evidentiary sanctions); *see P.R. Med. Emergency Grp., Inc. v. Iglesia Episcopal Puertorriqueña, Inc.*, 318 F.R.D. 224, 230 (D.P.R. 2016) (production of documents by third parties "does not excuse" party of discovery obligations).

Third-party discovery demonstrates why Nunes must conduct an independent search for documents within his control. For example, Nunes takes the position that ████████ has "searched for and produced" "all relevant documents relating to the allegations in this action." Ex. 2 ¶ 3. But as ██████ testified at her deposition, ████████████████████ ████████, Ex. 4 at 122:25–123:11, 142:10–144:3, ██████████████████████████ ████████████████████████████████████████████ ██████, *id.* at 32:17–34:12, 120:13–121:5. ███████████████████████████, ██████ who responded to the Post's subpoena without counsel, testified that ████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████. *Id.* at 124:10–126:20, 130:20–133:9. In light of this testimony,

Nunes's suggestion that her subpoena response encompassed all relevant records in the possession, custody, or control of Nunes or his former staffers cannot be correct.

### E.   Nunes Continues To Fail To Provide Metadata.

Nunes also flouts the Court's Order that he produce "any original metadata" with his documents.  October 25 Order ¶ 3.  He has done nothing in response to this portion of the Order.

To take one particularly salient example, Nunes has failed to produce metadata in connection with the only version of his March 21 and 22, 2017 itinerary that he produced, which ████████████████████.  *See* Ex. 14.  This makes it impossible for the Post to determine ██████ ████████████████████████████████████████ ████████████████████████████████████████ ██████████████████████████████. *See* Ex. 4 at 115:14–117:14.

## II.   Sanctions Are Warranted.

As demonstrated, Nunes has violated the Court's Order in a multitude of ways. Accordingly, the Court should impose sanctions pursuant to Rule 37(b)(2)(A) for his failure "to obey an order to provide or permit discovery,' including an order granting a motion to compel." *Parsi*, 778 F.3d at 128 (citation omitted).  This Court has "broad discretion" in fashioning the proper remedy, with the principal requirement being that the sanction be "just."  *Id*. at 125, 129.

The D.C. Circuit has held that stiff sanctions are warranted where, as here, a plaintiff "defer[s] producing relevant documents, withh[o]ld[s] them, or denie[s] their existence altogether."  *Id.* at 118, 120 (affirming fee award in connection with sanctions including multiple "forensic imaging[s]" and re-depositions of plaintiffs).  Here, the record "establishes that plaintiff has violated the most fundamental responsibility imposed upon a party engaged in discovery: to provide honest, truthful answers in the first place and to supplement or correct a previous disclosure when a party learns that its earlier disclosure was incomplete or incorrect."  *Lebron*,

217 F.R.D. at 76.

For these reasons, the Court should order the following relief, pursuant to Rule 37(b) and its inherent authority:

**A.      The Court Should Order Nunes To Comply with the October 25 Order Within Two Weeks.**

The Court should deem Nunes's Supplemental Disclosures to be inadequate and renew its Order, with a compliance deadline of two weeks.  A failure to comply with two consecutive orders compelling disclosure would be grounds for dismissal in this Circuit.  *See, e.g.*, *Young v. Off. of U.S. Senate Sergeant at Arms*, 217 F.R.D. 61, 66 (D.D.C. 2003) (dismissing case as sanction where plaintiff "abused the litigation process by repeatedly refusing to comply with discovery requests despite two court orders mandating compliance"); *Keys v. Wash. Metro. Area Transit Auth.*, 272 F.R.D. 243, 246 (D.D.C. 2011) ("deterrence[] justifies dismissals when there is some indication that the client or attorney consciously fails to comply with a court order cognizant of the drastic ramifications") (citation omitted), *aff'd*, 523 F. App'x 727 (D.C. Cir. 2013).

In addition, Nunes's search for responsive documents should include all document requests postdating the prior order to which he has not objected, which includes the Post's Requests for Production of Documents Nos. 42 through 59.

**B.      The Court Should Order Nunes To Provide a Sworn Statement Certifying His Compliance and Detailing the Steps Taken To Comply with Each Part of the Order.**

The Court should order Nunes to certify his compliance with the Order, and detail the steps he has taken to comply.  Such a certification would be a just and effective escalation in response to Nunes's continued intransigence.  *See, e.g.*, *McNearney v. Wash. Dep't of Corr.*, 2012 WL 3155099, at *7 (W.D. Wash. Aug. 2, 2012) (granting motion to compel and ordering responding party to "certify that all employees with potentially responsive documents searched all locations

20

where such documents are typically stored in paper or electronic format").  That is because "at this point, a statement made under oath would seem to have a greater potential to move the case along rather than a mere representation by counsel." *Ruiz-Bueno v. Scott*, 2013 WL 6055402, at *4 (S.D. Ohio Nov. 15, 2013).

