## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DEVIN G. NUNES,

          Plaintiff,

    vs.

WP COMPANY, LLC, et al,

          Defendant.
_____/

Civil Action
No. 21-506

Washington, DC
April 5, 2023

2:04 p.m.


TRANSCRIPT OF TELEPHONE STATUS CONFERENCE
**BEFORE THE HONORABLE CARL J. NICHOLS**
UNITED STATES DISTRICT JUDGE


APPEARANCES:

**For the Plaintiff:**    **Steven S. Biss**
                       LAW OFFICE OF STEVEN S. BISS
                       300 West Main Street, Suite 102
                       Charlottesville, VA 22903
                       804-501-8272


**For the Defendant:**    **Nicholas G. Gamse**
                       **Sean Douglass**
                       **Alexandra Gutierrez**
                       **Thomas Goodman Hentoff**
                       WILLIAMS & CONNOLLY LLP
                       680 Maine Avenue SW
                       Washington, DC 20024
                       202-434-5000


**Reported By:**          **LORRAINE T. HERMAN, RPR, CRC**
                       Official Court Reporter
                       U.S. District & Bankruptcy Courts
                       333 Constitution Avenue NW
                       Room 6720
                       Washington, DC 20001


*** Proceedings recorded by stenotype shorthand.
*** Transcript produced by computer-aided transcription.

# P R O C E E D I N G S

**DEPUTY CLERK:**  Your Honor, this is Civil Action 21-506, *Devin G. Nunes versus WP Company, LLC, et al.*

Will parties on the audio conference line, please identify yourselves for the record.  We will start with plantiff's counsel this afternoon.

**MR. BISS:**  Good afternoon, Your Honor.  This is Steve Biss.  I represent the plaintiff.

**THE COURT:**  Good afternoon, Mr. Biss.

**MR. GAMSE:**  Good afternoon, Your Honor.  This is Nick Gamse, from Williams & Connolly, on behalf of the defendants.  And with me today from Williams & Connolly are Tom Hentoff, Sean Douglass and Alexandra Gutierrez.

**THE COURT:**  Good afternoon.

Is anyone else on for either of the parties?

**UNIDENTIFIED SPEAKER:**  No, sir.

**THE COURT:**  Obviously I scheduled this status conference in response to the notice from *The Post* asking for, what is under my standing order at least, a pre-motion conference.

I've read the parties' submissions on the questions presented by *The Post.*  I've read, of course, back over my old order and I've read, perhaps most importantly, plaintiff's supplemental answers and responses to defendants' discovery requests and compliance with the

1       Court's 2/1/2023 order, which is dated February 22nd, 2023.

2              And for my purposes, at least, I'd like to use

3       that document, the supplemental answers and responses, to

4       walk through what *The Post* is asking for and just to

5       understand the parties' respective positions.

6              Mr. Gamse, will you be taking the lead for *The*

7       *Post*?

8              **MR. GAMSE:**  Yes, Your Honor.  I understand you

9       have the various arguments you've presented here, but I'd

10      like to take them up in connection with plaintiff's

11      supplemental answers.  And just to understand, from my

12      perspective at least, where there's an issue and where there

13      isn't.  So just proceeding through that document, and it's

14      helpfully organized, actually, by paragraph of my operative

15      order from February.  So beginning on Page 2, there's a box

16      that contains my order in Paragraph 1 and then the answer

17      from the plaintiff.

18             Am I right in reading your submission to not raise

19      a question, at least at this time, as to the information

20      that has been provided by the plaintiff in response to that

21      paragraph?

22             **MR. GAMSE:**  We are not asking Your Honor to order

23      further compliance with regard to that paragraph.  However,

24      we are asking for an opportunity to request sanctions in

25      connection with the failure to previously provide that

1    information prior to the motion to enforce.

2         **THE COURT:**  Yes.

3         I want to table the sanctions question.  I

4    appreciate that clarification.  Thank you.  I suppose that

5    answer can apply across the board here.

