# EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DEVIN G. NUNES )<br>)<br>    Plaintiff, )<br>)<br>v. )<br>)<br>)<br>WP COMPANY, LLC )<br>d/b/a The Washington Post )<br>    *et al* )<br>)<br>    Defendants. )<br>) | Case No. <u>1:21-cv-00506-CJN</u> |

**PLAINTIFF'S SUPPLEMENTAL ANSWERS AND RESPONSES
TO DEFENDANTS' SECOND DISCOVERY REQUESTS**

Plaintiff, Devin G. Nunes ("Plaintiff"), by counsel, pursuant to Rules 26(e), 33 and 34 of the Federal Rules of Civil Procedure, the Federal Rules of Evidence ("FRE") and Local Civil Rule ("LCvR") 30.4, hereby notes and preserves the following Supplemental Answers and Responses to defendants, WP Company, LLC d/b/a The Washington Post ("WaPo") and Ellen Nakashima ("Nakashima") (WaPo and Nakashima are collectively referred to as the "Defendants"), interrogatories and request for production of documents dated December 21, 2021 (the "Discovery Requests").

Plaintiff restates and incorporates herein by reference his General Objections,[1] answers and responses served on January 20, 2021, and supplements as follows:

---

[1] Plaintiff notes certain General Objections applicable to any and all discovery requests served by Defendants. Unless specifically stated, no responsive information is being withheld from Plaintiff's interrogatory answers or his responses to Defendants' request for production of documents on the basis of a General Objection.

1

**Supplemental Answers to Interrogatories**

As to each and every interrogatory, Plaintiff notes and preserves the following objections: Relevance (FRE 402); Prejudice (FRE 403); Privilege (attorney-client and work-product) (FRE 501-502); Lack of Foundation/Knowledge (FRE 602); Inadmissible Opinion (FRE 701); Hearsay (FRE 802); and Authenticity (FRE 901).

Subject to the foregoing objections and to the scope and proportionality of the Discovery Requests, Plaintiff answers each numbered Interrogatory, including discrete subparts, as follows:

> **INTERROGATORY NO. 15**
>
> Identify all members of your Campaign Staff, your Congressional Office Staff, and your Intelligence Committee Staff during the time periods of March–April 2017 and November–December 2020.  For each staff member, state whether he or she had or has knowledge of any facts related to your allegations in this action, including, but not limited to: (1) your March 21, 2017 or March 22, 2017 White House Visits; (2) the documents you reviewed or discussed on such visits; (3) allegations of the Obama administration spying, surveilling, or wiretapping on former President Donald Trump, Trump Tower, or any members of the Trump campaign or Trump presidential transition team; (4) your public or private communications regarding such allegations; (5) your damages; (6) the Article; or (7) this lawsuit.  For each individual, briefly summarize the subject(s) of his or her knowledge.

**ANSWER**: The list of staff members was already provided in response to previous interrogatories.  Of these staff members, I'm not aware of anyone who had knowledge of any of these issues—aside from what they may have read in the media—except for the following:

- House Intelligence Committee staff: All HPSCI staff members were aware of allegations of the Obama administration spying on Trump associates because the FISA warrant on Carter Page was investigated by HPSCI.

- As for the specific documents I viewed at the Eisenhower Executive Office Building on March 21, 2017, I discussed their importance with Jack Langer [226 Shadow Glen Court, Gaithersburg, MD; (202) 380-7764)], so he could brief reporters after my March 2017 visits to the Eisenhower Building and the White House. I told Mr. Langer, my former communications director, at the time that I went to the White House grounds because there was a secure location there [a Sensitive Compartmented Information Facility ("SCIF")] where I could review the documents without violating any rules on handling classified information. Additionally, Mr. Langer is aware of this lawsuit because I asked him to provide any communications relevant to previous interrogatories and document requests.

**SUPPLEMENTAL ANSWER**: The following is my best understanding of the level of knowledge possessed by the following staffers on the seven areas of inquiry:

**HPSCI Staff**

| | |
|---|---|
| Aston, Maddie: | No knowledge of these areas aside from what she may have read in the press. |
| Bowers, Mandy: | No knowledge of these areas aside from what she may have read in the press. |
| Castor, Steve: | No knowledge of these areas aside from what he may have read in the press. |
| Campbell, Chelsey: | No knowledge of these areas aside from what she may have read in the press. |

