# EXHIBIT 8

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DEVIN G. NUNES,<br><br>  Plaintiff,<br><br>v.<br><br>WP COMPANY LLC, d/b/a THE WASHINGTON POST and ELLEN NAKASHIMA,<br><br>  Defendants. | Case No. 1:21-cv-00506 (CJN) |

## DEFENDANTS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS

Pursuant to Federal Rules of Civil Procedure 26 and 34, Defendants WP Company LLC d/b/a The Washington Post and Ellen Nakashima request that, within thirty days, Plaintiff Devin G. Nunes provide a written response hereto and produce for examination, inspection, and copying by delivering the specified information and documents to the offices of Williams & Connolly LLP, 725 Twelfth Street, N.W., Washington, DC 20005.

## DEFINITIONS

The following definitions shall apply as used herein:

1. "All" and "each" shall be construed as all and each.

2. "Amended Complaint" means the Amended Complaint filed in this action.

3. "Article" means the November 9, 2020 online article published by The Washington Post entitled "White House official and former GOP political operative Michael Ellis named as NSA general counsel," and the November 10, 2020 print article published by The Washington Post entitled "Trump loyalist named to NSA post."

4. "Concern" and "concerning" are used in their broadest sense and include all

matter relating to, referring to, describing, evidencing, or constituting the referenced subject.

     5.     "Communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).

     6.     "Document" is used in its broadest sense and includes, but is not limited to, all non-identical copies of the same document, all electronically stored information, and any other items whatsoever containing writings, drawings, sound recordings, pictures, or images. As used herein, "documents" includes, but is not limited to, all records, memoranda, reports, financial statements, handwritten and other notes, transcripts, paper, indices, letters, envelopes, telegrams, cables, electronic mail messages, telex messages, telecopies, telephone messages, summaries or records of telephone conversations, summaries or records of personal conversations or interviews, summaries or records of meetings or conferences, minutes or transcriptions or notations of meetings or telephone conversations or other communications of any type, tabulations, studies, analysis, evaluations, projections, work papers, statements, summaries, opinions, journals, desk calendars, appointment books, diaries, billing records, checks, bank account statements, invoices, photographs, microfilms, tapes or other records, punch cards, magnetic tapes, discs, data cells, drums, printouts, other data compilations from which information can be obtained, and any other documents discoverable under the Federal Rules of Civil Procedure which are in your possession, custody, or control.

     7.     "Electronically stored information" shall be construed broadly and shall include, but not be limited to, electronic mail ("e-mail") and other electronic communications, such as, for example, text messages, instant messages, Internet posts, and messages communicated via Twitter; websites and blogs; electronic documents or files of any kind created with or saved using any word-processing or other software programs or formats for creating or storing

information, such as, for example, Microsoft Word, Microsoft Excel, Adobe Acrobat, Microsoft PowerPoint, or Microsoft Access; TIFF files or images, JPEG files or images, and HTML files or images; any data stored in personal data management programs such as Microsoft Outlook, for example, electronic calendars or appointment books, electronic access books, electronic notes and memoranda, and electronic to-do lists; Internet usage files; telephone logs; audio, video, and graphic files; and voicemails. The term "electronically stored information" shall be construed to include all available metadata associated with any electronically stored information. The term "electronically stored information" encompasses electronic information and data stored on or obtainable from any medium, including, but not limited to, computers, computer servers, magnetic or other back-up tapes, hard drives, Internet websites or webpages, laptops, cellular phones, smart phones/PDAs, iPads or other tablet computers, electronic reading devices (e.g., Kindles), hard drives, hard disks, floppy disks, flash drives, USB storage devices, CD-ROMs, zip drives, memory sticks or memory cards, computer chips, cloud storage, FTP storage, and any other type of physical, remote, or other storage.

8. "Including" means "including but not limited to."

9. "March 21, 2017 White House Visit" means the visit you allege making to the White House grounds in paragraph 22(a) of the Amended Complaint.

10. "March 22, 2017 White House Visit" means the visit you made to the White House grounds to meet with former President Donald Trump on March 22, 2017.

11. "Relate" and "relating to" are used in their broadest sense and include all matters embodying, containing, comprising, indicating, concerning, referring to, identifying, describing, discussing, involving, evidencing, or otherwise pertaining to the referenced subject.

12. "The Washington Post" means WP Company LLC.

13. "You" and "your" mean Devin G. Nunes and any other agents, attorneys, representatives, employees, or anyone else acting on his behalf.

