# EXHIBIT 24

| | |
|---|---|
| **From:** | Gutierrez, Alexandra |
| **To:** | Nichols_Chambers@dcd.uscourts.gov |
| **Cc:** | Hentoff, Tom; Gamse, Nicholas; Douglass, Sean; Steven S. Biss; rearsb@gmail.com |
| **Subject:** | Nunes v. WP Company, LLC, et al., Case No. 1:21-cv-506: Request for Conference |
| **Date:** | Monday, March 13, 2023 8:13:46 PM |
| **Attachments:** | Nunes v. WP Company, LLC, 21-cv-506 - Defendants" Section 11 Submission.pdf |
| | Supplemental Answers and Responses and Compliance With 2.1.23 Order.pdf |

Dear Judge Nichols:

The parties in the above-captioned matter remain in dispute regarding Plaintiff's efforts to comply with the Court's February 1, 2023 Order (ECF No. 71).  Pursuant to Section 11 of the Court's Standing Order for Civil Cases (ECF No. 37), Defendants seek (1) a supplemental deposition of Plaintiff regarding his compliance with the Order, which the Court previously held in abeyance; (2) a status conference after the requested deposition to address the case schedule, including a schedule for briefing spoliation issues pursuant to Rule 37(e); and (3) costs and fees associated with its Motion to Enforce Compliance, which were also previously held in abeyance.

A joint submission containing a short summary of the dispute is attached, accompanied by Plaintiff's February 22, 2023 supplement.

Respectfully submitted,

**Alexandra M. Gutierrez**
**Williams & Connolly LLP**
680 Maine Avenue SW, Washington, DC 20024

(P) 202-434-5974 | agutierrez@wc.com | www.wc.com

Your Honor:

Pursuant to Section 11 of the Court's March 8, 2021 Standing Order for Civil Cases (ECF No. 37), I write on behalf of Defendants WP Company, LLC, and Ellen Nakashima (collectively, "the Post") to inform the Court of concerns the Post has with Plaintiff Devin Nunes's response to the Court's February 1, 2023 Order (ECF No. 71) granting in part and denying in part the Post's Motion to Compel and holding in abeyance the Post's requests for a supplemental deposition and costs and fees (the "Order").

The Post respectfully requests that the Court: (1) authorize the supplemental deposition of Plaintiff regarding Plaintiff's compliance with the Order, which the Court previously held in abeyance; (2) calendar a status conference after the requested deposition to address the case schedule, including a schedule for briefing spoliation issues pursuant to Rule 37(e); and (3) grant the Post's pending request for costs and fees associated with its Motion to Enforce Compliance pursuant to Rule 37(b)(2)(C).

Plaintiff responds that on February 22, 2023, Plaintiff served detailed responses to each paragraph of the Court's Order, together with certification of compliance. The Court should deny the Post's request for relief. Any further inquiry into the events of March 21, 2017 and/or March 22, 2017 may be had through normal discovery, including depositions.

**Defendants' Summary:**

Plaintiff has violated the Court's Order in multiple respects. For purposes of this short submission, we focus on the most substantial failures. Most notably, Plaintiff has failed to provide material information about his own devices and phone records. He has failed to produce even a single supplemental document, apparently as a result of a widespread failure to preserve any internal communications or other records beyond a narrow set held by two staffers. Instead, he once again rests on the unsubstantiated claim that no documents exist, even when there is incontrovertible proof to the contrary. Finally, he has failed to take "all reasonable efforts" to ensure compliance, Order ¶ 7, much less describe such efforts in a way that allows the Post to protect its rights in the face of his apparent spoliation.