Another court issued a certification sanction in a defamation matter involving Nunes's counsel, where it was shown that his client "failed to produce call and text records," failed to adequately respond to document requests, and failed to provide complete and accurate answers to interrogatories. *See Butowsky v. Folkenflik*, 2020 U.S. Dist. LEXIS 267938, at *16–21, *20 n.10 (E.D. Tex. Aug. 25, 2020).  In response, the court ordered that "Plaintiff must certify to the Court" his compliance with the court's prior production order, "provide declarations to the Court within thirty (30) days from the date of entry of this Order describing the search they have conducted for all documents and communications responsive to [defendants'] requests for production and certify that they have produced all responsive, non-privileged documents and communications within Plaintiff's possession, custody, or control to Defendants," and provide a "verified statement that he has fully and completely answered" Defendants' interrogatories." *Id.* at *22–*25.  The court also required the plaintiff to pay fees and costs. *Id.* at *58.  Similar oversight is appropriate here.

### C.   The Court Should Order a Supplemental Deposition, or, if the Court Prefers, an Evidentiary Hearing, To Examine Nunes Regarding His Compliance.

The Court also should require Nunes to testify about his discovery compliance at supplemental deposition, so that the Post's counsel have an opportunity to examine his compliance under oath.  In the alternative and if it prefers, the Court should schedule an evidentiary hearing for the same purpose.

Where, as here, a "party's efforts to comply with proper discovery requests are reasonably drawn into question," courts often require supplemental testimony to ensure compliance with court

orders and discovery obligations. *Crocs, Inc. v. Effervescent, Inc.*, 2017 WL 1325344, at *8 (D. Colo. Jan. 3, 2017) (ordering deposition on the "search for, preservation of and production of electronic and hard copy documents information and things potentially relevant to this Action"); *see Net-Com Servs., Inc. v. Eupen Cable USA, Inc*., 2012 WL 12887396, at *6 (C.D. Cal. Nov. 14, 2012) (ordering "four two-hour depositions, for the purpose of investigating discovery issues," not to "count against the seven-hour limit per witness otherwise provided for in Rule 30(d)(1)"); *Nekich v. Wis. Cent. Ltd*., 2017 WL 11454634, at *5 (D. Minn. Sept. 12, 2017) (ordering two-hour supplemental deposition on "document retention policies" and the content of deleted emails).

In this Circuit, courts have held evidentiary hearings for this purpose. *See, e.g.*, *Young*, 217 F.R.D. at 64 (holding evidentiary hearing to probe "evidence of misconduct by the plaintiff"); *Peskoff v. Faber*, 244 F.R.D. 54, 56 (D.D.C. 2007) (ordering evidentiary hearing regarding search procedure).

The Court should order a supplemental deposition, or, if it prefers, an evidentiary hearing, for Nunes to testify regarding his compliance with the Court's orders and his discovery obligations.

### D.    The Court Should Require Nunes To Pay Costs in Connection with This Motion.

The Court also should require Nunes to reimburse the Post's attorneys' fees and costs associated with the filing of this Motion.  Such an award is mandatory unless Nunes can demonstrate that it would be unjust, which he cannot.

Under Rule 37(b)(2)(C), "'the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure' to obey a discovery order, unless the party's disobedience was substantially justified or the circumstances would otherwise render an expense award unjust." *Parsi*, 778 F.3d at 128 (quoting Fed. R. Civ. P. 37(b)(2)(C)).  A party is substantially justified in disobeying a production order

only "if there is a genuine dispute, or if reasonable people could differ as to the appropriateness of the contested action." *Id.* at 127.

Courts in this Circuit routinely grant attorneys' fees in connection with sanctions motions where, like here, the non-moving party has "refus[ed] to respond to . . . discovery request[s]." *Micula v. Gov't of Romania*, 2020 WL 6822695, at *6 (D.D.C. Nov. 20, 2020), *aff'd*, 2022 WL 2281645 (D.C. Cir. June 24, 2022); *see also Martinez v. Asian 328, LLC*, 2016 WL 1698261, at *5 (D.D.C. Apr. 27, 2016) (awarding fees pursuant to Rule 37(b)(2)(C) where party failed to respond to discovery requests by court-mandated discovery deadlines); *Walls v. Paulson*, 250 F.R.D. 48, 53 (D.D.C. 2008) (awarding fees for sanctions motion where "plaintiff demonstrate[d] a penchant for lengthy delays, inadequate responses and a complete disregard for deadlines.").

For more than a year, Nunes's discovery responses in this case have been characterized by misrepresentations, evasions, and omissions. There is no conceivable justification for such defiance of the Federal Rules and the Court's authority. Accordingly, the Post should be awarded fees in conjunction with any other sanction that the Court deems just.

## <u>CONCLUSION</u>

For the reasons above, the Post respectfully requests that the Court grant its motion.

## **STATEMENT PURSUANT TO LCvR 7(m)**

Defendants' counsel discussed the issues raised in this Motion with Plaintiff's counsel in a good-faith effort to determine whether there is any opposition to the relief sought and to narrow the areas of disagreement. Plaintiff opposes the Motion.

Dated: December 13, 2022                    Respectfully Submitted,


                                            WILLIAMS & CONNOLLY LLP

                                            By: /s/ *Thomas G. Hentoff*

                                                Kevin T. Baine (D.C. Bar No. 238600)
                                                Thomas G. Hentoff (D.C. Bar No. 438394)
                                                Nicholas G. Gamse (D.C. Bar No. 1018297)
                                                Sean M. Douglass (D.C. Bar No. 1033069)
                                                680 Maine Avenue, SW
                                                Washington, DC 20024
                                                Telephone: (202) 434-5000
                                                Facsimile: (202) 434-5029

                                                *Counsel for Defendants*