6         What I really want to get at first is where you

7    think the information that's been provided by the plaintiff

8    is deficient; and, at least at present, I hear your answer

9    to be, you are not seeking further compliance with respect

10   to the information that's been provided in response to my

11   Paragraph 1, but you are preserving, of course, your request

12   that I impose sanctions for *The Post* having to have had

13   incurred fees and the like in pursuing that compliance.

14   Correct?

15        **MR. GAMSE:**  That's correct.

16        **THE COURT:**  Okay.

17        Is your answer the same as to, beginning on Page

18   11, the response to Paragraph 2 of my order?

19        **MR. GAMSE:**  That is correct, Your Honor.

20        I would just want to clarify one additional point,

21   which is that one of our concerns is with regard to the

22   efforts to comply; and that sweeps across all of the prior

23   disclosures, of course.  So there's just sort of a concern

24   with the method here.  But setting that aside, we do not

25   have a substantive concern with what was disclosed in

1    Paragraph 2.

2              **THE COURT:**  And I understand that point as well.

3              So now turning to Paragraph 3.  Am I right that

4    you think that there is at least one individual who should

5    have been identified in response to Paragraph 3 who is not?

6              **MR. GAMSE:**  Yes, Your Honor.

7              And, you know, we believe that individual was

8    identified in connection with plaintiff's prior -- the prior

9    discovery, which we have received from the campaign.  And so

10   you're correct that this is an instance in which we believe

11   that the disclosure was deficient, but there are other

12   sections of the response that we think are more deserving of

13   the Court's attention.  So I just want to be focused with

14   that.

15             **THE COURT:**  Okay.

16             And then what about Paragraph 4?

17             **MR. GAMSE:**  With regard to Paragraph 4 --

18             **THE COURT:**  Yeah.

19             **MR. GAMSE:**   -- we believe that the disclosure is

20   sort of facially reasonable.  But we believe that there is

21   potentially a problem, again, with the reasonableness of the

22   search.  So it's hard to know what we don't know, but we

23   accept the disclosure, sort of, on its terms.

24             **THE COURT:**  Okay.  Understood.

25             So now I suppose we get to areas where there may

1    be more of a problem from *The Post's* perspective with the

2    response itself than those others.

3              And, again, I recognize that you have potential

4    concerns, at least, about the effort that went into

5    preparing the spatially, potentially reasonable responses.

6    And you, of course, are preserving your arguments with

7    respect to an award of fees, and the like, for purposes of

8    having to pursue this.

9              But it seems to me that when we get to Paragraph

10   5, that is where, at least potentially, *The Post* has

11   concerns about the information that has been provided.

12   Correct?

13             **MR. GAMSE:**  That is correct.

14             **THE COURT:**  Okay.

15             So can you articulate for me where you think the

16   major deficiencies lie with respect to 5?

17             **MR. GAMSE:**  Yes.

18             So let's begin with the plaintiff and his own

19   disclosures.  Plaintiff here has disclosed phone numbers,

20   but has not disclosed any information regarding the

21   repositories where his text messages and other similar

22   records of his phone communications would have been housed.

23   So, of course, the phone number is a component of that

24   information.  But there is no disclosure here regarding the

25   actual devices that would have held those messages.

1          We don't know whether there were multiple devices.

2     Whether there is a device in a file cabinet somewhere.  We

3     don't have any sort of disclosure along those lines.  And we

4     would have expected that that would have been included.

5          Similarly, while we have simply an office phone

6     number here, I believe it's the central office number for

7     Mr. Nunes's congressional chambers, but we don't have any

8     further information regarding that or other numbers that

9     could have been used from the office.

10          Looking at the plaintiff, to begin, it appears to

11     be far deficient from what we understood the scope of the

12     order of the call for, which was disclosure as to any

13     repository which would have held information that was used

14     to communicate during the relevant time period.

15          **THE COURT:**  Yes.  Right.