| | |
|---|---|
| Ciarlante, Nick: | No knowledge of these areas aside from what he may have read in the press. |
| Ellis, Michael: | Has knowledge of the documents reviewed in the Eisenhower Executive Office Building. |
| Flanigan, Bill: | No knowledge of these areas aside from what he may have read in the press. |
| Glabe, Scott: | No knowledge of these areas aside from what he may have read in the press. |
| Green, Meghan: | No knowledge of these areas aside from what he may have read in the press. |
| Harvey, Derek: | No knowledge of these areas aside from what he may have read in the press. |
| House, Andrew: | No knowledge of these areas aside from what he may have read in the press. |
| Hulme, Betsy: | No knowledge of these areas aside from what she may have read in the press. |
| Kahn, Geof: | No knowledge of these areas aside from what he may have read in the press. |
| Keith, Steve: | No knowledge of these areas aside from what he may have read in the press. |
| Langer, Jack: | I specified his knowledge of these areas in previous answers to this interrogatory. |
| Major, Lisa: | No knowledge of these areas aside from what she may have read in the press. |
| Nelson, Damon: | (deceased) |
| Pappas, George: | No knowledge of these areas aside from what he may have read in the press. |
| Patel, Kash: | No knowledge of these areas aside from what he may have read in the press. |
| Parmiter, Robert: | No knowledge of these areas aside from what he may have read in the press. |

| | |
|---|---|
| Presley, Doug: | No knowledge of these areas aside from what he may have read in the press. |
| Skaggs, Marissa: | No knowledge of these areas aside from what she may have read in the press. |
| Smith, Angel: | No knowledge of these areas aside from what she may have read in the press. |
| Souza, Allen: | No knowledge of these areas aside from what he may have read in the press. |
| Stewart, Mark: | No knowledge of these areas aside from what he may have read in the press. |
| Stuart, Shannon: | No knowledge of these areas aside from what she may have read in the press. |
| Tame, Jacqueline: | No knowledge of these areas aside from what she may have read in the press. |

**Personal Office Staff**

| | |
|---|---|
| Mark Blackney: | No knowledge of these areas aside from what he may have read in the press. |
| Crystal Ervin: | No knowledge of these areas aside from what she may have read in the press. |
| Ian Foley: | No knowledge of these areas aside from what he may have read in the press. |
| Kendra Fowler: | No knowledge of these areas aside from what she may have read in the press. |
| Ruth Hazdovac: | No knowledge of these areas aside from what she may have read in the press. |
| Terrie Headrick: | No knowledge of these areas aside from what she may have read in the press. |
| Nicky Henderson: | No knowledge of these areas aside from what she may have read in the press. |
| Kathryn Hopper: | No knowledge of these areas aside from what she may have read in the press. |

| | |
|---|---|
| Katherine Lewis: | No knowledge of these areas aside from what she may have read in the press. |
| Rudy Mendoza: | No knowledge of these areas aside from what he may have read in the press. |
| Jake Mizner: | No knowledge of these areas aside from what he may have read in the press. |
| Jennifer Morrow: | No knowledge of these areas aside from what she may have read in the press. |
| Keith Nixon: | No knowledge of these areas aside from what he may have read in the press. |
| Jilian Plank: | No knowledge of these areas aside from what she may have read in the press. |
| Anthony Ratekin: | No knowledge of these areas aside from what he may have read in the press. |
| Melissa Semoes: | No knowledge of these areas aside from what she may have read in the press. |
| Caitlin Shannon: | No knowledge of these areas aside from what she may have read in the press. |
| Jack Stout: | No knowledge of these areas aside from what he may have read in the press. |
| Mattheus Wagner: | No knowledge of these areas aside from what he may have read in the press. |

**Campaign Staff**

I had no active campaign in March/April 2017. In November and December 2020, my campaign manager was Jake Mizner, who has no knowledge of these areas aside from what he may have read in the press.

> **INTERROGATORY NO. 16**
>
> Identify all custodians who have relevant documents within your possession, custody or control (including, but not limited to, you, your Campaign Staff, your Congressional Office Staff, and your Intelligence Committee Staff). For each custodian, state (a) every repository ever used by that custodian to send, receive, or store relevant communications or documents; (b) the date range of documents retained by that custodian for each repository; (c) the subject matter of the relevant documents located in each repository; and (d) whether you have collected documents from the repository.

**ANSWER**: None. There are no relevant documents because I simply viewed the documents at the Eisenhower Executive Office Building. I did not take away copies of them.

**SUPPLEMENTAL ANSWER**: I have no relevant documents in my custody, possession, or control aside from the documents I have already provided. I collected the documents from my office and from publicly available sources, such as the Clerk of the House of Representatives.

> **INTERROGATORY NO. 17**
>
> Identify all communications you, your Campaign Staff, your Congressional Office Staff, or your Intelligence Committee Staff ever had on March 21, 2017 or March 22, 2017, related to (1) your March 21, 2017 or March 22, 2017 White House Visits; (2) the documents or information you reviewed or discussed on such visits; or (3) allegations of the Obama administration spying, surveilling, or wiretapping on former President Donald Trump, Trump Tower, or any members of the Trump campaign or Trump presidential transition team.  For each communication, identify (a) the date and time of the communication; (b) the sender or speaker; (c) the recipient(s); (d) the method of communication (e.g., voice, email, phone, text message, Signal, etc.); (e) whether the communication was retained; and (f) if not, when it was deleted or not retained.  This list should include, but is not limited to, all communications coordinating the March 21, 2017 or March 22, 2017 White House Visits, and every person you communicated with regarding your Visits or the information you learned.