14. "Your Campaign Staff" means current and former employees of the Devin Nunes Campaign Committee (FEC# C00370056) or any other campaign committee you control.

15. "Your Congressional Office Staff" means current and former employees of your personal staff, including Jack Langer (referenced in paragraph 22(a) of the Amended Complaint). This includes, but is not limited to, all employees at each of your congressional offices (*see* https://nunes.house.gov/contact/offices.htm).

16. "Your Intelligence Committee Staff" means current and former employees who reported to you or were hired by you as Chairman or Ranking Member of the House Permanent Select Committee on Intelligence.

17. The terms "and" and "or" shall be construed either disjunctively or conjunctively, and the singular shall be deemed to include the plural and *vice versa*, as necessary to bring within the scope of the request any response that might otherwise be construed to be outside its scope.

## INSTRUCTIONS

1. These requests apply to all documents in your possession, custody, or control, regardless of the location of such documents and regardless of whether such documents are held by affiliates, attorneys, agents, associates, employees, representatives, assigns, heirs, claims managers, or any other person or entity.

2. Documents produced in response to these requests should be produced as they are kept in the usual course of business or should be organized and labeled to correspond with the categories in the request.

3. Restate each request for production of documents in your written response followed immediately by your response to each request.

4.	If, in responding to any of these requests, you encounter any ambiguity in construing either the request or a definition or instruction relevant to it, set forth the matter deemed ambiguous and the construction selected or used in responding to the request.

5.	If you object to the production of any document called for by a request because of a claim of privilege, provide a privilege log describing each such document consistent with Federal Rule of Civil Procedure 26(b)(5)(A).

6.	References to any natural person or non-natural person (*e.g.*, a corporation, partnership, limited partnership, etc.) shall be deemed to include that person's agents, attorneys, representatives, employees, subsidiaries, predecessors, or successors.

7.	These requests are continuing in character and require further response if additional documents are obtained or located after the time of initial production.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

### REQUEST NO. 1

All documents relating to the following statements you have challenged in the Article:

> In March 2017, [Ellis] gained publicity for his involvement in a questionable episode involving Nunes, who was given access at the White House to intelligence files that Nunes believed would buttress his baseless claims of the Obama administration spying on Trump Tower.  News reports stated that Ellis was among the White House officials who helped Nunes see the documents—reportedly late at night, earning the episode the nickname "the midnight run."

### REQUEST NO. 2

All documents relating to your March 21, 2017 White House Visit and your March 22, 2017 White House Visit (including notes, agendas, schedules, calendars, planners, travel expenses or receipts, communications relating to either meeting, and documents reviewed during either meeting).

**REQUEST NO. 3**

All documents relating to any descriptions of your March 21, 2017 White House Visit as a "midnight run."

**REQUEST NO. 4**

All documents relating to meetings you, your Campaign Staff, your Congressional Office Staff, or your Intelligence Committee Staff attended on March 21, 2017 or March 22, 2017—other than your March 21, 2017 White House Visit or March 22, 2017 White House Visit—concerning any allegations of the Obama administration spying, surveilling, or wiretapping on former President Donald Trump, Trump Tower, or any members of the Trump campaign or Trump presidential transition team (including notes, agendas, schedules, calendars, planners, travel expenses or receipts, communications relating to such meetings, and documents reviewed during such meetings).

**REQUEST NO. 5**

All records of communications you, your Campaign Staff, your Congressional Office Staff, or your Intelligence Committee Staff made on March 21, 2017 and March 22, 2017 relating to the March 21, 2017 White House Visit, the March 22, 2017 White House Visit, or any allegations of the Obama administration spying, surveilling, or wiretapping on former President Donald Trump, Trump Tower, or any members of the Trump campaign or Trump presidential transition team (including by email, phone call, text message, Signal, Telegram, WhatsApp, or any other medium).

**REQUEST NO. 6**

All documents relating to former President Donald Trump's claims that former President Obama (and/or the Obama administration) "had my 'wires tapped' in Trump Tower," or had "gone to tapp [sic] my phones during the very sacred election process," or "was tapping my phones in October, just prior to Election."

**REQUEST NO. 7**

All documents relating to former President Donald Trump's statements regarding the March 22, 2017 White House Visit, including, but not limited to, Trump's statement that he felt "somewhat" vindicated and "very much appreciated the fact that they found what they found."