First, Plaintiff has not complied with the Order to identify "every repository he personally used, from 2017 to present, to send, receive, and store communications and/or documents." Order ¶ 5. Nor has he disclosed, for individuals "who worked on either Plaintiff's staff or Plaintiff's campaign," "every repository used by that individual, from 2017 to present, to send, receive, and store communications and/or documents." *Id.* Plaintiff's Supplement omits information about:

- Any of Plaintiff's cell phone(s) and other devices (e.g. make, model, carrier) and the date range of documents retained on those devices. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ including calls with Mr. Ellis in March 2017 to coordinate his White House trip, text messages with Ms. Canter in February 2021 regarding the so-called "midnight run," and calls and text messages with ▓▓▓▓▓▓ and Mr. Ellis about this lawsuit. Plaintiff still has not produced any such call records or text messages. Plaintiff's disclosure of one

- cellular number and his congressional office's main reception number is insufficient because it does not identify where his devices and records are (or were) located, or the information available therein. And Plaintiff's response in this submission that he "has no text messages . . . relating to this case" or "phone records for the March 2017 time frame" does not explain why he is missing or no longer has those communications or why he has not produced his more recent communications with witnesses that occurred during this litigation.
- Any other witnesses' devices, including, for example, the computer used by Ms. Morrow to manage Plaintiff's schedule and the computer used by Mr. Langer to draft Plaintiff's public statements.
- Any shared repositories of Plaintiff's office, such as network drives and expense portals ███████████████████████████████████████. Plaintiff's response in this submission that he "is not aware of any" such repositories is ████████████ ████████ Morrow Tr. 34:2, 142:10–144:2.
- Any repositories of numerous other witnesses.[1]

Second, the Order required Plaintiff "produce all non-privileged documents responsive to the Defendants' Requests for Production Nos. 1 through 59" as well as "all original metadata." Order ¶ 6. But Plaintiff failed to produce even a single additional document, or any metadata, in response. Nunes certifies that all responsive, non-privileged documents have been produced, *see* Supplement ¶ 6, but this cannot be correct. Even if Plaintiff failed to preserve most of his Congressional records—which now appears to be the case—he should still have information responsive to at least some of the Post's requests. He should have produced, for example:

- Plaintiff's text messages with numerous witnesses during the pendency of this case, such as Ms. Canter, Mr. Ellis, ███████████████ (RFP 35).
- Plaintiff's phone bills or logs from March 2017 and November 2020 (RFP 53).
- Documents related to his appointments, calendar, or schedule for March 20, 2017 through March 22, 2017 (RFP 49) and daily agendas for every day in March 2017 (RFP 50). Ms. Morrow has averred ███████████████████████████████████████████ Morrow Tr. 9:20–9:22, but Plaintiff has produced only a single copy of his March 21 and 22 agendas,

---

[1] The Court also ordered Plaintiff to identify relevant witnesses, including "every individual who has or may have knowledge" about numerous topics in connection with his March 21 and 22 visits to the White House. Order ¶ 4. Plaintiff's disclosure was limited to a small handful of staffers that had already been identified prior to the Order. This too was deficient. He did not disclose, for example, Mark Stewart, the General Counsel of the House Permanent Select Committee on Intelligence ("HPSCI"), even though ██████████████████████████████████████████████████████████████████████, and even though counsel for the Post identified Stewart at the hearing. *See* Jan. 25, 2023 Hr'g Tr. 67:19. Nor did he disclose, for example, the identities of the numerous staffers who attended the event with him at the National Building Museum following his White House visit. And while the Court ordered him to disclose "every individual who worked on Plaintiff's campaign website post about 'lawsuits against The Washington Post,'" Order ¶ 3, Plaintiff failed to include staffer Matteus Wagner, ██████ ████████████████████████████████████████

- which his counsel described as "abridged," Jan. 25, 2023 Hr'g Tr. 56:21, and which lacks original metadata.[2]
- Drafts or internal communications regarding any of his public statements regarding surveillance of President Trump (RFPs 10 and 45), particularly given that Plaintiff self-servingly claims he instructed his spokesperson Langer to "preserve all documents."