16          And to be clear, when I turn to plaintiff's

17     counsel on this, my order did not include any limitation, as

18     to Paragraph 5, about communications relevant to this suit.

19     It was a requirement to identify repositories, any

20     repository, every repository used by a particular individual

21     to send, receive and store communications and/or documents.

22     Full stop.  No limitations as to relevant communications.

23          Okay.  So that's the plaintiff.  What about as to

24     the other individuals listed here?

25          **MR. GAMSE:**  So we have a concern that there is no

1   information regarding any devices used by any of the other

2   individuals as well.  So that's a concern that sweeps across

3   all of them.  We did have testimony from Jennifer Morrow,

4   for example, during her deposition, where she testified that

5   she had a House-issued laptop, which she then recycled after

6   the plaintiff had resigned from Congress.

7            That is the type of information that we would have

8   expected to have disclosed here.  Where were the actual

9   devices that were used to store the relevant communications

10  and documents during this timeframe?

11           And, again, there is no disclosure whatsoever

12  regarding any devices that were used.  You know, the email

13  addresses are a component of what we would have expected to

14  see.  But the actual repositories themselves, in terms of

15  devices, are not disclosed here.  Similarly, there is

16  nothing with regard to cell phones or anything along those

17  lines.

18           **THE COURT:**  Okay.  Thank you.

19           With that, are those general points equally

20  applicable, as far as you know, to everyone listed here who

21  is not the plaintiff; and are there any other generally

22  applicable points that you would raise as to this repository

23  question?

24           **MR. GAMSE:**  Yes.

25           The last general point is simply that we

1    understand from Ms. Morrow's testimony that there were

2    central repositories that were used in the office.  And I

3    can give you a few examples of that, which we discussed in

4    the submission.  But they include, for example, a central

5    repository that was used to house expenses that were

6    submitted for reimbursement.

7              That's at issue because we understand that there

8    was some expenses that may have been submitted in connection

9    with Mr. Nunes's activities during this time period.  And we

10   specifically requested those as part of our document

11   requests.  So that would be one example of a shared

12   repository, not necessarily held by any particular custodian

13   but rather across the entire office.

14             Similarly, we understand that there were shared

15   network drives that were used to share documents as well.

16   And we would have expected that those would have also been

17   disclosed here.

18             **THE COURT:**  Okay.  I got it.

19             So now let's proceed to Paragraph 6, which is

20   obviously whatever the relevant set of repositories is,

21   produce responsive documents and then, of course, produce

22   metadata, if any, for all documents including previously

23   produced ones.

24             So let's start just with the documents themselves

25   and not the metadata.  What are the general points you would

1    like to make with respect to your submission and what you

2    think is the insufficiency of the production to date?

3                **MR. GAMSE:**   Thank you, Your Honor.

4                Well, to begin, we received zero additional

5    documents in response to this Court order.  And if -- it

6    appears that it may be the case that plaintiff simply did

7    not preserve a significant amount of information.  We've

8    discussed that at the last hearing, and obviously have

9    conveyed that we intend to eventually file a motion in

10   connection with that failure.  But that is a concern.

11              I think what I'd like to focus on in particular is

12   setting aside the fact that plaintiff has indicated he

13   hasn't retained his own particular personal messages, we

14   would have expected to receive copies of those.  He has also

15   indicated that there are at least places where he has not

16   searched for documents.

17              So I think, perhaps, the best example of that is

18   in plaintiff's disclosure he states that he did not look for

19   documents held by the House.  He says, plaintiff made no

20   efforts to access his congressional files because no records

21   exist.  In connection, for example, with his -- the House

22   ethics investigation to his statements on the two days at

23   issue, when there was a concern among the House Ethics

24   Committee regarding whether there had been an improper

25   disclosure of classified information.

1          We find it highly implausible there is no record

2    whatsoever or that there was no record of that highly --

3    high-profile ethics investigation.  So that is an example of

4    the kinds of documents that we would have expected to see.