**ANSWER**: I have no such records and had no relevant staff meetings. As for verbal communications about these visits, before my visit to the White House on March 22, 2017, I briefed HPSCI Republican members, then-Speaker Paul Ryan, and a gaggle of reporters at the Capitol about the unmasking documents I'd seen; I briefed President Trump at the White House; and I briefed another gaggle of reporters at the White House after my meeting with the President.

**SUPPLEMENTAL ANSWER**: I am unaware of any relevant communications having taken place aside from those I disclosed in previous responses to this interrogatory.  I cannot recall how my visits to the Eisenhower Executive Office Building or the White House were arranged.  I cannot recall which Republican members were in the room when I briefed HPSCI members on the documents related to unmaskings over five (5) years ago, but the Republican committee members at the time

8

were Reps. Elise Stefanik, William Hurd, Trey Gowdy, Chris Stewart, Brad Wenstrup, Mike Turner, Mike Conaway, Rick Crawford, Tom Rooney, Peter King, Frank LoBiondo, and Ileana Ros-Lehtinen.

**Supplemental Responses to Second Request for Production of Documents**

As to each and every document produced by Plaintiff in discovery, Plaintiff notes and preserves the following objections: Completeness (FRE 106); Relevance (FRE 402); Prejudice (FRE 403); Privilege (attorney-client and work-product); (FRE 501-502); Lack of Foundation/Knowledge (FRE 602); Inadmissible Opinion (FRE 701); Hearsay (FRE 802); and Authenticity (FRE 901).

Subject to the foregoing objections, Plaintiff will produce all responsive documents in his possession and control as follows:

> **REQUEST NO. 37**
>
> All communications from March 4, 2017 through March 24, 2017 referencing the "White House Worker and Visitor Entry System" or "WAVES" database for monitoring entry and access to White House offices, including e-mails sent or received by you, your Congressional Office Staff, or your Intelligence Committee Staff, relating to the March 21, 2017 White House Visit or the March 22 White House Visit.

**RESPONSE**:   None.

**SUPPLEMENTAL RESPONSE**:   I have no idea if the WAVES system was used for my White House visit.

> **REQUEST NO. 41**
>
> All receipts, expense reports, or other documents related to any transportation in Washington D.C. taken by you on March 21, 2017.  This includes, but is not limited to, receipts associated with all trips disclosed in your response to Interrogatory No. 1.  It also includes, but is not limited to, any receipts for your Campaign Staff, your Congressional Office Staff, or your Intelligence Committee Staff or other companions who traveled with you.

**RESPONSE**:   None.  There are no responsive documents because, as previously stated, I did not take an Uber to the White House.  That was a fabrication of the Washington Post.

**SUPPLEMENTAL RESPONSE**:   I have no receipts or records of transportation on those days, as it was not my office's habit to retain ten-dollar taxicab receipts for five years.

## Reservation of Rights

Plaintiff reserves the right to amend and/or supplement his Objections and Responses to Defendants' Second Discovery Requests.

DATED:   February 23, 2022

Signature of Counsel on Next Page

DEVIN G. NUNES


By:   */s/ Steven S. Biss*
     Steven S. Biss (VSB # 32972)
     300 West Main Street, Suite 102
     Charlottesville, Virginia 22903
     Telephone:  (804) 501-8272
     Facsimile:  (202) 318-4098
     Email:  stevenbiss@earthlink.net
     (*Admitted Pro Hac Vice*)

     Richard S. Basile
     (D.C. Bar No. 374069)
     6305 Ivy Lane, Suite 416
     Greenbelt, MD 20770
     Telephone:  301-441-4900
     Facsimile:  301-441-2404
     Email:  rearsb@gmail.com

     *Counsel for the Plaintiff*

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 23, 2022 a copy of the foregoing was served electronically in PDF upon counsel for the Defendants.

          By:   */s/ Steven S. Biss*
               Steven S. Biss (VSB # 32972)
               300 West Main Street, Suite 102
               Charlottesville, Virginia 22903
               Telephone: (804) 501-8272
               Facsimile: (202) 318-4098
               Email: stevenbiss@earthlink.net
               (*Admitted Pro Hac Vice*)

               Richard S. Basile
               (D.C. Bar No. 374069)
               6305 Ivy Lane, Suite 416
               Greenbelt, MD 20770
               Telephone: 301-441-4900
               Facsimile: 301-441-2404
               Email: rearsb@gmail.com

               *Counsel for the Plaintiff*