**REQUEST NO. 8**

All documents relating to statements you, your Campaign Staff, your Congressional Office Staff, or your Intelligence Committee Staff made concerning allegations of Obama administration spying, surveilling, or wiretapping any members of the Trump campaign or Trump presidential transition team.

**REQUEST NO. 9**

All documents relating to statements you, your Campaign Staff, your Congressional Office Staff, or your Intelligence Committee Staff made concerning allegations of Obama administration spying, surveilling, or wiretapping at Trump Tower.

**REQUEST NO. 10**

All documents relating to statements you made that "other surveillance activities were used against President Trump and his associates"; that "I recently confirmed that, on numerous occasions, the Intelligence Community incidentally collected information about U.S. citizens involved in the Trump transition"; that "I have confirmed that additional names of Trump transition team members were unmasked"; or that "the previous administration knew that they were spying on the Trump campaign."

**REQUEST NO. 11**

All communications between you and former President Donald Trump or employees of the Executive Office of the President from March 4, 2017 (the date Trump made his wiretapping claim) through April 6, 2017 (the date you recused yourself from the Russia investigation) relating to the March 21, 2017 White House Visit, the March 22, 2017 White House Visit, or any allegations of the Obama administration spying, surveilling, or wiretapping on former President Donald Trump, Trump Tower, or any members of the Trump campaign or Trump presidential transition team.

**REQUEST NO. 12**

All communications between you, your Campaign Staff, your Congressional Office Staff, or your Intelligence Committee Staff and Michael Ellis from March 4, 2017 through April 6, 2017 relating to the March 21, 2017 White House Visit, the March 22, 2017 White House Visit, or any allegations of the Obama administration spying, surveilling, or wiretapping on former President Donald Trump, Trump Tower, or any members of the Trump campaign or Trump

presidential transition team.

**REQUEST NO. 13**

All communications between you, your Campaign Staff, your Congressional Office Staff, or your Intelligence Committee Staff and Ezra Cohen-Watnick from March 4, 2017 through April 6, 2017 relating to the March 21, 2017 White House Visit, the March 22, 2017 White House Visit, or any allegations of the Obama administration spying, surveilling, or wiretapping on former President Donald Trump, Trump Tower, or any members of the Trump campaign or Trump presidential transition team.

**REQUEST NO. 14**

All communications between you, your Campaign Staff, your Congressional Office Staff, or your Intelligence Committee Staff and John Eisenberg from March 4, 2017 through April 6, 2017 relating to the March 21, 2017 White House Visit, the March 22, 2017 White House Visit, or any allegations of the Obama administration spying, surveilling, or wiretapping on former President Donald Trump, Trump Tower, or any members of the Trump campaign or Trump presidential transition team.

**REQUEST NO. 15**

All communications between you and your Congressional Office Staff from March 4, 2017 through April 6, 2017 relating to the March 21, 2017 White House Visit, the March 22, 2017 White House Visit, or any allegations of the Obama administration spying, surveilling, or wiretapping on former President Donald Trump, Trump Tower, or any members of the Trump

campaign or Trump presidential transition team.

**REQUEST NO. 16**

All communications between you and your Campaign Staff from March 4, 2017 through April 6, 2017 relating to the March 21, 2017 White House Visit, the March 22, 2017 White House Visit, or any allegations of the Obama administration spying, surveilling, or wiretapping on former President Donald Trump, Trump Tower, or any members of the Trump campaign or Trump presidential transition team.

**REQUEST NO. 17**

All communications between you and your Intelligence Committee Staff from March 4, 2017 through April 6, 2017 relating to the March 21, 2017 White House Visit, the March 22, 2017 White House Visit, or any allegations of the Obama administration spying, surveilling, or wiretapping on former President Donald Trump, Trump Tower, or any members of the Trump campaign or Trump presidential transition team.

**REQUEST NO. 18**

Documents sufficient to show all "in-district office meetings," "public appearances," and "in-person meetings" of the types referenced in paragraph 21 of the Amended Complaint that occurred from January 1, 2015 to the present.

**REQUEST NO. 19**

All documents relating to the "in-district office meetings," "public appearances," and "in-

person meetings" that you allege in paragraph 21 of the Amended Complaint did not occur due to publication of the Article (including all communications concerning the cancellation of such appearances and meetings).

**REQUEST NO. 20**

Documents sufficient to show all "professional opportunities" of the type referenced in paragraph 21 of the Amended Complaint that you received from January 1, 2015 to the present.