In this joint submission, Plaintiff reiterates his past refrain that "all documents" have been produced, even though he still has not produced *any* of his own communications, or *any* non-public communications by his more than forty staffers. Plaintiff's assertions that no communications or other documents can be found—coupled with the absence of *any* internal, non-public documents from his document production—illustrate why a deposition of Plaintiff is necessary to determine the scope of his collection and preservation failures. For example, Plaintiff now self-servingly asserts that he told his scheduler Jennifer Morrow to preserve "all documents." But that is impossible to reconcile with the fact that a) his verified interrogatory responses stated that she had "[n]o knowledge of these areas aside from what she may have read in the press," ECF No. 56-4 at 6, and b) he has not produced a single one of her documents, aside from his "abridged" schedule, even when the Court ordered him to do so.

Finally, the Court ordered Plaintiff to submit "a signed declaration describing in detail the steps Plaintiff took to comply with each paragraph of this Order, and certifying that he made all reasonable efforts to ensure compliance." Order ¶ 7. Plaintiff's Supplement fails to provide facts demonstrating that his compliance was either reasonable or complete, as do the additional assertions by Plaintiff's counsel in this joint submission. For example:

- Plaintiff made no diligent effort to collect or recover his own communications, such as his phone records (RFPs 43 and 53). Although he asserts that his phone records are not available "due to the passage of time," he does not claim to have made any serious effort to collect data from his devices. Plaintiff's counsel admitted at the compliance hearing that, notwithstanding the Court's prior order compelling disclosure, "I have not personally searched his telephone." Jan. 25, 2023 Hr'g Tr. 42:23-43:4. Plaintiff's Supplement did not describe such a search. In this joint submission, Plaintiff now asserts that he "searched his own repositories (phone and email), and found no responsive documents." But Plaintiff does not explain why he is missing records of calls and text messages about this lawsuit and other relevant topics that other witnesses have either produced or testified exist. Those omissions, together with Plaintiff's failure to disclose when or how he conducted his search (including the date ranges of text messages and call records available), or explain his failure to preserve records created during the litigation, show his efforts were inadequate.
- Plaintiff made no diligent effort to recover access to his congressional files, including, for example, records which may be available from the House Clerk or HPSCI, or records in connection with the House Ethics investigation which may have been retained by his

---

[2] Plaintiff's counsel claimed at the compliance hearing that the schedule was "a hard copy," of a pocket schedule. Jan. 25, 2023 Hr'g Tr. 57:17–57:18. That is false. The document is indisputably a PDF of an 8.5 X 11 digital document, as is clear in the version submitted to the Court with the Post's motion. *See* Ex. 14. Plaintiff has failed to supply the original metadata as ordered.

counsel. Plaintiff's assertion in this joint submission that "no such records exist" shows that Plaintiff failed to retain them when he resigned from Congress during this litigation.

- Plaintiff made no diligent effort to identify the devices used by his staffers, or to describe his efforts to collect documents from such devices. This may be because ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉. Morrow Tr. 33:17-34:6.
- Plaintiff made no diligent effort to search ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ d. Morrow Tr. 9:25-10:1. Plaintiff now asserts that he "lack[s] access" to Morrow's House email, *see* Supplement ¶ 6, ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉.

In response to the Post's concerns, Plaintiff's counsel asserts in this joint submission new compliance information that Plaintiff did not disclose in his February 22, 2023 Supplement, and failed to verify (such as a vague statement that Plaintiff contacted an unidentified phone carrier to confirm no records were available, which makes little sense given that his calls and text messages during the pendency of the litigation are at issue).

Plaintiff's failure to comply with not only his discovery obligations but also multiple court orders—and failure to preserve documents he controlled except for a handful of documents kept by his spokesman and scheduler—justify sanctions. Those failures also warrant a supplemental deposition of Plaintiff so that the Post can most efficiently assess the scope of his noncompliance and take steps to protect its rights in this case.

**Plaintiff's Response and Comments:**

Plaintiff timely and fully complied with each and every paragraph of the Court's Order.