5          Another example of the documents that we would

6    have expected to see is some sort of internal communication

7    as between Mr. Nunes and his staff regarding any of the

8    issues in the case.  We have not received any internal

9    communications from them.  That includes not just during the

10   2017 time period which, of course, is some time ago.  But

11   also after the publication of the article, even after the

12   filing of the lawsuit, there's just been nothing.

13         So, again, those are all instances where we would

14   have expected to receive disclosures but acknowledge that an

15   explanation may be that they just were not preserved at all.

16         **THE COURT:**  Yes.  Understood.  Thank you for that.

17         I know one of the things you've asked for is a

18   deposition of Mr. Nunes.  I suppose I should know this with

19   perhaps more specificity than I do, but where are the

20   parties presently in taking all or essentially all of the

21   depositions that would otherwise occur here?

22         **MR. GAMSE:**  I believe the parties are

23   contemplating approximately six more depositions.  At the

24   time that the Court ordered -- suspended the fact discovery

25   deadline in December, the parties had a plan at that time to

 1   complete six outstanding depositions and had already taken,

 2   you know, a handful as well.  So I anticipate that the

 3   parties will, you know, resume those depositions once the

 4   Court instructs us to do so.  And so I anticipate that

 5   subject to any additional disclosures that we may receive as

 6   part of this process, that there would be six more to go.

 7              **THE COURT:**  And has Mr. Nunes been deposed?

 8              **MR. GAMSE:**  No, Your Honor, he has not.

 9              **THE COURT:**  Okay.

10         I recognize that you would like me to take up the

11   sanctions question now and one of the remedies you would

12   like is a deposition of Mr. Nunes.  So I understand all of

13   that.

14         What I'd like to hear now is, I'd like to hear

15   from plaintiff's counsel, Mr. Biss, on the questions of

16   whether and to what extent your answers to Paragraphs 5 and

17   6 of my order are adequate.  So why don't we start with 5?

18              **MR. BISS:**  Yes, sir.  Thank you, Your Honor.

19         Judge, I made some notes here, as I was listening

20   to my colleague address his concerns with Your Honor.  And I

21   want to start with Mr. Nunes, the plaintiff in the case.  We

22   identified all of the phone numbers.  We identified the only

23   email address that he used.  We did not, at a certain level

24   of specificity, identify the carrier or maker of his phone.

25   And I don't know that that was the intent of Your Honor, to

1    get into the nuances of what the device was.  I mean, you

2    wanted what the repository was that he used to communicate

3    with people to send and receive documents and that's what we

4    did for the plaintiff and for everybody else, including

5    Jennifer Morrow, Caitlin Shannon and all the others who are

6    identified in the response there.

7              We also pointed out in your response to *The Post's*

8    submission, Rule 11 submission, we pointed out that there is

9    no central repository that the plaintiff is aware of.  There

10   is no network drives that these people are using to

11   communicate with one another.

12             All the documents there were ever preserved and

13   stored and communicated using any of the House email

14   addresses that were identified, all of which were

15   identified, all of those documents have been produced.

16             Counsel talked about preservation issues a number

17   of times and our response simply is, all the documents were

18   preserved, either through direct instructions from the

19   plaintiff to Jennifer Morrow and/or Jack Langer.  All the

20   documents were produced.  And I think as I said at the last

21   hearing, they have a massive number of emails from

22   Mr. Langer that were preserved.  They have all of the

23   documents that are relevant to this case that were preserved

24   by Jennifer Morrow.  All of them.  Every single document

25   they have a copy of.  The agenda and any other documents

1      that Jennifer Morrow produced.

2              The one document, Judge, that we didn't preserve

3      but Caitlin Shannon or Caitlin Canter preserved was an email

4      that was sent after this lawsuit was filed on February 5,

5      2021.  We didn't preserve that because we didn't think that

6      it had any bearing whatsoever on the issues of the case; and

7      that may have been a mistake on the part of the plaintiff.

8      However, the email itself exists.

9              In looking at my notes here, I think that --

10             **THE COURT:**  Mr. Biss, let me just pause you for a

11     second, because I think we need to be a little more precise

12     here.