**REQUEST NO. 21**

All documents relating to the "professional opportunities" that you allege in paragraph 21 of the Amended Complaint you have been unable to pursue due to publication of the Article (including all communications concerning your inability to pursue such opportunities), including documents relating to your contention in paragraph 9 of the Amended Complaint that you have "been considered for multiple Senate-confirmed offices" that "are now unobtainable due to the perception created by the Article."

**REQUEST NO. 22**

All documents relating to all threats you have received from January 1, 2015 to present, including, but not limited to, the "invective," "threatening phone calls," and "direct threats" that you allege in paragraph 21 of the Amended Complaint you received due to publication of the Article.

**REQUEST NO. 23**

All documents relating to your allegation in paragraph 9 of the Amended Complaint that the Commonwealth of Virginia is the place where the "brunt of the personal and professional injury" that you allege occurred.

**REQUEST NO. 24**

Documents sufficient to show your "earning capacity" (referenced in paragraph 21 of the Amended Complaint) from January 1, 2015 to the present.

**REQUEST NO. 25**

Documents sufficient to show the date and amount of monetary damages you have sought for any claim of reputational harm that you have made over the past five years (including claims associated with any other defamation lawsuits you have filed).

**REQUEST NO. 26**

All documents relating to your contention that you were injured by the allegedly false and defamatory statements in the Article.

**REQUEST NO. 27**

Documents sufficient to identify all sources of funding you are using to pay costs, expenses, or fees for litigation against The Washington Post, including each entity or individual providing campaign funds, contingency services, pro bono services, or litigation financing.

**REQUEST NO. 28**

All documents relating to ethics complaints concerning your recusal from the Russia investigation on or about April 6, 2017.  This includes, but is not limited to, the March 28, 2017 complaint filed by MoveOn.org, requesting an investigation into whether you were "violating the Espionage Act and the Rules of the House by disclosing classified information without the authorization required by House Rules or any other proper authorization," and the March 28, 2017 and April 4, 2017 complaints filed by Democracy 21 and Citizens for Responsibility and Ethics in Washington, requesting an investigation into whether your public statements "revealed any classified information in violation of House ethics rules."

**REQUEST NO. 29**

All documents relating to ethics complaints concerning your litigation against journalists, media outlets, or members of the press.  This includes, but is not limited to, the February 26, 2020 complaint filed by the Campaign Legal Center, requesting an investigation into whether you were "receiving free legal services in violation of the Rules of the House of Representatives."

**REQUEST NO. 30**

All documents relating to your allegation in paragraph 16 of the Amended Complaint that Defendants published statements in the Article that were "false."

**REQUEST NO. 31**

All documents relating to your allegation in paragraph 22 of the Amended Complaint that

Defendants published the Article with "actual malice."

**REQUEST NO. 32**

All documents that you will use to support your allegations, including all of the "records" referenced on page 20 of the Amended Complaint.

**REQUEST NO. 33**

Documents sufficient to identify all members of your Campaign Staff, your Congressional Office Staff, and your Intelligence Committee Staff since January 1, 2017.

**REQUEST NO. 34**

Any document retention policy that applied to you or any member of your Campaign Staff, your Congressional Office Staff, or your Intelligence Committee Staff since January 1, 2017.

**REQUEST NO. 35**

All communications involving you or any member of your Campaign Staff or your Congressional Office Staff that reference either or both of your lawsuits against The Washington Post.

**REQUEST NO. 36**

All campaign or fundraising communications sent on behalf of you or your campaign that reference either or both of your lawsuits against The Washington Post.

Dated: October 20, 2021

                                                */s/ Thomas G. Hentoff*
Kevin T. Baine (D.C. Bar No. 238600)
Thomas G. Hentoff (D.C. Bar No. 438394)
Nicholas G. Gamse (D.C. Bar No. 1018297)
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
thentoff@wc.com

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on October 20, 2021, I caused to be served a true and correct copy of the foregoing Defendants' First Set of Requests for Production of Documents via email to:

Richard S. Basile
6305 Ivy Lane, Suite 416
Greenbelt, MD 20770
Telephone: (301) 441-4900
rearsb@gmail.com

Steven S. Biss
300 West Main Street, Suite 102
Charlottesville, VA 22903
Telephone: (804) 501-8272
stevenbiss@earthlink.net

*Counsel for Plaintiff*

                                            */s/ Thomas G. Hentoff*
                                            *Counsel for Defendants*