There is no question – and the Post agrees – that Plaintiff fully complied with paragraph 1 of the Court's Order, providing a complete chronological account of his activities and whereabouts on March 21, 2017 and March 22, 2017. Included in this detailed chronology (p.6) are the names of the staffers who Plaintiff remembers being at the event at the National Building Museum following his White House visit. The Post simply ignores the facts and feigns ignorance. Significantly, Plaintiff accounts for all activity through midnight on March 21, 2017, which completely refutes the continuing false narrative promoted by the Post for years that Plaintiff was on a "midnight run" to the White House.

The detailed chronology produced in response to paragraph 1 of the Court's Order demonstrates that the Post's statements at issue in this case were false and were published with actual malice – in this case, knowledge of falsity.

Similarly, there is no question that Plaintiff fully complied with paragraph 2 of the Court's Order.[3] Plaintiff identified every staff member who communicated with anyone regarding any aspect of

---

[3] Plaintiff fully complied with and responded to each and every subparagraph of paragraph 4 of the Court's Order. Although NARA produced a document that suggests Mark Stewart went to the White House in April 2017, Plaintiff has no knowledge of this visit. Plaintiff does not believe Mark Stewart has any knowledge of the nature of the documents and/or materials Plaintiff reviewed on March 21. Plaintiff has no forwarding information or way to contact Mr. Stewart.

Plaintiff's visits to the White House on March 21 and March 22, and every document that evidences such communications, including the "Unmaskings" and "Media Attacks and Lawsuits" sections on Plaintiff's campaign website www.devinnunes.net.

Plaintiff fully complied with paragraph 3 of the Court's Order. Plaintiff identified every individual who worked on the campaign website post about the lawsuits against the Post, including all who reviewed that website post and proposed edits to it. Significantly, Mattheus Wagner ("Wagner") did **not** recall reviewing the website post about the lawsuits against the Washington Post and did **not** propose any edits to it. Plaintiff's counsel personally confirmed this fact. [*See, e.g.,* BF.Nunes.WP.Plank.00359].

In response to paragraph 5 of the Court's Order, Plaintiff identified each and every repository (telephone and email) used by each individual to send, receive and store communications and documents, **including Plaintiff's personal phone and email**.

The Post blatantly misrepresents to the Court that Plaintiff failed to identify the repositories he personally used, from 2017 to present, to send, receive, and store communications and/or documents.

Plaintiff fully explained why he does not have any phone records for the March 2017 time frame.

Plaintiff also searched his own repositories (phone and email), including call histories, voicemail, inbox, sent, trash, and archive mailboxes, and found no non-privileged responsive documents. The Post falsely suggests that there are "missing records of calls and text messages about this lawsuit and other relevant topics". This is not true. There are no such "missing" documents.

Plaintiff's counsel personally searched Jennifer Morrow's yahoo account, using specific search terms identified to the Post, and there were no responsive documents.

Employing the same search terms, Plaintiff's counsel confirmed with Ms. Morrow that she had searched for and produced any and all responsive documents that she had preserved on her computer.

Counsel further confirmed that Ms. Morrow did not store any responsive documents on any other computer or repository and that if anything had been stored on a House email server, it would only have been a duplicate of what Ms. Morrow had preserved on her personal computer.

Plaintiff's counsel further confirmed with Mr. Langer that he identified all repositories and preserved (at Plaintiff's direction) all documents relating to this action, including all email sent and received using his House email account and personal email account.

The Post speculates that there may be other repositories of documents out there. This is bad faith, rank speculation. Plaintiff is not aware of any "shared repositories of Plaintiff's office, such as network drives and expense portals" that ever contained any documents or information relating to this action, including the purpose of Plaintiff's visit to the White House on March 21, 2017.

Plaintiff instructed Ms. Morrow and Mr. Langer to preserve all documents in their possession relating to the events of March 21, 2017 and March 22, 2017. **They did so.** All documents have been produced.