13             Paragraph 5 of my order required you to identify

14     for each of the individuals listed in Paragraph 2, 3 or 4 --

15     and I'm just going to assume that the relevant individuals

16     are the ones listed under your response to Paragraph 5; so

17     it's those seven people.  Every repository used by those

18     individuals to send, receive and store communications and/or

19     documents.

20             So are you representing to me that none of those

21     seven peopled stored any document on a laptop, a file or a

22     shared drive?  And the only place they stored documents --

23     not documents relevant to this lawsuit.  This is just a

24     question about repositories -- the only place they stored

25     documents at all were in their email files or their text

1    messages?  And that's the implication of listing -- the

2    implication of listing the phone numbers is documents would

3    have been texted.

4         Because every once in a while I will store a

5    document on my phone that I have not texted someone.  And I

6    would consider my phone a repository.  But putting that to

7    the side, I save documents on my hard drive at work.  I save

8    documents to a shared drive at work.  And I save documents

9    to hard copy files at work.

10        Are you representing that there are no such

11   circumstances with respect to any of the seven people listed

12   here?

13        **MR. BISS:**  With regard to the documents at issue

14   in this case, I am --

15        **THE COURT:**  Whoa.  Whoa.  My order is not so

16   limited.

17        **MR. BISS:**  Judge, may I just respond to that?

18        So Devin Nunes was in Congress for 21 years and at

19   some point in time, Jennifer Morrow or any of the others

20   that are listed there -- I'll use here as an example --

21   might have stored a schedule from 2005 on a computer.  I

22   don't know that to be true but maybe that did happen.  And

23   so --

24        **THE COURT:**  Here's the thing, I don't know why you

25   raised 2005.  My order doesn't require the identification of

1     a repository from 2005.  My order required the

2     identification of every repository used by the individual

3     from 2017 to the present, to store documents,

4     communications.  Full stop.  No limitation on subject

5     matter.

6             So it didn't go back to 2005, but it wasn't

7     limited to documents relevant to this suit.

8             **MR. BISS:**  I understand, Your Honor.

9             I kind of used a pragmatic view of the universe of

10    documents that might be applicable to this case.  And the

11    other universe is documents that would have no bearing

12    whatsoever, repositories that would have no bearing

13    whatsoever on this suit.

14            For Ms. Morrow, for instance, I confirmed that

15    there were no documents, whatsoever, that she at any point

16    in time stored on a computer, of a personal nature, or a

17    work nature.  I went to -- I asked her for her credentials

18    to search her personal computer and personal Yahoo!

19    accounts.  She gave those to me.  I searched them.  There

20    are no documents whatsoever, using any of the numerous

21    search terms that I used, which I also identified to counsel

22    for *The Post*.

23            I mean, we did as exhaustive a search as we could

24    possibly do to identify the repositories; and that's what we

25    did, in response to number 5.

1          I spent a lot of time with the people who are

2     identified there, to make sure that there were no other

3     repositories that might, theoretically -- and that's really

4     what we are dealing with -- theoretically house a document.

5     Because all of the sources that I talked to all confirmed

6     there are no documents.  We produced everything.  And there

7     are no documents.

8          And I spoke with each and every one of them.  And

9     my client confirmed with several that I didn't speak with

10    that there are no other repositories.  I mean, we really --

11    we went through each of the items in your order, and we --

12    I'll say I meticulously went through each and every one of

13    the individuals to confirm that there are no other

14    repositories.  Again, I also confirmed there are no other

15    documents.

16         With respect to number 5, I confirmed there are no

17    other repositories in each and every one of them.  And

18    there's nothing more -- I don't think there is anything more

19    I could have done to answer -- or that the plaintiff could

20    have done, to answer number 5.

21         **THE COURT:**  Well, you imposed a limitation.  The

22    limitation is relevant to 6 possibly -- not even possibly.