If the Post files a "spoliation" motion in the future, it will most certainly violate Rule 11 and Rule 37(e).[4]

In response to paragraph 6 of the Court's Order, Plaintiff searched for and produced all documents responsive to the Post's discovery requests. Specifically:

- Plaintiff has no text messages with Ms. Canter, Mr. Ellis or Ms. Morrow relating to this case – Plaintiff did have personal and family communications with Ms. Morrow, including communications about Plaintiff's children, wine, etc., that have nothing to do with this case;

- Contrary to the Post's suggestion, there are no "recent communications with witnesses that occurred during this litigation" – **indeed, no witness has produced any such "recent communication", except for one text message produced by Canter**;

- Plaintiff does not have access to his phone records from March 2017, and he has explained why – the Post completely ignores Plaintiff's explanation;

- Plaintiff has produced all documents related to his schedule and whereabouts on March 21, 2017 and March 22, 2017, including an abridged itinerary and the full itinerary that Plaintiff instructed Ms. Morrow to preserve – in addition, Plaintiff reached out to the Dyts and obtained photographs that demonstrate the Post fabricated the "midnight run" story;

- There are no "drafts or internal communications" regarding Plaintiff's press conferences and public statements on March 22, 2017 regarding the purpose of Plaintiff's visit to the White House on March 21 that have not been produced. **Mr. Langer preserved all documents and all documents have been produced**.

The Post misrepresents that there was a "widespread failure to preserve any internal communications or other records beyond a narrow set held by two staffers." The Post claims that there is "incontrovertible proof" that there are additional documents out there somewhere. These are baseless and sanctionable speculations.

Finally, Plaintiff fully complied with paragraph 7 of the Court's Order by signing and submitting a verified certification of the steps Plaintiff took to comply with the Court's Order. Plaintiff's certification confirmed who Plaintiff contacted, and what Plaintiff did and reviewed in order to

---

[4] The lone text message from Caitlin Canter in February 2021 that Plaintiff inadvertently deleted was preserved and produced by Ms. Canter. It is not "lost" and thus cannot be the subject of a motion under Rule 37(e).

ensure compliance.  Plaintiff's extensive efforts were reasonable and complete.  For instance, the following former staffers were contacted by Plaintiff, directly or through counsel:

| | | |
|---|---|---|
| Jennifer Morrow | Jack Langer | Caitlin Canter |
| Jilian Plank | Nicky Henderson | Anthony Ratekin |
| Johnny Amaral | Scott Glabe | George Pappas |
| Kash Patel | | |

Plaintiff contacted his carrier, but was unable to obtain any phone records for the period March 2017 due to the passage of time.  Further, a search of Plaintiff's phone did not show calls going back to March 2017 – almost six (6) years ago.  Plaintiff made no effort to access "his congressional files, including, for example, records which may be available from the House Clerk or HPSCI, or records in connection with the House Ethics investigation which may have been retained by his counsel" **because no such records exist**.

The Post has the Court chasing a rabbit down a hole.  The Post assumes, without any good faith basis, that "congressional files" exist.  **They never existed**.

To be clear, Plaintiff made **every** effort to preserve, search for and produce documents that were in Jennifer Morrow's possession.  At Plaintiff's direction, Ms. Morrow preserved and retained on her personal computer all documents relating to this action.  The Post ignores the fact that Ms. Morrow preserved all documents in her possession relating to the events of March 21, 2017 and March 22, 2017.

Contrary to the Post's speculation, there are no documents on any House email server that have not been produced in this action.

This exercise resembles Whac-A-Mole.  Nothing will satisfy the Post.  The Post's submission violates Rule 11.  It is a total waste of judicial and party resources.  The Post is manufacturing a discovery dispute for the improper purpose of distracting the Court from the issue of actual malice.  The evidence demonstrates beyond cavil that the Post published the November 9, 2020 article and the December 8, 2020 "correction" with actual malice.  The Post long ago abandoned a defense to Plaintiff's defamation claim.  Instead, the Post is trying to concoct a "spoliation" claim, where none exists.  The Post refuses to proceed with depositions, and is interminably delaying these proceedings.  The Court should deny the Post's request for any further relief and, instead, should award Plaintiff his attorney's fees and costs incurred in responding to this submission.

Respectfully submitted,

* * *