23    The limitation you imposed is definitely relevant to 6.  But

24    it was not part of my language in Paragraph 5.  But I

25    understand the situation.

1          This is where I am at this point, quite

2    frustrating to me, lingering dispute.  I am going to order,

3    and I'm going to do in a written order.  I'm going to order

4    plaintiff to identify in response to Paragraph 5, the

5    specific information that I have required before to be

6    produced, which is every repository used by any of the seven

7    people identified in response to number 5 already --

8    plaintiff, Nelson, Morrow, Cantor, Langer, Plank,

9    Henderson -- every repository used by that person between

10   2017 and the present, to store documents, communications,

11   send or receive them.  Full stop.  Without limitation to

12   whether those repositories are likely or not to contain

13   documents responsive or relevant to this lawsuit.

14          That is what I had expected was going to be

15   produced, because I think that in light of where we are, *The*

16   *Post* was entitled to know that.  So I am going to require

17   that.  And that is going to require the identification of

18   repositories that may actually not have -- for the reasons

19   you articulated, Mr. Biss -- responsive documents.

20          But I think *The Post* is entitled to know what

21   those repositories are, to the extent it wishes to pursue

22   efforts to decide whether it is willing to live with your

23   representations about whether there are, in fact, responsive

24   materials on those additional repositories.  You have to do

25   that with respect to Paragraph 5.

1          With respect to everything else, however, it seems

2     to me that we are past the point of requiring additional

3     document production efforts.  *The Post* is free -- and I will

4     treat this conference as my approval for it to do so, for

5     *The Post* to move now or at a time it feels appropriate for

6     whatever relief it believes appropriate for spoliation, in

7     light of the possibility that documents weren't preserved.

8     And I'm not concluding that they weren't, but obviously that

9     is in part *The Post's view*.  *The Post* is free to seek that

10    relief now or it can, of course, do so after the conclusion

11    of discovery.

12          With respect to *The Post's* request that I take up

13    sanctions for its effort to get to where we are now, I am

14    going to continue to defer that question.  Because I think I

15    should resolve it in connection with any spoliation motion

16    that may be filed.  Because I assume that *The Post* will seek

17    sanctions if it has to file that motion and is prevailed on

18    it.  And it seems to me these are all possibly related, and

19    I will just take them all up together, in the event there is

20    a spoliation motion.

21          Finally, with respect to the request that *The Post*

22    get a deposition of Mr. Nunes, I really don't see the need;

23    to, in effect, bifurcate the Nunes deposition at this point.

24    As we discussed earlier, Nunes has not been disposed yet.

25    He will be deposed.  *The Post* can ask him questions about

whether and to what extent his efforts to preserve or locate

or produce records were adequate, as its asked me to do now

to permit him to be deposed.  But I would like that to be,

essentially, part of his "merits deposition," with one

significant caveat.  And that is that I will remain open to

the proposition that if that portion of the deposition is

long and substantial, that I will permit the deposition to

go beyond the time otherwise permitted by the civil rules to

allow *The Post* to, you know, have a portion of a second day,

if it makes a showing that that is warranted to allow it to

fully pursue both document production issues and merits

issues.  But I don't think it's warranted here to do a

document production and the like deposition first and a

merits deposition later.

        And the corollary to that is, I'd like to get the

case going again.  I recognize that there have been

significant document disputes here; and that in a number of

ways it is more efficient to resolve those.  But based on

the representations that I have heard repeatedly now from

the plaintiff's counsel, I don't think that more -- that

there's more to be done in terms of forcing additional acts

to locate and produce records other than identifying a

repository as I've indicated.

        But if *The Post* would like to pursue the

spoliation question, it is, of course, free to do so.  And,

1     again, as I already said, it can do so now or it can wait

2     until it's taken additional depositions to do so.

3              So the way I envision this is discovery is

4     reopened.  The plaintiff shall -- I'll just set a deadline

5     today -- shall by April 14th supplement its response to my

6     Paragraph 5 to identify all repositories, as I have said

7     orally now and as my order specifically says, all

8     repositories used by the people identified in its answer to

9     send, receive and store communications from 2017 to present.

10    Full stop.  Without regard to the substance of what was in

11    those repositories.  That will have to happen by next

12    Friday.  Discovery is reopened.  Mr. Nunes can be disposed

13    when *The Post* wants to depose him.  He can be asked

14    questions, as I've said, about document production and

15    location questions.  And if *The Post* makes an adequate

16    showing that the normal time period for that deposition

17    should be extended because it had to spend a lot of time on

18    that issue and less on the merits, I will certainly permit

19    that request.  And I might be very open to it, depending on

20    the showing.

21              And then, I know I'm repeating myself, I will

22    continue to essentially hold in abeyance the sanctions

23    question, because I would like to address all document

24    production sanction issues together.  And if we are going to

25    be litigating spoliation question, it seems to me that would

1    be part of any possible sanctions determination I make.

2              So with that, from *The Post's* perspective, do you

3    have any questions or clarifications you would like?

4         **MR. GAMSE:**  Yes, Your Honor.

5              First of all, thank you very much for that ruling.

6    I think our only open question would be with regard to the

7    new end of the fact discovery period.  And we're prepared to

8    discuss that on this call.  But in the interest of

9    efficiency and respecting the Court's time, perhaps what the

10   parties might do is confer and submit a new proposed

11   schedule to the Court, if that would be your preference.

12        **THE COURT:**  That would be my preference.  I could

13   do it now, but I think in the first instance it is more

14   efficient, and the like, for the parties to have that

15   conversation.  You know better what people's schedules are

16   and the like.  And I would be very surprised if I would

17   reject a joint proposal to that extent.

18             Okay?

19        **MR. GAMSE:**  That sounds good to *The Post.*

20        **THE COURT:**  Okay.  Thank you.

21             Mr. Biss?

22        **MR. BISS:**  Judge, I agree with Mr. Gamse in this

23   instance.  I disagree with him on everything else.  I agree

24   with him that we could probably work out a schedule for the

25   completion of discovery.

1          The only thing I was also thinking about, I was

2     scrolling through my calendar.  We have a summary judgment

3     deadline coming up at some point.  I thought it was coming

4     up quickly, but there may be some other deadlines that the

5     parties may need to submit to Your Honor as well in terms

6     of --

7          **THE COURT:**  Why don't we do this.  Why don't the

8     parties meet and confer regarding the discovery deadlines,

9     whether it's going to be fact and then expert or altogether,

10    but whatever they'd like to propose to me by way of a

11    schedule for completion of discovery.  And, as warranted

12    thereafter, a summary judgment schedule.  And if the parties

13    can reach agreement on all or most of that, I am happy to

14    bless it, assuming it looks, you know, in the range of

15    reasonableness.  So why don't you include that then in your

16    negotiations, Mr. Biss.

17         **MR. BISS:**  Thank you, Your Honor.  I appreciate

18    it.

19         **THE COURT:**  Okay.

20         Anything else we should discuss today, Counsel?

21         **MR. BISS:**  Not from the plaintiff's side, Judge.

22         **MR. GAMSE:**  Nor from *The Post.*  Thank you, your

23    Honor.

24         **THE COURT:**  Okay.

25         Thank you, all.

1          **MR. BISS:**  Thank you, Judge.

2      (Proceedings concluded at am 2:38 p.m.)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1              **C E R T I F I C A T E**

2

3              I, **Lorraine T. Herman, Official Court Reporter,**

4       certify that the foregoing is a true and correct transcript

5       of the record of proceedings in the above-entitled matter.

6

7              **Please Note:**  This hearing occurred during the

8       COVID-19 pandemic and is therefore subject to the

9       technological limitations of court reporting remotely.

10

11

12

13       ___April 10, 2023___          ___/s/_____
                    **DATE**                       **Lorraine T. Herman**

14

15

16

17

18

19

20

21

22

23

24

25